No. 23-4052

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH COURT

———————————

UNITED STATES OF AMERICA,
        *Plaintiff/Appellee,*

v.

STUART CLAY MCDONALD,
        *Defendant/Appellant.*

———————————

On Appeal From the United States District Court
for the Eastern District of Virginia
Alexandria Division (The Hon. Claude M. Hilton)

———————————

BRIEF OF THE APPELLANT

———————————

GEREMY C. KAMENS
Federal Public Defender

Ann Mason Rigby
Assistant Federal Public Defender
Counsel for Appellant
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
Ann_Rigby@fd.org

# **TABLE OF CONTENTS**

Table of Authorities .................................................................................iv

Statement of Jurisdiction.............................................................................1

Statement of the Issues................................................................................2

Statement of the Case..................................................................................2

     A.    Mr. McDonald is charged with, pleads guilty to, and is sentenced for receipt and possession of child pornography. ...................................2

     B.    The government seeks forfeiture of Mr. McDonald's non-contraband personal digital files. ..........................................................4

Summary of Argument................................................................................10

Standard of Review....................................................................................11

Argument....................................................................................................11

I.    Forfeiture is limited by statute.......................................................11

II.    The non-contraband files are not forfeitable pursuant to 18 U.S.C. § 2253(a)(3). ...................................................................................14

     A.    The district court erred by assuming that Mr. McDonald's non-contraband data was part of the Seagate hard drive...........................17

          1.    Fourth Circuit precedent establishes that a court must carefully consider what constitutes a forfeited property, and may not rely on subjective impressions unsupported by the record to do so..............................................................17

          2.    Courts have applied this principle to assess the scope of criminal forfeitures pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 2253.........................................................................19

3.      The government offered no evidence to contradict the commonsense conclusion, informed by common experience, that Mr. McDonald's non-contraband data do not constitute part of the Seagate hard drive...........................21

B.      The cases on which the government relied below are unpersuasive. .......................................................23

III.    The non-contraband files are not forfeitable pursuant to 18 U.S.C. § 2253(a)(1). .....................................................27

A.      The hard drive itself is not subject to forfeiture under § 2253(a)(1) because it is not an "other matter which contains any such visual depiction."............................................28

1.      The text of § 2253(a)(1) reveals that not all "matter" is subject to forfeiture under § 2253(a)(1), and "other matter which contains" visual depictions of child pornography in § 2253(a)(1) refers only to matters that have visual depictions of child pornography as a constituent part. ............29

2.      The structure of § 2253 as a whole supports the conclusion that "other matter which contains" visual depictions of child pornography in § 2253(a)(1) refers only to matters that have visual depictions of child pornography as a constituent part. ..........................................................34

B.      Cases interpreting the term "other matter which contains" in prior versions of 18 U.S.C. § 2252(a)(4), and in a related provision in U.S.S.G. § 2G2.4(b)92), generally agree with Mr. McDonald that the phrase contemplates content files, not hard drives. ..............................................................37

C.      Even if the hard drive is a "matter" subject to forfeiture under § 2253(a)(1), the non-contraband files that happen to reside on the hard drive are not.........................................41

D.      The Rule of Lenity dictates that this Court resolve any ambiguity about the scope of 18 U.S.C. § 2253(a)(1) in Mr. McDonald's favor.......................................................43

IV.    Forfeiture of the records of Mr. McDonald's personal and professional life, unrelated to the offense, violates the Eighth Amendment's requirement of proportionality in sentencing. ...............................................44

    A.    Because the Eighth Amendment prohibits punishment that is grossly disproportional to the gravity of a defendant's offense, the district court erred in ordering the forfeiture of Mr. McDonald's non-contraband personal files, and that error was plain. ...................................................................................................45

    B.    The district court's error affected Mr. McDonald's substantial rights and this Court should exercise its discretion to correct the error. ...................................................................................................48

Conclusion ...............................................................................................49

Request for Oral Argument......................................................................50

Certificate of Compliance

## TABLE OF AUTHORITIES

### Cases

*Austin v. United States*, 509 U.S. 602 (1993) ....................................................45, 47

*Ignacio v. United States*, 674 F.3d 252 (4th Cir. 2012)..........................................11

*Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626 (4th Cir. 2015).........................................29

*Molina-Martinez v. United States*, 578 U.S. 189 (2016) .......................................48

*Natl. Ass'n of Mfrs. v. Dep't. of Def.*, 138 S. Ct. 617 (2018) ...............................11

*Riley v. California*, 573 U.S. 373 (2014) ...........................................................47, 49

*Taylor v. Grubbs*, 930 F.3d 611 (4th Cir. 2019)....................................................11

*United States v. Abdelshafi*, 592 F.3d 602 (4th Cir. 2010) ....................................28

*United States v. Bajakajian*, 524 U.S. 321 (1998)......................................45, 46, 47

*United States v. Batchelder*, 442 U.S. 114 (1979) .................................................43

*United States v. Bennett*, 986 F.3d 389 (4th Cir. 2021)..........................................46

*United States v. Bieri*, 21 F.3d 819 (8th Cir. 1994).................................................20

*United States v. Blackman*, 746 F.3d 137 (4th Cir. 2014) ......................................12

*United States v. Brack*, 651 F.3d 388 (4th Cir. 2011)............................................47

*United States v. Demerritt*, 196 F.3d 138 (2d Cir. 1999) .......................................40

*United States v. Fellows*, 157 F.3d 1197 (9th Cir. 1998).........................38, 39, 40

*United States v. George*, 946 F.3d 643 (4th Cir. 2020)..............................28, 29, 43

*United States v. Gladding*, 775 F.3d 1149 (9th Cir. 2014)...............................26, 49

*United States v. Hall*, 142 F.3d 988 (7th Cir. 1998)...............................................38

*United States v. Harper*, 218 F.3d 1285 (11th Cir. 2000) .......................................40

*United States v. Hilton*, 701 F.3d 959 (4th Cir. 2012)................................................43

*United States v. Hoffman*, 764 F. App'x 399 (4th Cir. 2019)..................................26

*United States v. Hoffman*, No. 2:12-cr-184, 2018 WL 5973763 (E.D. Va. Nov. 14, 2018) .................................................................................................................26

*United States v. Hull*, 606 F.3d 524 (8th Cir. 2010)..........................................20, 25

*United States v. Ide*, 624 F.3d 666 (4th Cir. 2010) ...................................................11

*United States v. Jalaram, Inc.*, 599 F.3d 347 (4th Cir. 2010) ....................45, 46, 47

*United States v. Juluke*, 426 F.3d 323 (5th Cir. 2005).............................................22

*United States v. Knight*, 606 F.3d 171 (4th Cir. 2010) ............................................44

*United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997) ................................................38

*United States v. Lindsey*, 2000 WL 14171 (4th Cir. Jan. 7, 2000) (unpublished) ...................................................................................................................................24

*United States v. Marcus*, 560 U.S. 258 (2010) .........................................................48

*United States v. Martin*, 662 F.3d 301 (4th Cir. 2011) .........................11, 13, 24, 41

*United States v. Michalec*, 1999 WL 187374 (4th Cir. Apr. 6, 1999) (unpublished) ...............................................................................................40

*United States v. Morgan*, 224 F.3d 339 (4th Cir. 2000) .........................................11

*United States v. Noyes*, 557 F. App'x 125 (3d Cir. 2014) .........................24, 25, 26

*United States v. Olano*, 507 U.S. 725 (1993) ...............................................11, 44, 49

*United States v. One 1998 Tractor*, 288 F. Supp. 2d 710 (W.D. Va. 2003)............21

*United States v. Poulin*, 690 F. Supp. 2d 415 (E.D. Va. 2010), *aff'd*, 461 F. App'x 272 (4th Cir. 2012) ........................................................................... 11-12

*United States v. Reynolds*, 856 F.2d 675 (4th Cir. 1988) ... 17, 18, 19, 20, 21, 25, 26

*United States v. R.L.C.*, 503 U.S. 291 (1992) ...........................................43

*United States v. Sanders*, No. 1:20-cr-143 (Ellis, J.), ___ F. Supp. 3d ____, 2022 WL 3572780 (E.D. Va. Aug. 19, 2022) ...............................................26, 50

*United States v. Santoro*, 866 F.2d 1538 (4th Cir. 1989) ...............18, 19, 20, 21, 25

*United States v. Sheek*, 990 F.2d 150 (4th Cir. 1993)................................................43

*United States v. Smith*, 966 F.2d 1045 (6th Cir. 1992) ......................................19, 20

*United States v. Thompson*, 281 F.3d 1088 (10th Cir. 2002) ...................................40

*United States v. Vig*, 167 F.3d 443 (8th Cir. 1999) ...................................37, 38, 39

*United States v. Wernick*, 673 F. App'x 21 (2d Cir. 2016).........................24, 25, 26

*United States v. Williams*, 592 F.3d 511 (4th Cir. 2010).......................................42

*United States v. Young*, 470 U.S. 1 (1985) ............................................................49

*Yates v. United States*, 574 U.S. 528 (2015).............................. 29, 30, 31, 32, 33, 35

## Constitutional Provisions, Statutes, and Rules

U.S. Const. amend. VIII......................................................... 2, 10, 43, 44, 47, 48, 49

18 U.S.C. § 1519..............................................................................................31

18 U.S.C. § 2252..........................................................................................37, 38

18 U.S.C. § 2253.......................................................................................*passim*

18 U.S.C. § 2259A............................................................................................46

18 U.S.C. § 3013..............................................................................................46

18 U.S.C. § 3014..............................................................................................36

18 U.S.C. § 3231................................................................................................1

18 U.S.C. § 3571 ....................................................................................46

18 U.S.C. § 3742 ......................................................................................1

21 U.S.C. § 853 ...............................................................13, 14, 15, 19, 20

21 U.S.C. § 881 ....................................................................................17

28 U.S.C. § 1291 ...................................................................................19

49 U.S.C. § 80303 .................................................................................21

Fed. R. App. P. 4 ....................................................................................1

Fed. R. Crim. P. 32.2 ......................................................................12, 13

Fed. R. Crim. P. 41 ..............................................................................41

Fed. R. Crim. P. 52 ..............................................................................11

## U.S. Sentencing Guidelines

U.S.S.G. § 2G2.4 .........................................................37, 38, 39, 40

## Other Sources

American Heritage Dictionary, *available at* https://ahdictionary.com..............29, 32

Black's Law Dictionary (11th ed. 2019) ..........................................14, 15

Wayne R. LaFave et al., *Forfeiture*, 6 Criminal Procedure § 26.6(d) (4th ed.) ......12

Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com
.................................................................................................29, 32

No. 23-4052

———————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH COURT

———————————————

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

STUART CLAY MCDONALD,
*Defendant/Appellant*.

———————————————

On Appeal From the United States District Court
for the Eastern District of Virginia
Alexandria Division (The Hon. Claude M. Hilton)

———————————————

BRIEF OF THE APPELLANT

———————————————

## **STATEMENT OF JURISDICTION**

The district court had jurisdiction over this case pursuant to 18 U.S.C. § 3231.

That court entered its preliminary order of forfeiture on January 20, 2023. J.A. 154.

Stuart McDonald timely filed his notice of appeal on January 26, 2023. J.A. 156; *see*

Fed. R. App. P. 4(b)(1), (b)(6). Therefore, this Court has jurisdiction over this appeal

pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

1.    Whether the district court erred in forfeiting Stuart McDonald's electronic storage devices "in their entirety," including the legally possessed, non-contraband data in files stored within those devices, pursuant to 18 U.S.C. § 2253(a)(1), which requires the forfeiture of any visual depiction of child pornography, or of "any book, magazine, periodical, film, videotape or other matter which contains any such visual depiction," and 18 U.S.C. § 2253(a)(3) as "property" used or intended to be used to commit or promote the commission of a child pornography offense?

2.    Whether the district court's preliminary order of forfeiture, forfeiting Mr. McDonald's electronic storage devices "in their entirety" including legally possessed, non-contraband data in files stored within those devices, violated the Eighth Amendment's requirement of proportionality in sentencing?

## STATEMENT OF THE CASE

A.    Mr. McDonald is charged with, pleads guilty to, and is sentenced for receipt and possession of child pornography.

Law enforcement executing a search warrant at Mr. McDonald's residence in Manassas, Virginia seized a number of electronic devices, including a laptop that was later determined to belong to Mr. McDonald's employer. J.A. 25. During an examination of the laptop, FBI computer analysts located evidence that Mr. McDonald had downloaded images and videos depicting minors engaged in sexually

2

explicit conduct using the internet, and saved them. J.A. 26. When Mr. McDonald was later arrested, agents seized a backpack containing a Seagate hard drive bearing serial number NA05H5FZ, which was manufactured outside of the Commonwealth of Virginia (hereinafter "the Seagate hard drive" or "the hard drive"). J.A. 27. The hard drive contained additional images and videos depicting minors engaged in sexually explicit conduct. J.A. 27.

A grand jury later returned an indictment charging Mr. McDonald with three offenses. Count 1 charged Mr. McDonald with receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). Counts 2 and 3 charged Mr. McDonald with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). J.A. 9. Mr. McDonald pleaded guilty without a plea agreement to Count 1 and Count 3, admitting receipt and possession of child pornography, and admitting the facts described above. J.A. 14.

At sentencing, the Court imposed 72 months of incarceration, a 10-year period of supervised release, and $200 in special assessments. J.A. 44. The government asked the Court to retain jurisdiction for purposes of later determinations of restitution and forfeiture, which had not been resolved. J.A. 38-40. The Court granted the request. J.A. 40.[1]

---

[1] The parties eventually agreed on an appropriate restitution amount, and the Court entered a restitution order without objection on January 20, 2023. J.A. 7; J.A. 139.

B.    The government seeks forfeiture of Mr. McDonald's non-contraband personal digital files.

1.    In discussions following the hearing, the government sought forfeiture of the Seagate hard drive and all of its contents, as Count 3 stemmed from Mr. McDonald possessing files containing child pornography on that hard drive.[2] Mr. McDonald informed the government that he agreed that the Seagate hard drive was forfeitable, and that files containing child pornography on the hard drive were forfeitable, but that he did not agree that non-contraband files on the hard drive— such as family pictures and his software engineering intellectual property—were forfeitable.

2.    As the parties could not come to agreement on this issue, the government moved for entry of a preliminary order of forfeiture of the Seagate hard drive "in its entirety, including any hardware, as well as any software or data contained on it." J.A. 51; J.A. 83-84. Mr. McDonald opposed the motion. J.A. 86.[3]

The government argued that the non-contraband files were forfeitable because they were found on a hard drive that was forfeitable under two provisions of 18

---

[2] The government did not seek forfeiture of the laptop that agents seized on July 15, 2021. Although downloads found on the laptop were the basis for Mr. McDonald's plea to Count 1, there was never any dispute that the laptop belonged not to Mr. McDonald but to his previous employer.

[3] The government filed a reply brief, and Mr. McDonald filed a supplement. J.A. 119; J.A. 126.

U.S.C. § 2253. The government also argued that returning the hard drive to Mr. McDonald after removing the contraband would be too burdensome.

a. First, the government argued that the drive and all of its contents were forfeitable pursuant to § 2253(a)(3), which provides for forfeiture of "any property … used … to commit or promote" child pornography offenses. Proceeding from the premise that both the contraband and non-contraband files found on the hard drive were "part" of the hard drive, the government argued that Mr. McDonald could not retain any interests in the non-contraband files because nothing in § 2253 explicitly provided that a defendant could retain any part of a forfeited item. J.A. 61-64.

Mr. McDonald agreed that the physical hardware device constituting the Seagate hard drive itself was forfeitable pursuant to § 2253(a)(3) because it was "property" that had been "used" to commit the offense of possession. J.A. 89. But, Mr. McDonald argued, Fourth Circuit precedent and its progeny established that the district court should not assume—as the government did—that the files on the hard driver constituted *part* of the "hard drive," *i.e.*, part of the "property" subject to forfeiture. J.A. 90-95. Instead, Mr. McDonald argued, these cases established that a court must determine what constitutes the property subject to forfeiture—here, the hard drive—through careful consideration of objective criteria, such as instruments defining the property, sale records, or common experience. J.A. 90-95. Doing so in

this case, he argued, led to the conclusion that data in files on a hard drive are not "part" of the hard drive, such that they are not part of the "property" subject to forfeiture under 18 U.S.C. § 2253(a)(3). J.A.100-102.

b. Second, the government argued that even if the hard-drive and all of its contents were not forfeitable under § 2253(a)(3), the hard drive and its contents were forfeitable pursuant to 18 U.S.C. §§ 2253(a)(1). The first part of § 2253(a)(1) provides for forfeiture of "any visual depiction" of child pornography; the second provides for forfeiture of "any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction[.]" According to the government, this provision requires forfeiture of both visual depictions of child pornography, and the entirety of any "matter which contains" them, or, in the government's words, any "medium in which [such visual depictions were] stored." J.A. 63. And, according to the government, a hard drive is one such "matter." J.A. 63. Thus, according to the government, just as the statute provided for forfeiture of both child pornography images found in a magazine, and the entire magazine in which they were found, so too did the statute provide for forfeiture of both the visual depictions of child pornography found on the Seagate hard drive, and the entire Seagate hard drive on which they were found. J.A. 63.

Mr. McDonald disagreed. He argued that although the first part of § 2253(a)(1) authorized forfeiture of the child pornography images found on the

Seagate hard drive as "visual depictions described in section 2251, 2251A, or 2252 [2] 2252A, 2252B, or 2260 of this chapter," the second part did not authorize forfeiture of the hard drive itself because a hard drive is not a "book, magazine, periodical, film, [or] videotape," and it is also not another "*matter which contains* any such visual depiction, which was produced, transported, mailed, shipped or received in violation of this chapter." J.A. 103-111. That is because "other matter which contains visual depictions [of child pornography]," in the context of this statute, refers to a narrow universe of "matter," namely that which shares certain characteristics of books, magazines, periodicals, films, and videotapes that distinguish them from other matter, including hard drives. J.A. 103-111; *see* § 2253(a)(1) (emphasis added). Further, he argued, even if the Seagate hard drive could be considered an "other matter which contains visual depictions [of child pornography] …" that is, forfeitable under § 2251(a)(1), there was nothing in the text of that provision requiring forfeiture of non-contraband files that happen to be found on that "other matter." J.A. 111-113.

      c.    The government also claimed that requiring the government to return the hard drive to Mr. McDonald would be burdensome on the government. J.A. 64. But Mr. McDonald argued that the Court should ignore the government's claims that it would be difficult for the government to identify and segregate non-contraband files to set aside for eventual return to him. J.A. 113. Mr. McDonald did

not concede that this would indeed be difficult. Instead, he argued that whether complying with his interpretation of the statute would be burdensome on the government was irrelevant because "equitable considerations are not part of the calculus in forfeiture proceedings," and all that mattered was whether Congress had authorized the forfeiture the government was seeking. J.A. 113-114.

Mr. McDonald concluded by asking the district court to enter a preliminary order of forfeiture finding that the visual depictions of child pornography found on the Seagate hard drive were forfeitable pursuant to § 2253(a)(1), and that the Seagate hard drive, "a hardware device," was forfeitable pursuant to § 2253(a)(3). J.A. 115-118. The preliminary order the defense proffered also stated that the district court found "that the government had not established a nexus between the non-contraband files and data on the Seagate hard drive," so that they were not forfeitable pursuant to 18 U.S.C. § 2253. J.A. 117.

3.    At a hearing on the government's motion, the government began with an offer to present evidence regarding the burden of separating the contraband and noncontraband data, but ultimately chose not to do so; as a result, it never offered any evidence to support its assertions on this subject. J.A. 138-140.[4] Ultimately, the district court agreed with the defense that the claimed burden on the government was not relevant to the question of what was subject to forfeiture, and made no finding

---

[4] The defense never conceded that this would in fact be burdensome.

as to whether adopting the defense's position as to forfeiture would impose any particular burden on the government. J.A. 150.

The district court did not disagree with the defense position that a hard drive is empty until a user adds other property to it, which can also be removed. J.A. 143-144. The district court agreed that it was the hard drive itself, not "any of the particulars of what may or may not have been stored" on the hard drive, that was "used" to commit the offense. J.A. 143. Nevertheless, the district court agreed to enter the government's proposed order on the ground that the hard drive had been used to commit the offense. J.A. 150. That is, the district court's decision rested on § 2253(a)(3). At the hearing, the district court did not make any finding as to whether either the Seagate hard drive or its non-contraband content were subject to forfeiture pursuant to § 2253(a)(1)'s provision for forfeiture of "any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction [of child pornography], which was produced, transported, mailed, shipped or received in violation of this chapter." *See* J.A. 150-151. Nevertheless, the district court entered the government's proposed preliminary forfeiture order, which cited both § 2253(a)(3) and (a)(1) as the grounds for forfeiture of the Seagate hard drive "in its entirety, including any hardware, as well as any software or data contained on it." J.A. 151-152; J.A. 154-155.

## SUMMARY OF ARGUMENT

1.      The preliminary order of forfeiture should be vacated because Mr. McDonald's legally possessed, non-contraband electronic data, which he placed on the Seagate hard drive, are not forfeitable pursuant to 18 U.S.C. § 2253(a)(3) because they were not "used or intended to be used to commit or to promote the commission" of child possession of child pornography, and they are not part of the "property" constituting the Seagate hard drive.

2.      The preliminary order of forfeiture should be vacated because neither the Seagate hard drive, nor Mr. McDonald's legally possessed, non-contraband electronic files that he placed onto the Seagate hard drive, are forfeitable under 18 U.S.C. § 2253(a)(1) because neither is a "visual depiction[s] described in section 2251, 2251A, or 2252 [2] 2252A, 2252B, or 2260 of this chapter," and neither is a "book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction[.]"

3.      The district court's preliminary order of forfeiture violated the Eighth Amendment requiring proportionality in sentencing insofar as it preliminarily ordered forfeiture of Mr. McDonald's legally possessed, non-contraband electronic files that he placed onto the Seagate hard drive.

## STANDARD OF REVIEW

In criminal forfeiture proceedings, this Court reviews the district court's findings of fact for clear error and the district court's legal interpretations *de novo*. *United States v. Morgan*, 224 F.3d 339, 342 (4th Cir. 2000); *United States v. Martin*, 662 F.3d 301 (4th Cir. 2011). This Court also reviews *de novo* questions of statutory interpretation. *Taylor v. Grubbs*, 930 F.3d 611, 616 (4th Cir. 2019) (citing *Natl. Ass'n of Mfrs. v. Dep't. of Def.*, 138 S. Ct. 617, 631 (2018)); *Ignacio v. United States*, 674 F.3d 252, 254 (4th Cir. 2012); *United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010).

Finally, as to errors to which the appellant failed to make a timely objection, a reviewing court must examine the appellant's arguments under the "plain error" standard set out in Fed. R. Crim. P. 52(b). *United States v. Olano*, 507 U.S. 725, 731 (1993).

## ARGUMENT

I.    FORFEITURE IS LIMITED BY STATUTE.

Forfeiture is a creature of statute, and is thus limited by the text of the relevant forfeiture provision. Consequently, "[b]efore the Court may enter a preliminary order of forfeiture, it must first determine if Congress has statutorily authorized the remedies requested, whether forfeiture of the property sought is warranted, and if the procedures for awarding such remedies have been followed." *United States v.*

11

*Poulin*, 690 F. Supp. 2d 415, 422 (E.D. Va. 2010), *aff'd,* 461 F. App'x 272 (4th Cir. 2012). The Rules of Criminal Procedure thus provide that, where the government seeks forfeiture, a "court must determine what property is subject to forfeiture *under the applicable statute*." Fed. R. Crim. P. 32.2(b)(1)(A) (emphasis added); *see also United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) (forfeiture is "mandatory in cases where the statute applied" (emphasis added)); Wayne R. LaFave et al., *Forfeiture*, 6 Criminal Procedure § 26.6(d) (4th ed.) ("[t]he scope of assets subject to forfeiture is *limited by statute* to that property possessing a prescribed relationship with the criminal activity." (emphasis added)).

The forfeiture statute at issue here, 18 U.S.C. § 2253 provides that persons convicted of certain offenses, including receipt and possession of child pornography as Mr. McDonald was, "shall forfeit to the United States such person's interest in" three categories of property, namely:

> (1) any visual depiction described in section 2251, 2251A, or 22522 2252A, 2252B, or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or *other matter which contains any such visual depiction*, which was produced, transported, mailed, shipped or received in violation of this chapter;

> (2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

> (3) any *property*, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

18 U.S.C. § 2253(a) (emphasis added). The statute goes on to say that "Section 413 of the Controlled Substances Act (21 U.S.C. 853) with the exception of subsections (a) and (d), applies to the criminal forfeiture of property pursuant to subsection (a)." 18 U.S.C. § 2253(b).

When as here, "the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). The government bears the burden of establishing "a nexus between the property for which it is seeking forfeiture and the crime by a preponderance of evidence." *United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011) (noting that the preponderance of evidence standard is set forth in case law, not Rule 32.2).

Here, there is no dispute that the images of child pornography found on the Seagate hard drive are forfeitable because they are the type of "visual depictions" forfeitable pursuant to 18 U.S.C. § 2253(a)(1). There is also no dispute that the hard drive device itself is forfeitable pursuant to § 2253(a)(3) because it is a piece of property used to commit Mr. McDonald's offense of possession of child pornography, as it was used to store the child pornography.

But, as explained below, Mr. McDonald's interests in the non-contraband data in files on the hard drive are distinct from his interests in the contraband images and the hardware on which they were stored. Part II will demonstrate that, as the non-

13

contraband data files were neither used to commit the offense, nor "part" of the hard drive (the "property") that was, they are not forfeitable pursuant to 18 U.S.C. § 2253(a)(3). Part III will demonstrate that the non-contraband data files are not forfeitable pursuant to § 2253(a)(1) because that provision only authorizes forfeiture of contraband visual depictions, and books, magazines, periodicals, films, videotapes, or other "matter[s] which contain" such contraband visual depictions, and neither the hard drive, nor any of its contents, fall within that universe.

## II.  THE NON-CONTRABAND FILES ARE NOT FORFEITABLE PURSUANT TO 18 U.S.C. § 2253(A)(3).

As already noted, § 2253(a)(3) of title 18 provides that a person convicted of an offense under Chapter 110 of Title 18 involving depictions of child pornography "shall forfeit to the United States such person's interest in … (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property."

Section 2253(b) incorporates by reference the definition of "property" in 21 U.S.C. § 853(b), which states that "property" subject to criminal forfeiture includes

> (1) real property, including things growing on, affixed to, and found in land; and
>
> (2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

18 U.S.C. § 853(b). More generally, the term "property" refers, "collectively," to "the rights in a valued resource such as land, chattel, or an intangible." *Property*, Black's Law Dictionary (11th ed. 2019). "It is common to describe property as a 'bundle of rights.'" *Id.* These rights include "the right to possess and use, the right to exclude, and the right to transfer." *Id.* Forfeiture, in this context, means "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty. Title is instantaneously transferred to another, such as the government, a corporation, or a private person." *Forfeiture*, Black's Law Dictionary (11th ed. 2019).[5]

It was undisputed that the Seagate hard drive contained data in files that McDonald did *not* use to commit the offense, including software development files Mr. McDonald created, and family pictures he either took or has collected. J.A. 86. The hard drive also contained music files and other material downloaded with the right to use them indefinitely, and other property. If he had committed no offense, there would be no doubt that he (and perhaps others) would have some "right to possess and use, the right to exclude, and the right to transfer" these data files; it too,

---

[5] Other definitions of forfeiture from Black's Law Dictionary are "1. The divestiture of property without compensation. … 3. A destruction or deprivation of some estate or right because of the failure to perform some contractual obligation or condition. … 4. Something (esp. money or property) lost or confiscated by this process; a penalty, fine, or mulct. 5. A judicial proceeding, the object of which is to effect a confiscation or divestiture."

then, is property. He seeks to maintain his property rights in the non-contraband data stored on the hard drive.[6]

There was no claim that Mr. McDonald "used" any of these non-contraband data stored in files on the hard drive to commit the offense, and the district court found that he did not. J.A. 143. Thus, the only possible justification for ordering forfeiture of Mr. McDonald's rights to the non-contraband data on the hard drive pursuant to § 2253(a)(3) could be a conclusion that they are a "part" of the Seagate hard drive, *i.e.*, a "part" of the "property" that was used to commit the offense of possession in this case.

The government assumed as much below, but never offered any evidence of this, and the district court did not make a specific finding that the non-contraband data or files on the hard drive were "part" of the hard drive. Therefore, because no facts supported the finding, on *de novo* review of the legal decision that the data was forfeitable that followed, this Court should reverse. In the alternative, if the district court's entry of the government's proposed preliminary order of forfeiture is interpreted as implicitly finding that non-contraband files and data were "part" of the hard drive, that finding was a clear error because it was unsupported by the record, and this Court should reverse for that reason as well.

---

[6] Whether Mr. McDonald retains his property interests in the non-contraband data is the only issue on appeal, as Mr. McDonald has not yet sought return of any property pursuant to Federal Rule of Criminal Procedure 41(g).

16

A.     <u>The district court erred by assuming that Mr. McDonald's non-contraband data was part of the Seagate hard drive.</u>

1.     <u>Fourth Circuit precedent establishes that a court must carefully consider what constitutes a forfeited property, and may not rely on subjective impressions unsupported by the record to do so.</u>

Even when statutes provide for criminal forfeiture of certain "lot," "tract," "real property," or any other type of property in its *entirety*, determining whether there is a nexus between the defendant's crime and some part of a piece of property is only part of the analysis. The examining court must also determine what *constitutes* the entirety of the "tract" or "property" in question. And to do that, courts may not simply leap to gut conclusions about where a forfeitable piece of property begins or ends. Instead, courts must look to logical and objective outside sources to define what *constitutes* a forfeitable item. Doing so in this case leads to the conclusion that the hard drive does not include the data on it.

The Fourth Circuit has long recognized this step. In *United States v. Reynolds*, the Fourth Circuit considered how much real property the defendant forfeited pursuant to a civil forfeiture provision as a result of using only some of it for drug distribution. 856 F.2d 675, 675-76 (4th Cir. 1988). Section 881(a)(7) of title 21 provides for civil forfeiture of "all real property, including any right, title, and interest in the whole of any *lot* or *tract* of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to

17

commit, or to facilitate the commission of" controlled substance offenses. (Emphasis added.) The Fourth Circuit determined that this language made plain that Congress contemplated use of this provision to forfeit the *entirety* of any tract of land that had been used, even in part, in drug distribution. *Reynolds*, 856 F.2d at 676.

But the Court agreed with the defendant that this did not resolve everything because "the forfeiture statute [at issue in that case] does not define 'tract …'," and held that the Court must determine what portion of the defendant's property was part of the tract used to commit the offense. *Id*. at 676-77. Concluding that the "natural source" for definition of what made up the entire tract of real property subject to forfeiture in a particular case was "the instrument creating an interest in the property[,]" the Court looked to that to determine what made up the tract forfeited. *Id.* at 676-77.

The Fourth Circuit took the same approach a year later in *United States v. Santoro*, 866 F.2d 1538, 1540 (4th Cir. 1989). In that case, a drug distribution defendant argued (among other things) that the sentencing court had unjustly forfeited all of 26 acres of land "bisected by a road and … taxed as two separate parcels," given that she had only distributed drugs on the portion of the land that was on one side of the road, and a small portion of it at that. *Id.* Following the logic of *Reynolds*, the court rejected the notion that what made up the forfeitable "property" should be determined through "subjective characterizations of the property[.]" *Id.* at

1543. Instead, the court once again turned to "recorded instruments and documents filed in the county offices where the defendant property is located" to determine exactly what constituted the piece of property that the defendant forfeited by using some portion of a property to commit a crime. *Id.*

> ## 2. Courts have applied this principle to assess the scope of criminal forfeitures pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 2253.

Just as 21 U.S.C. § 881 provides no guidance on how to define the forfeitable "tract" at issue in a particular case, neither 21 U.S.C. § 853 nor 18 U.S.C. § 2253 specify how a court is to determine what constitutes a particular piece of property subject to forfeiture in a given case under those statutes. Confronting this, courts have followed the Fourth Circuit's lead, recognizing that they must accordingly use objective, "natural sources" for the definition of what constitutes a forfeitable "property" in a particular case.

For example, in a case about whether defendant had forfeited just one or multiple tracts of a farm pursuant to § 853, the government argued that the defendant should forfeit all of them because the defendant "treated the farm as one single unit." *United States v. Smith*, 966 F.2d 1045, 1054 (6th Cir. 1992). Citing *Reynolds* and *Santoro*, the Sixth Circuit ignored this "subjective characterization," and instead looked to the "the instruments and documents" that created the defendant's interest in the tracts to determine what constituted the forfeitable "property." 966 F.2d at

1054. Because "Smith initially obtained his interest in the whole of each of the four tracts by virtue of the four separate deeds[,]" and the government did not establish that all tracts had in fact facilitated the defendant's drug offenses, the court ruled that only one tract constituted the forfeited "property." *Id.* at 1054 & 1055-56; *see also United States v. Bieri*, 21 F.3d 819, 820-21 (8th Cir. 1994) (noting that although § 853 calls for forfeiture of entire property used to commit offense, ""[t]here remains some uncertainty … because the statute does not clearly define what constitutes one piece of 'property;'" citing *Reynolds* and *Santoro*, and concluding that all four tracts of land constituted "property" defendant forfeited, though he had used only one for the offense, because deed provided evidence that he had acquired all four tracts as a single unit).

Courts have extended this approach to questions of what constitutes the "property" that child pornography defendants forfeit pursuant to § 2253(a)(3). For instance, in *United States v. Hull*, the government sought to forfeit land, on which sat a house, both of which belonged to a man who had been convicted of child pornography offenses. 606 F.3d 524, 526 (8th Cir. 2010). The court determined that the defendant had used the home to commit his offenses: it had afforded privacy, a place to store a computer, and a means to access the internet wirelessly, all of which had facilitated the offense. *Id.* at 527-28. But the defendant argued that this did not mean the "entire acreage" on which the house sat was forfeit. *Id.* at 528. Citing *Bieri,*

the Eight Circuit disagreed, because the home and land had conveyed as one piece of property. *Id.*

Courts following the logic of *Reynolds* and *Santoro* proceed the same way even when what is to be forfeited is something other than real property. For example, in *United States v. One 1998 Tractor,* a civil forfeiture case, the district court concluded that although a defendant who had transported contraband cigarettes in the cab of his tractor forfeited the tractor pursuant to a law providing for forfeiture of "an aircraft, *vehicle*, or vessel involved in transporting contraband," he did not forfeit his trailer, which he had purchased separately. 288 F. Supp. 2d 710, 712 (W.D. Va. 2003) (emphasizing that the "tractor and trailer were purchased separately, had separate titles, and separate vehicle identification numbers"); *see* 49 U.S.C. § 80303.

> 3. <u>The government offered no evidence to contradict the commonsense conclusion, informed by common experience, that Mr. McDonald's non-contraband data do not constitute part of the Seagate hard drive.</u>

Common experience confirms that hard drives typically are empty when purchased from retailers, just as file cabinets typically are empty when purchased. Most people have experience with loading data and files *onto* hard drives: these data and files are typically purchased or obtained from other sources (such as when one downloads a word processing program or music file), or are created by a computer user, as in the case of one's own pictures, writing, or software coding. Either way,

21

the files on a hard drive almost always have independent value, are severable and could be stored elsewhere, and do not depend on a particular hard drive to be usable and valuable. No one could expect that purchase of a used storage hard drive would include conveyance of the seller's owners' data or files. Instead, just as anyone purchasing a file cabinet, even second-hand, would expect it to arrive empty and have no cause for complaint if it did, anyone purchasing a storage hard drive second-hand would have no cause for complaint if it did not come complete with someone else's family photos, music mp3 files, coding files, or cryptocurrency. Likewise, a purchaser of the right to use certain digitally stored data would not expect to receive the device on which the seller stored the data as part of the sale. In short, in any other context, no reasonable person would consider files stored on drives like the Seagate hard drive to be one and the same with those drives.[7]

In the district court, the government did not dispute any of this, and offered no evidence to contradict the conclusion that flows naturally from this common

---

[7] Likewise, given common practice and common sense, no reasonable person would expect to receive all of the jewelry or other valuable tangible property in a home upon purchase of the home. Thus, it makes perfect sense that a court would not even consider that jewelry that was not itself tied to drug trafficking could be forfeited simply by virtue of it having been found in a home that had been used to promote that trafficking. *See United States v. Juluke*, 426 F.3d 323, 328 (5th Cir. 2005) (reversing forfeiture of jewelry found in home used for trafficking "[b]ecause the Government produced no evidence from which the district court could infer that the jewelry seized from the… home was proceeds of the drug activity that formed the basis for Juluke's convictions").

experience: both the data and the hard drive are property, and the owner's right to possess and use the data, exclude others from the data, and transfer the data are distinct from the owner's rights with respect to the hard drive. *See Property*, Black's Law Dictionary, *supra* (defining property as a collection of rights, including the right to "possess and use, the right to exclude, and the right to transfer"). And, just as a trailer attached to a forfeitable tractor is nevertheless not "part" of that tractor if it was acquired separately, and just as a tract of land that abuts forfeitable tracts with which it was used as one farm is nevertheless not part of the land it abuts if it was acquired separately, so too is data within a forfeitable hard drive nevertheless not "part" of that hard drive given that it was acquired separately from the hard drive.

Thus, not only did the district court err by concluding that forfeiture of the non-contraband files was appropriate without making a finding that they were part of the hard drive, but such a finding was unsupported by anything in the record.

B.    <u>The cases on which the government relied below are unper-suasive.</u>

In the district court, the government cited several decisions in which courts denied Federal Rule of Criminal Procedure 41(g) motions for the return of non-contraband files on hard drives that were the subject of preliminary orders of forfeiture because they had been used to commit child pornography offenses. *See* J.A. 60-62. None of these decisions bind this court. They are also not persuasive for several reasons.

First, the opinions the government leads with were unpublished. Second, most arose from a materially different posture than Mr. McDonald's case does. For example, the government relies on *United States v. Noyes*, an unpublished Third Circuit opinion. In that case, the defendant did not object when the district court preliminarily ordered forfeiture of computers a jury had found that the defendant had used in child pornography offenses. 557 F. App'x 125, 126-27 (3d Cir. 2014). Instead, he later filed a Rule 41(g) motion for the return of non-contraband files on those computers. *Id. United States v. Wernick*, another unpublished Second Circuit case the government cites, also arose from a Rule 41(g) motion filed after a court had entered a preliminary order of forfeiture, and in that case the defendant had also waived his right to contest forfeiture. 673 F. App'x 21, 25 (2d Cir. 2016). Because forfeiture had already been ordered, the *defendant* in these cases bore the initial burden of showing that they were lawfully entitled to the property in question. *United States v. Lindsey*, 2000 WL 14171, at *1 (4th Cir. Jan. 7, 2000) (unpublished) (noting that if the defense shows a lawful claim to the property, the burden shifts back to the government to show a legitimate reason to retain the property). Here, in contrast, the *government* bore the burden to establish that the non-contraband files were forfeitable. *United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011).

Second, the reasoning in these cases is unpersuasive or inapposite. In *Noyes*, the court took for granted that the data and files at issue were part of the computing

devices on which they were found (which, again, were forfeited without objection from the defendant). The court never engaged in the more careful analysis required by *Reynolds*, *Santoro,* and its progeny. More particularly, the court alluded to the principle that a court must take the step of *establishing* what constitutes the property the government seeks to forfeit: indeed, it quoted *Hull*, discussed above, for proposition that "*once it is established* that the 'property' subject to forfeiture consists of the entire acreage, nothing in the statute allows the court to order forfeiture of less than this property." *Id.* at 127 (quoting *Hull*, 606 F.3d at 528-29) (emphasis added). But the court ignored this principle in practice: it simply assumed that the non-contraband files the defendant sought return of actually were part of the "computers" the jury determined to be forfeitable. Having done so, it put the onus on the defense to find something explicit in the text of the statute stating that "only a *portion* of the 'property' can be forfeited.'" *Noyes*, 557 Fed. Appx. at 127 (emphasis added).[8]

*Wernick* is inapposite because the Second Circuit specifically stated that it need not decide the issue presented here: "whether defendants in some cases may retain interests in data unconnected to criminal activity that is stored on the hard drive that is itself forfeitable" under § 2253(a)(3). 673 F. App'x at 25-26 (finding

---

[8] The court's approach in *Noyes*—placing the burden on the defendant to prove the files were *not* forfeitable, rather than requiring the government to prove that they *were*—reflected the procedural posture already discussed.

that district court's grant of Rule 41(g) motion did not abuse its discretion). Rather than support the government's view, this declination to assume that "data unconnected to criminal activity that is stored on the hard drive" supports Mr. McDonald's view that the question deserves careful consideration as reflected in *Reynolds*, et al. *See also United States v. Gladding,* 775 F.3d 1149, 1153 n.1 (9th Cir. 2014) ("We do not express an opinion on the validity of the district court's order requiring Gladding to forfeit only contraband files."). As for the lower court opinion in *Wernick*, it relied heavily on the logic of *Noyes*, and is unpersuasive for the same reasons as the Third Circuit's opinion is.[9]

In sum, the government has cited no decision from a Court of Appeals squarely holding, over a defendant's objection, that § 2253(a)(3) authorizes forfeiture of non-contraband data that happens to be stored on a hard drive that is forfeitable because the drive itself was "used" to commit a child pornography offense over a defendant's objection. The cases the government cites for this

_____

[9] The same applies to the district court's opinion in *United States v. Sanders*, No. 1:20-cr-143 (Ellis, J.), ___ F. Supp. 3d ____, 2022 WL 3572780 (E.D. Va. Aug. 19, 2022), presently before this Court in Case No. 22-7054. And the same applies to *United States v. Hoffman*, an espionage case the government cited for the first time in briefing before this Court in *Sanders*. *See* 764 F. App'x 399 (4th Cir. 2019) (affirming without decision *United States v. Hoffman*, No. 2:12-cr-184, 2018 WL 5973763, at *3 (E.D. Va. Nov. 14, 2018), which relied on *Noyes* to find "that Petitioner's electronic devices as a whole, including all of their files and programs, were subject to the Consent Order" of preliminary forfeiture pursuant to espionage statute, 18 U.S.C. § 794(d)).

proposition are inapposite or unpersuasive for other reasons. Finally, Fourth Circuit authority sets forth the steps a district court must take to determine what constitutes a piece of "property" forfeitable in a given case. By failing to follow those steps, and/or implicitly finding that non-contraband data in files on the Seagate hard drive were "part" of the forfeitable hard drive without any evidentiary support in the record for the finding, the district court erred.

## III. THE NON-CONTRABAND FILES ARE NOT FORFEITABLE PURSUANT TO 18 U.S.C. § 2253(A)(1).

The government argued that even if § 2253(a)(3) did not justify forfeiture of the non-contraband files, § 2253(a)(1) did.

That provision provides for forfeiture of visual depictions of child pornography "*or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction*, which was produced, transported, mailed, shipped or received in violation of this chapter." 18 U.S.C. § 2253(a)(1) (emphasis added).

According to the government, anything found on any of the items listed in the second part of this provision ("any book … or other matter which contains any such visual depiction") is necessarily forfeitable if the item itself is. Further, according to the government, the Seagate hard drive qualifies as an "other matter which contains any such visual depiction" of child pornography insofar as it was a "medium in which [such visual depictions were] stored." J.A. 63. Thus, according to the

government, just as § 2253(a)(1) provides for both forfeiture of both child pornography images found in a magazine, and the entire magazine in which they are found, so too does the statute provide for forfeiture of both the child pornography found on the Seagate hard drive, and of the entire hard drive in which they were found, including all of its contents, including Mr. McDonald's non-contraband data. *Id.*

The first problem with the government's argument is that the text of § 2253(a)(1) and its context show that a hard drive is *not* an "other matter which contains" visual depictions of child pornography. The second is that even if a hard drive is an "other matter which contains" visual depictions of child pornography, § 2253(a)(1) does not state that forfeiture of such items requires forfeiture of even non-contraband that happens to be found on those items.

A. The hard drive itself is not subject to forfeiture under § 2253(a)(1) because it is not an "other matter which contains any such visual depiction."

Whether a hard drive can qualify as an "other matter which contains any such visual depiction" under § 2253(a)(1) is a question of statutory interpretation. "When interpreting a statute, courts must 'first and foremost strive to implement congressional intent by examining the plain language of the statute.'" *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (quoting *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010)). If the plain language is unambiguous, the inquiry

28

ends there. *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015). The plainness or ambiguity of statutory language is determined by "reference to the language itself, … the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quoting *Yates v. United States*, 574 U.S. 528, 537 (2015)).

> 1.  <u>The text of § 2253(a)(1) reveals that not all "matter" is subject to forfeiture under § 2253(a)(1), and "other matter which contains" visual depictions of child pornography in § 2253(a)(1) refers only to matters that have visual depictions of child pornography as a constituent part.</u>

There is no definition of "other matter" in § 2253, so the Court must first look to the word's ordinary, dictionary meaning. *George*, 946 F.3d at 646. The relevant dictionary definitions of "matter" include "material substance that occupies space."[10] Applying this broad definition might suggest that essentially anything could be forfeitable in these cases.

But "whether a statutory term is unambiguous … does not turn solely on dictionary definitions of its component words." *Yates v. United States*, 574 U.S. 528, 537 (2015) (internal citations omitted). "Rather, the plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but

---

[10] *Matter*, Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com /dictionary/matter (last visited May 5, 2023); *see also Matter*, American Heritage Dictionary, *available at* https://ahdictionary.com/word/search.html?q=matter (providing several definitions for the word) (last visited May 9, 2023).

also by] the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (internal citations omitted). "Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things." *Id.* That is the case here—where there are so many definitions of matter, including some so broad as to include almost anything that takes up space and is composed of atoms. When a term as potentially broad as "other matter" appears in a statute, the text is better read within "specific context in which the language is used." *Id.* at 546.

As the Supreme Court explained in *Yates*, two related principles that guide courts' efforts to ensure they do not read terms more broadly than Congress intended are *noscitur a sociis* and *ejusdem generis. Noscitur a sociis* counsels that a word "is known by the company it keeps," and applying it helps to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." 574 U.S. at 553 (internal citations omitted). *Ejusdem generis* "counsels [that] where general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* (internal citations omitted).

In *Yates*, a plurality of the Supreme Court applied these principles to conclude that when Congress stated that "[w]hoever knowingly alters, destroys … any record, document, or *tangible object*" with certain intent can be guilty of the crime of

30

obstruction, Congress did not mean to include *all* tangible objects, and specifically did not have in mind fish.[11] *Yates*, 574 U.S. at 531 (considering 18 U.S.C. § 1519). The government had argued that the fish thrown back in the water by a fisherman to hide them from law enforcement were "tangible objects," relying on dictionary definitions for tangible and object. *Id*. The Supreme Court rejected this "unrestrained" interpretation of the phrase because "tangible object" was "last in a list of terms that begins 'any record [or] document," and "is therefore appropriately read to refer, not to any tangible object, but specifically to the subsect of tangible objects involving records and documents, *i.e.,* objects used to record or preserve information." *Id.* at 544. The Court also observed that "Congress would have had no reason to refer specifically to 'record' or 'document'" had Congress "intended 'tangible object' in § 1519 to be interpreted so generically as to capture physical objects as dissimilar as documents and fish." *Id.*

The same principles apply here. The term "other matter which contains any such visual depiction" appears at the end of a list of more specific things that can contain child pornography. As such, the doctrines of *noscitur a sociis* and *ejusdem generis* dictate that interpretation of the phrase must be "construed to embrace only

---

[11] Justice Alito concurred with the Court's judgment and also relied on *ejusdem generis* in his concurring opinion. *Yates*, 574 U.S. at 550 (Alito, J., concurring).

objects similar in nature to those objects enumerated by the preceding specific words." *Yates*, 574 U.S. at 553.

Just as "records and documents" are united by certain characteristics that make them different from other "tangible objects," namely that they are both "objects used to record or preserve information," books, magazines, periodicals, films, and videotapes are united by common features that distinguish them from other things that take up space and have mass. One such feature is that they are each a medium for communication of information or other content. Another is that they can "contain" child pornography in the sense that they can "have [child pornography] as a component or constituent part" or "include" child pornography, rather than just be "capable of holding" copies of child pornography.[12] A third feature is that their essence and value are a function of their content. Thus, the objects cannot be subdivided or altered without materially altering their essence: one cannot rip a page from a book, or erase part of a videotape, without changing the content of these "matters," and thus altering the matters themselves. As a result, if a person does choose to access, acquire, or distribute a book, magazine, periodical, film, or

---

[12] *Contain*, American Heritage Dictionary, *available at* https://ahdictionary.com/word/search.html?q=contain (last visited May 9, 2023) (also listing other definitions). *See also Contain,* Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com /dictionary/contain (last visited May 9, 2023) (listing, among other definitions, "… 2. a: to have within: hold … b. comprise, include …").

videotape containing child pornography, the child pornography must *necessarily* travel with the matter unless it is first changed.

Several items that take up space are unlike books, magazines, periodicals, films, and videotapes in these respects. For example, a file cabinet is not a medium for the communication of information. It can "contain" child pornography in that it can hold child pornography, but it cannot have child pornography as a "component or constituent part." Finally, if child pornography is removed from a file cabinet, the file cabinet remains intact, and its essence remains unchanged. The same could be said of closets, bureaus, buckets, bedframes, backpacks, purses, safe deposit boxes, homes, and more. All of these can contain child pornography in the sense that they can store it, but the principles for interpreting text applied in *Yates*, including application of the doctrines of *noscitur a sociis* and *ejusdem generis*, demonstrate that Congress did not use "other matter which contains" to refer to any piece of matter that can function as a storage device.

Indeed, had Congress meant for "other matter which contains" to refer to literally anything that takes up space and can store child pornography, it would have had no need to list the specific items that precede this phrase: all of them would be captured by the more general term.

The conclusion consistent with the principles of *noscitur a sociis*, *ejusdem generis*, and the imperative to not interpret words in a statute so as to render them

33

superfluous is that Congress used "other matter which contains [visual depictions of child pornography" in § 2253(a)(1) to mean "matter which has as a constituent part visual depictions of child pornography." This can include books and the other specific items listed in § 2253(a)(1), but it excludes many items that take up space but are mere storage containers, like file cabinets or buckets.

Like a file cabinet or bucket, a hard drive is simply a storage device unlike a book, magazine, periodical, film, or videotape. In particular, a hard drive's value is not in its content, and digital images of child pornography can be added and easily removed from a hard drive without changing the drive at all: it is not a "matter which has as a constituent part" the data stored within it. The same could be said for computers more generally, and floppy disks and jump drives. In short, because they do not share the qualities that distinguish books, magazines periodicals, films, and videotapes from other "matters which contain," hard drives and many other items fall outside the realm of items Congress meant to target for forfeiture as "other matter which contains [visual depictions of child pornography.]"

> 2.   The structure of § 2253 as a whole supports the conclusion that "other matter which contains" visual depictions of child pornography in § 2253(a)(1) refers only to matters that have visual depictions of child pornography as a constituent part.

As set out in Part I, § 2253(a) is divided into three sections. The second, (a)(2), plainly targets the *proceeds* of child pornography offenses. The third, (a)(3), serves

to target anything of value *used* to commit these offenses. This will always include any containers used to store or hide child pornography—including, in digital cases such as this one, any hard drive used to store such contraband images. Thus, because (a)(3) will always serve to ensure forfeiture of *containers* for child pornography, subsection (a)(1) must be interpreted to have some purpose other than simply ensuring that all containers of child pornography are forfeited, or else it is superfluous, a reading the Court must "resist." *Yates*, 574 U.S. at 543 ("We resist a reading of § 1519 that would render superfluous an entire provision passed in proximity as part of the same Act").

And (a)(1) *does* have a purpose distinct from (a)(3). The text of the entire subsection shows that the *focus* of (a)(1) is ensuring that that *images* of child pornography, wherever they are found, are taken out of circulation. Indeed, subsection (a)(1) begins by stating that the defendant forfeits "any visual depiction" described in certain child pornography statutes. § 2253(a)(1).

This context must inform the interpretation of "any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction" in (a)(1). And it suggests that Congress did not include that clause because it was focused on depriving the defendant of any *containers* used to hold child pornography—(a)(3) already covers that. Rather, Congress added (a)(1) to rid defendants, and the community, of these harmful images.

When child pornography images are found within file cabinets, bureaus, briefcases, hard drives, computers, jump drives, and the like, they can be removed from circulation in the public by cleanly severing or extracting them from their storage devices without causing any damage to the storage device in which they were found. Thus, forfeiture of the images alone, as contemplated by the first part of subsection (a)(1), accomplishes the goal of subsection (a)(1), and the defendant has little cause for complaint because all he has lost are contraband images.

But when the contraband images are constituent parts of a book, magazine, periodical, film, videotape and like "matter which contains such images" in the sense that they are *made up of* such images, in whole or part, the images cannot be extracted from or erased from the matter without fundamentally changing the matter itself, such as by ripping a page from a book or erasing part of a video, to the detriment of the defendant. The second part of (a)(1), mandating forfeiture of "other matter which contains" child pornography, serves to make clear that even though the forfeiture of child pornography images may sometimes only be possible by damaging or destroying property "which contains" child pornography in the sense that child pornography is a constituent part of the matter, the defendant cannot complain, because such destruction is necessary to accomplish the goal of (a)(1): removing child pornography from circulation.

36

Thus, the interplay among (a)(2), (a)(3), and (a)(1) in § 2253 provides additional support for the conclusion that Congress crafted (a)(1) as it did—placing the "or other matter which contains" clause after a specific list of items that cannot be easily segregated from their contents—with the intent to restrict the meaning of "other matter which contains" to other such items.

B.  Cases interpreting the term "other matter which contains" in prior versions of 18 U.S.C. § 2252(a)(4), and in a related provision in U.S.S.G. § 2G2.4(b)92), generally agree with Mr. McDonald that the phrase contemplates content files, not hard drives.

Until it was amended in 1998, 18 U.S.C. § 2252(a)(4)(B) prohibited the possession of three or more "books, magazines, periodicals, films, video tapes, or *other matter which contain* any visual depiction" of child pornography. Pub. L. 104-208, Sept. 30, 1996, 110 Stat. 3009-30 (emphasis added). A related guideline provision, U.S.S.G. § 2G2.4(b)(2), provided for a two-level enhancement if the offense involved "ten or more books, magazines, periodicals, films, video tapes, or *other items, containing* a visual depiction involving the sexual exploitation of a minor." (Emphasis added). With one exception, cases interpreting the term "other matter" in this version of § 2252(a)(4), and "other item" in U.S.S.G. § 2G2.4(b)(2), all support Mr. McDonald's reading of § 2253(a)(1).

In *United States v. Vig*, 167 F.3d 443 (8th Cir. 1999), the issue on appeal was whether defendants could be convicted under that prior version of

37

§ 2252(a)(4)(B) when their visual depictions of child pornography were saved in three or more computer image files but were located on only a single computer hard drive. *Id.* at 446. Vig argued that "other matter which contain" referred to the physical medium that contained the visual depictions—the computer hard drive—and therefore the evidence was insufficient to convict him of possessing three or more "other matter." *Id.* Unsurprisingly, in that context, the government argued, as Mr. McDonald does here, that "other matter" referred to the computer files containing the image, not the physical storage medium. *Id.* at 446-47.

In the absence of a statutory definition for the term "other matter," or what the court considered a clearly expressed legislative intention to the contrary, the Eighth Circuit looked to the plain language of the statute and the ordinary, commonsense meaning of the words to determine congressional purpose. Relying largely on *United States v. Hall*, 142 F.3d 988 (7th Cir. 1998), and *United States v. Fellows*, 157 F.3d 1197 (9th Cir. 1998), two decisions interpreting prior versions of § 2252(a)(4)(B) and U.S.S.G. § 2G2.4(b)(2), the *Vig* court held that the plain common sense meaning of "other matter" referred to computer image files, such that Vig's prosecution based on multiple files found on one computer was upheld. 167 F.3d at 447-48.[13]

---

[13] Finding no ambiguity in the statute, the court also rejected the Ninth Circuit's conclusion in *United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997), that a hard drive is the computer equivalent of a book, magazine, or periodical, as well as

Similarly, in *Fellows*, a defendant who pled guilty to possessing more than 10 computer graphics files of child pornography argued against application of the two-level enhancement in U.S.S.G. § 2G2.4(b)(2) on the ground that the computer graphics files he possessed were all found on one computer—*i.e.*, one "item." 157 F.3d at 1199, 1200, 1201. The court disagreed, finding that "a graphic file in a computer [not the computer itself] counts as an 'item' under U.S.S.G. § 2G2.4(b)(2)." *Id*. at 1201. More specifically, the Ninth Circuit found that:

> The commonality between the "items" specifically enumerated in the section is that they are all discrete containers for visual depictions *capable of being separately manipulated and distributed*.
>
> *The closest cousin to "books, magazines, periodicals, films, [or] video tapes" in the computer is a computer file.* Visual depictions in a computer are compiled and stored in graphics files, much like photographs are compiled and stored in books or magazines. As the district court recognized, the computer user *can separately view, copy, delete, or transmit each discrete graphics fil*e. Like the other "items" listed in the guideline section, a graphics file can store one or more visual depictions. *The similarities between computer graphics files and the other "items" are manifest.* Because the graphics file is the container used for compiling and storing visual depictions in a computer, it qualifies as an "item" under the plain language of U.S.S.G. § 2G2.4(b)(2).

---

the defendants' reliance on legislative history from a subsequent Congress to infer the intent of an earlier Congress for purposes of statutory construction. *Vig*, 167 F.3d at 448-49.

*Fellows*, 157 F.3d at 1201 (emphasis added). Even more to the point, the Ninth Circuit specifically disagreed with the defendant that "other item" in the guideline "is property defined as a computer hard drive, not a graphics file": "A computer hard drive is much more similar to a library than a book; … Each file within the hard drive is akin to a book or magazine within that library. *Thus, the files, not the hard drive, count as 'items' under" the guideline.*" *Id.* (emphasis added).[14]

In sum, the term "other matter which contains" as used in § 2253(a)(1) refers to individual computer files that have visual depictions of child pornography as a component or constituent part, not to the entirety of the device itself, as the district court's preliminary order of forfeiture implicitly held.

---

[14] Other courts also concluded that the term "item" used in U.S.S.G. § 2G2.4(b)(2) meant computer files, not the entire computer or hard drive, including in the Fourth Circuit. *See, e.g.*, *United States v. Michalec*, 1999 WL 187374, at *2 (4th Cir. Apr. 6, 1999) (unpublished) (citing favorably *Fellows* and other cases finding that "a computer file containing visual depictions of child pornography rather than the hard drive, is an 'item' within the meaning of USSG § 2G2.4(b)(2)"); *United States v. Thompson*, 281 F.3d 1088, 1091-92 (10th Cir. 2002) (agreeing with *Fellows* and other circuits that files, not hard drives, are "other items" under the guideline); *United States v. Harper*, 218 F.3d 1285, 1287 (11th Cir. 2000) (per curium) (agreeing with *Fellows* that each file—"separately acquirable, accessible, and distributable"—and not the entire computer disk, equates with a book or magazine for purposes of § 2G2.4(b)(2)); *United States v. Demerritt*, 196 F.3d 138, 143 (2d Cir. 1999) (agreeing with *Fellows* and others that under the plain meaning of U.S.S.G. § 2G2.4(b)(2), computer files are "items").

C.   Even if the hard drive is a "matter" subject to forfeiture under
     § 2253(a)(1), the non-contraband files that happen to reside on
     the hard drive are not.

Even if the Court concludes that a hard drive can be an "other matter which contains" visual depictions of child pornography in § 2253(a)(1), nothing in the statute indicates that the non-contraband stored inside such matters should also be subject to forfeiture.

The government argued below that the files are forfeitable unless the defense can point to language in § 2253(a)(1) explicitly stating that defendants may keep this property. But this argument ignores that forfeiture is a creature of statute, limited by the text of the relevant forfeiture provision, and that the government has the burden to establish that the statute mandates forfeiture of particular property. *See* Fed. R. Crim. P. 32.2(b)(1)(A); *United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011). It is not the defense's burden to establish that it does not.

Moreover, one would not expect a statute to state what a defendant does *not* forfeit—he forfeits nothing unless the statute says he does. *See* Fed. R. Crim. P. 32.2(b)(1)(A). Again, Rule 32.2's relevant language states that a defendant in this type of case "shall forfeit … any … matter which contains" child pornography. It does *not* state that he shall forfeit "any … matter … *and anything else found in that matter*." The lack of any textual support for the notion that defendants forfeit non-contraband that is not otherwise forfeitable should settle this case.

41

As discussed at length in Part II.A.3, an owner of data has interests in that data separate from his interests in whatever device is storing the data, just as a person can have interests in documents separate from his interests in a file cabinet in which they may be found.

Consider a filing cabinet in which a defendant stored physical images of child pornography. The first part of § 2253(a)(1) explicitly states that the defendant would "forfeit" his interests in those "visual depictions" And if the court, notwithstanding the above arguments, determined that the file cabinet qualified as a "matter which contains" child pornography as used in that provision, then the statute also would explicitly call for forfeiture of the filing cabinet. But the statute provides no textual support whatsoever for the idea that a defendant in such a case would also forfeit non-contraband family photos or intellectual property that happened to be in the forfeitable file cabinet. Nor does it provide support for the notion that such a defendant would forfeit non-contraband material that happened to be in a hard drive, which is essentially an electronic file cabinet. *See United States v. Williams*, 592 F.3d 511, 523 (4th Cir. 2010) ("At bottom, we conclude that the sheer amount of information contained on a computer does not distinguish the authorized search of the computer from an analogous search of a file cabinet containing a large number of documents.").

Because the government can point to nothing in § 2253 explicitly providing that Mr. McDonald forfeits his interest in non-contraband property, he retains his interests in this property.

D. <u>The Rule of Lenity dictates that this Court resolve any ambiguity about the scope of 18 U.S.C. § 2253(a)(1) in Mr. McDonald's favor.</u>

Should the Court disagree with Mr. McDonald's interpretation of §§ 2253(a)(1), then the Court should apply the rule of lenity to § 2553(a)(1).

When presented with ambiguity in a criminal statute, "the ambiguity must be resolved in favor of lenity of the accused." *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (quoting *United States v. Sheek*, 990 F.2d 150, 153 (4th Cir. 1993)). This guards against "extend[ing] criminal liability beyond that which Congress has plainly and unmistakably proscribed." *Id.* (quoting *United States v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012)). The rule of lenity unequivocally "applies to sentencing as well as substantive provisions." *United States v. Batchelder*, 442 U.S. 114, 121 (1979).

Accordingly, if any ambiguity survives the Court's analysis of 18 U.S.C. § 2253(a)(1), the Court must choose the construction yielding the least amount of forfeiture, or at least not resulting forfeiture of non-contraband property that was not used in his offense. *See United States v. R.L.C.*, 503 U.S. 291, 293 (1992).

IV.    FORFEITURE OF THE RECORDS OF MR. MCDONALD'S PERSONAL AND PROFESSIONAL LIFE, UNRELATED TO THE OFFENSE, VIOLATES THE EIGHTH AMENDMENT'S REQUIRE-MENT OF PROPORTIONALITY IN SENTENCING.

In the alternative, should the Court conclude that the government's forfeiture of Mr. McDonald's non-contraband files was proper, then the Court should consider whether the forfeiture violates the Eighth Amendment. As Mr. McDonald did not raise an Eighth Amendment challenge to the government's motion for a preliminary order of forfeiture below, his challenge on appeal is reviewable only for plain error. To succeed on plain-error review, Mr. McDonald must establish that (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Knight*, 606 F.3d 171, 177 (4th Cir. 2010). If these three prongs are met, then this Court may choose to exercise its discretion to correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732. Even on plain-error review, however, the district court's forfeiture of non-contraband files containing the artifacts of Mr. McDonald's personal, family and business life was unconstitutionally excessive under the Eighth Amendment's Excessive Fines Clause.

A.   Because the Eighth Amendment prohibits punishment that is grossly disproportional to the gravity of a defendant's offense, the district court erred in ordering the forfeiture of Mr. McDonald's non-contraband personal files, and that error was plain.

The Eighth Amendment dictates that "[e]xcessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII (emphasis added). The Excessive Fines Clause "limits the government's power to extract payments, whether in cash *or in kind*, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609-10, (1993) (emphasis added). The Supreme Court has held that "[f]orfeitures—payments in kind—are thus "fines" if they constitute punishment for an offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998).

In turn, this Court has concluded that the Supreme Court has consistently "reaffirmed that the *type of property at issue was irrelevant* to the issue of whether the forfeiture constituted punishment." *United States v. Jalaram, Inc.*, 599 F.3d 347, 354 (4th Cir. 2010) (emphasis added). Rather, so long as the forfeiture "stem[s] … from the property owner's criminal culpability[,]" then "the forfeiture does constitute punishment and so is subject to proportionality review under the Excessive Fines Clause." *Id.*

Further, in criminal forfeiture cases, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: the

amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bennett*, 986 F.3d 389, 399 (4th Cir. 2021). A punitive forfeiture violates the Excessive Fines Clause when it is "grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334. When determining whether a given forfeiture is "grossly disproportional," courts in this Circuit must weigh the so-called "*Jalaram* factors," specifically: (1) the forfeiture itself and its relationship to the authorized penalty; (2) the nature and extent of the criminal activity; (3) the relationship between the charged crime and other crimes; and (4) the harm caused by the charged crime. *See Jalaram, Inc.*, 599 F.3d at 355-56; *Bajakajian*, 524 U.S. at 337-39.

Here, the authorized monetary penalties in Mr. McDonald's case consisted of a fine of up to $250,000 for each count, a total possible special assessment of $200, a Justice for Victims of Trafficking total assessment of $10,000, and a possible child pornography special assessment of up to $52,000. *See* 18 U.S.C. § 3571; 18 U.S.C. § 3013; 18 U.S.C. § 3014; 18 U.S.C. § 2259A. The district court imposed a special assessment of $200, and restitution in the amount of $15,000. *See* J.A. 7 (docket entry 63); J.A. 49. In addition, the court ordered Mr. McDonald to forfeit the Seagate hard drive, which contained 156 files involving child pornography, J.A. 27, among the hundreds of thousands of files on the drive, including family pictures and software development files he created, J.A. 86.

That order, however, stripped Mr. McDonald of professional and personal "privacies of life" that happened to be on the Seagate hard drive. *See Riley v. California*, 573 U.S. 373 & 395 (2014) (noting that cell phones, another type of device for storing electronic data, often contain "a digital record of nearly every aspect of [one's] lives—from the mundane to the intimate"). The value to Mr. McDonald of the contents of the hard drive was incalculable. Further, none of the non-contraband files bear any relationship to any of the charged crimes or to any other crimes with which Mr. McDonald could have been charged. Indeed, they bear no relationship to any criminal activity whatsoever.

Under these circumstances, the district court committed error in ordering the wholesale forfeiture of the Seagate hard drive, including the entirety of its contents, without first conducting the necessary proportionality test mandated under the Excessive Fines Clause, as articulated in the *Jalaram, Inc.* factors.

Moreover, the court's error was plain. An error is plain when the settled law of the Supreme Court or of this Court establishes a district court's error. *See United States v. Brack*, 651 F.3d 388, 392 (4th Cir. 2011). Settled Supreme Court and Fourth Circuit law required the district court to engage in an Eighth Amendment proportionality review when ordering the forfeiture of property. The Supreme Court's decisions in *Austin* and *Bajakajian* date from 1993 and 1998, respectively, and this Court decided *Jalaram, Inc.* in 2010. Thus, for over a dozen years, district

courts have been required to evaluate whether forfeiture in a given case would violate the Eighth Amendment's Excessive Fine's Clause.

B.    <u>The district court's error affected Mr. McDonald's substantial rights and this Court should exercise its discretion to correct the error.</u>

To demonstrate that an error affected his substantial rights, the defendant must show a reasonable probability that but for the error, the outcome of the proceeding would have been different. *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016); *United States v. Marcus*, 560 U.S. 258, 262 (2010) (stating that a reasonable probability is a probability sufficient to undermine confidence in the outcome). Here, there is more than a reasonable probability that had the district court applied the Supreme Court's proportionality test, it would have concluded that the forfeiture violated the Eighth Amendment's Excessive Fines Clause. Here, the district court held that because the hard drive was used to commit the offense, it was therefore subject to forfeiture. J.A. 150-152. Because this reading of the statute is incorrect, there is more than a reasonable probability that had the district court applied the Supreme Court's proportionality test, it would have concluded that the forfeiture violated the Eighth Amendment's Excessive Fines Clause.

Further, the failure to correct the district court's error would seriously affect the fairness, integrity or public reputation of judicial proceedings or result in a miscarriage of justice. Many people store every aspect of their lives on electronic

devices. Losing those devices can result in "the only record for years of a person's life [being] lost in an instant." *United States v. Gladding*, 775 F.3d 1149, 1150 (9th Cir. 2014). This is precisely what the district court accomplished by ordering the blanket forfeiture of Mr. McDonald's electronic devices without engaging in the requisite constitutional analysis.

Given the importance of protecting records of the nature described in *Riley*, this Court should exercise its discretion to vacate Mr. McDonald's preliminary order of forfeiture. Alternatively, the Court should vacate and remand the matter to the district court to conduct a proper Eighth Amendment inquiry. Failure to correct this error will result in both a miscarriage of justice and seriously affect the fairness of the judicial proceeding. *Olano*, 507 U.S. at 736 (court will exercise its discretion to recognize a plain error if defendant shows error affecting his substantial rights also "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," or results in a miscarriage of justice) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

## CONCLUSION

For the reasons stated, the preliminary order of forfeiture should be vacated.

Respectfully submitted,

GEREMY C. KAMENS
Federal Public Defender
for the Eastern District of Virginia

    s/  Ann Mason Rigby
Ann Mason Rigby
Assistant Federal Public Defender
Counsel for Appellant
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
Ann_Rigby@fd.org

Dated May 9, 2023

## <u>REQUEST FOR ORAL ARGUMENT</u>

Counsel for appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same. Further, because Mr. McDonald's arguments overlap a great deal with those of the defendant in *United States v. Sanders*, Case No. 22-7054, he also respectfully requests that arguments in these cases be scheduled to be *in seriatim*.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief has been prepared using Microsoft Word for Office 365 software, Times New Roman font, 14-point proportional type size.

2.      EXCLUSIVE of the table of contents, table of authorities, statement with respect to oral argument, and the certificate of compliance, this brief contains no more than 13,000 words, specifically 11,177 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

       May 9, 2023                       s/   Ann Mason Rigby
            Date                           Ann Mason Rigby
                                     Assistant Federal Public Defender