No. 23-4052

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH COURT

_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

STUART CLAY MCDONALD,
*Defendant/Appellant.*

_____

On Appeal From the United States District Court
for the Eastern District of Virginia
Alexandria Division (The Hon. Claude M. Hilton)

_____

JOINT APPENDIX

VOLUME I of I (pages 1 - end)

_____

**JESSICA D. ABER**
**United States Attorney**

**GEREMY C. KAMENS**
**Federal Public Defender**

**Kevin Hudson**
**U.S. Attorney's Office**
**Counsel for Appellee**
**721 Lakefront Commons**
  **Suite 300**
**Newport News, VA 23606**
**(804) 819-5400**

**Patricia Haynes**
**Annie Zanobini**
**U.S. Attorney's Office**
**Counsel for Appellee**
**2100 Jamieson Avenue**
**Alexandria, VA 22314**
**(703) 299-3700**

**Ann Mason Rigby**
**Federal Public Defender Office**
**Counsel for Appellant**
**1650 King Street**
  **Suite 500**
**Alexandria, VA 22314**
**(703) 600-0800**

This page intentionally left blank for double-sided pagination and printing

# **TABLE OF CONTENTS**

District Court Docket Sheet (as of May 7, 2023) ........................................................1

Indictment (Mar. 16, 2022, Doc. 27) ...........................................................9

Transcript, Plea Hearing (May 19, 2022, Doc. 73; *see* Doc. 36) ...........................14

Statement of Facts (May 19, 2022, Doc. 37)................................................25

Order (dismissing remaining count of indictment) (May 19, 2022, Doc. 39).........29

Transcript, Sentencing Hearing (Aug. 19, 2022, Doc. 74; *see* Doc. 50).................30

Judgment in a Criminal Case (Aug. 19, 2022, Doc. 51)..........................................44

Order (continuing forfeiture hearing) (Nov. 3, 2022, Doc. 54)...............................50

Government's Motion for a Preliminary Order of Forfeiture (attachments omitted) (Nov. 14, 2022, Doc. 55)........................................................51

    Exhibit 1 (*Sanders* district court ruling, Doc. 55-1)..........................................68

    Government's proposed preliminary order of forfeiture (Doc. 55-2) ...............83

Defendant's Objection to Entry of Preliminary Order of Forfeiture Proffered by the Government (Nov. 28, 2022, Doc. 57) .....................................................86

    Defendant's proposed preliminary order of forfeiture (Doc. 57-1).................116

Government's Reply on Defendant's Brief Regarding Forfeiture (Dec. 1, 2022, Doc. 58)..................................................................................119

Defendant's Supplement to Opposition to Entry of Government's Proffered Preliminary Order of Forfeiture (Dec. 8, 2022, Doc. 59)................................126

Transcript, Forfeiture Hearing (Jan. 20, 2023, Doc. 72; *see* Doc. 62) .................137

Preliminary Order of Forfeiture (Jan. 20, 2023, Doc. 64) .....................................154

Defendant's Notice of Appeal (Jan. 26, 2023, Doc. 65)........................................156

This page intentionally left blank for double-sided pagination and printing

APPEAL,CLOSED,JURY

# U.S. District Court
## Eastern District of Virginia – (Alexandria)
## CRIMINAL DOCKET FOR CASE #: 1:22–cr–00051–CMH All Defendants

Case title: USA v. McDonald
Magistrate judge case number: 1:21–mj–00397–JFA

Date Filed: 03/16/2022
Date Terminated: 08/19/2022

---

Assigned to: District Judge Claude
M. Hilton

Appeals court case number:
23–4052 4th CCA, case manager
Emily Borneisen

**Defendant (1)**

| | |
|---|---|
| **Stuart Clay McDonald**<br>*TERMINATED: 08/19/2022* | represented by **Ann Mason Rigby**<br>Office of the Federal Public Defender (Alexandria)<br>1650 King St<br>Suite 500<br>Alexandria, VA 22314<br>703–600–0800<br>Fax: 703–600–0880<br>Email: ann_rigby@fd.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:2252(a)(2) Receipt of Child Pornography FORFEITURE<br>(1) | 72 Months BP as to Counts 1 and 3 to run concurrently; 10 Yr SR Term w/ Conditions as to Counts 1 and 3 to run concurrently; $100 SA per Count |
| 18:2252(a)(4)(B) Possession of Child Pornography FORFEITURE<br>(2) | DISMISSED on Gov't Motion |
| 18:2252(a)(4)(B) Possession of Child Pornography FOREFEITURE<br>(3) | 72 Months BP as to Counts 1 and 3 to run concurrently; 10 Yr SR Term w/ Conditions as to Counts 1 and 3 to run concurrently; $100 SA per Count |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|

**J.A. 001**

18:2252(a)(2) Receipt of Child
Pornography

---

**Plaintiff**

**USA**                                    represented by    **Annie Zanobini**
DOJ–USAO
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
703–299–3700
Email: annie.zanobini2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: US Attorney*

**Patricia M. Haynes**
United States Attorney's Office
2100 Jamieson Ave
Alexandria, VA 22314
(703)299–3700
Email: patricia.haynes@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/10/2021 | 1 | COMPLAINT as to Stuart Clay McDonald. (kgall) [1:21–mj–00397–JFA] (Entered: 12/10/2021) |
| 12/10/2021 | 2 | AFFIDAVIT by USA as to Stuart Clay McDonald in re 1 Complaint. (kgall) [1:21–mj–00397–JFA] (Entered: 12/10/2021) |
| 12/10/2021 | 4 | Redacted Criminal Case Cover Sheet. (kgall) [1:21–mj–00397–JFA] (Entered: 12/10/2021) |
| 12/10/2021 | 5 | Arrest Warrant Issued by Magistrate Judge Ivan D. Davis in case as to Stuart Clay McDonald. (kgall) [1:21–mj–00397–JFA] (Entered: 12/10/2021) |
| 12/10/2021 | 6 | MOTION to Seal Complaint by USA as to Stuart Clay McDonald. (kgall) [1:21–mj–00397–JFA] (Entered: 12/10/2021) |
| 12/10/2021 | 7 | ORDER granting 6 Motion to Seal Complaint as to Stuart Clay McDonald. Signed by Magistrate Judge Ivan D. Davis on 12/10/2021. (kgall) [1:21–mj–00397–JFA] (Entered: 12/10/2021) |
| 12/15/2021 | | Arrest of Stuart Clay McDonald (tfitz, ) [1:21–mj–00397–JFA] (Entered: 12/15/2021) |
| 12/15/2021 | | Case unsealed as to Stuart Clay McDonald. (tfitz, ) [1:21–mj–00397–JFA] (Entered: 12/15/2021) |
| 12/15/2021 | 8 | Minute Entry for proceedings held before Magistrate Judge Theresa Carroll Buchanan:Initial Appearance as to Stuart Clay McDonald held on 12/15/2021. USA appeared through Annie Zanobini. Deft appeared w/o counsel. Deft informed of rights, charges and penalties. Deft thinks he has retained counsel. Matter set for a Status Conference on 12/16/2021 at 02:30 PM in Alexandria Courtroom 500 before Magistrate Judge Theresa Carroll Buchanan to confirm whether deft has retained counsel. Deft remanded to the custody of the USMS.(Tape #FTR.)(tfitz, ) [1:21–mj–00397–JFA] (Entered: 12/15/2021) |
| 12/15/2021 | 9 | Temporary Detention Order as to Stuart Clay McDonald. Signed by Magistrate Judge Theresa Carroll Buchanan on 12/15/21. (tfitz, ) [1:21–mj–00397–JFA] (Entered: 12/15/2021) |

**J.A. 002**

| 12/15/2021 | 10 | Arrest Warrant Returned Executed on 12/14/2021 in case as to Stuart Clay McDonald. (kgall) [1:21−mj−00397−JFA] (Entered: 12/16/2021) |
|---|---|---|
| 12/16/2021 | 11 | Minute Entry for proceedings held before Magistrate Judge Theresa Carroll Buchanan:Status Conference as to Stuart Clay McDonald held on 12/16/2021. USA appeared through Rachel Rothberg. Deft appeared w/o counsel. Court to appoint FPD as counsel at this time due to deft's uncertainty to retain counsel. Preliminary/Detention Hearing set for 12/17/2021 at 02:00 PM in Alexandria Courtroom 500 before Magistrate Judge Theresa Carroll Buchanan. Deft remanded to the USMS custody.(Tape #FTR.)(tfitz, ) [1:21−mj−00397−JFA] (Entered: 12/16/2021) |
| 12/16/2021 | 12 | Temporary Detention Order as to Stuart Clay McDonald. Signed by Magistrate Judge Theresa Carroll Buchanan on 12/16/21. (tfitz, ) [1:21−mj−00397−JFA] (Entered: 12/16/2021) |
| 12/16/2021 | | ORAL ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Stuart Clay McDonald; Ann Mason Rigby for Stuart Clay McDonald appointed. Ordered by Magistrate Judge Theresa Carroll Buchanan on 12/16/21. (tfitz, ) [1:21−mj−00397−JFA] (Entered: 12/17/2021) |
| 12/17/2021 | 13 | Pretrial Services Bond REPORT (Initial Pretrial Services Bond Report) (SEALED – government and defense counsel) as to Stuart Clay McDonald. (Brewer, Nicole) [1:21−mj−00397−JFA] (Entered: 12/17/2021) |
| 12/17/2021 | 14 | Minute Entry for proceedings held before Magistrate Judge Theresa Carroll Buchanan: Matter came on for a Preliminary/Detention Hearing–not held. USA appeared through Patricia Haynes. Deft appeared w/counsel Whitney Minter. Status Conference as to Stuart Clay McDonald held on 12/17/2021. Deft requests a continuance to confirm retained counsel–Granted. Preliminary/Detention Hearing reset for 12/21/2021 at 02:00 PM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. Deft remanded.(Tape #FTR.)(tfitz, ) [1:21−mj−00397−JFA] (Entered: 12/17/2021) |
| 12/17/2021 | 15 | Temporary Detention Order as to Stuart Clay McDonald. Signed by Magistrate Judge Theresa Carroll Buchanan on 12/17/21. (tfitz, ) [1:21−mj−00397−JFA] (Entered: 12/17/2021) |
| 12/21/2021 | 16 | Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Preliminary Hearing as to Stuart Clay McDonald held on 12/21/2021. US appeared through: Patricia Haynes. Deft appeared with counsel: Ann Mason Rigby. Counsel for the parties and the defendant were orally advised of the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Gov't adduced evidence and rests. Affidavit admitted into evidence as gov't exhibit no. 1. Court finds PC. Matter continued for further proceedings before the Grand Jury. Detention Hearing as to Stuart Clay McDonald held on 12/21/2021. Gov't is seeking detention. Deft does not contest detention at this time. Deft remanded. (Tape #FTR.)(wgar, ) [1:21−mj−00397−JFA] (Entered: 12/21/2021) |
| 12/21/2021 | 17 | ORDER – This matter comes before the Court on its own initiative. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, the Court ORDERS the United States to adhere to the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady v. Maryland instructs that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87. Failure to adhere to this requirement may result in serious consequences, up to and including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the court. Having given counsel the oral admonition required by the Due Process Protections Act, this Order serves as the reminder of prosecutorial obligation and duties in accordance with Rule 5(f) and the Eastern District of Virginia Standing Order concerning the same as to Stuart Clay McDonald. Signed by Magistrate Judge John F. Anderson on 12/21/2021. (wgar, ) [1:21−mj−00397−JFA] (Entered: 12/21/2021) |
| 12/21/2021 | 18 | ORDER OF DETENTION as to Stuart Clay McDonald. Signed by Magistrate Judge John F. Anderson on 12/21/2021. (wgar, ) [1:21−mj−00397−JFA] (Entered: 12/21/2021) |

**J.A. 003**

| | | |
|---|---|---|
| 01/10/2022 | 19 | Consent Motion for Extension of Time to Indict by USA as to Stuart Clay McDonald. (Attachments: # 1 Proposed Order)(kgall) [1:21−mj−00397−JFA] (Entered: 01/10/2022) |
| 01/10/2022 | 20 | ORDER granting 19 Motion for Extension of Time to Indictment as to Stuart Clay McDonald. ORDERED that the time period in which an indictment must be filed in the instant matter is extended to February 17, 2022. The Court specifically finds that the period of delay from January 17, 2022 to February 17, 2022 shall be excluded in computing the time within which an indictment must be filed. Signed by District Judge Leonie M. Brinkema on 1/10/2022. (kgall) [1:21−mj−00397−JFA] (Entered: 01/10/2022) |
| 01/21/2022 | 21 | Consent MOTION for Protective Order by USA as to Stuart Clay McDonald. (Attachments: # 1 Proposed Order)(Zanobini, Annie) [1:21−mj−00397−JFA] (Entered: 01/21/2022) |
| 01/21/2022 | 22 | Joint MOTION for Protective Order *Child Victim and Witness Privacy* by USA as to Stuart Clay McDonald. (Attachments: # 1 Proposed Order)(Zanobini, Annie) [1:21−mj−00397−JFA] (Entered: 01/21/2022) |
| 01/21/2022 | 23 | Protective Order. Signed by Magistrate Judge John F. Anderson on 01/21/2022. (wgar, ) [1:21−mj−00397−JFA] (Entered: 01/21/2022) |
| 01/21/2022 | 24 | Protective Order CONCERNING CHILD VICTIM AND WITNESS PRIVACY. Signed by Magistrate Judge John F. Anderson on 01/21/2022. (wgar, ) [1:21−mj−00397−JFA] (Entered: 01/21/2022) |
| 02/10/2022 | 25 | Second MOTION for Extension of Time to Indict by USA as to Stuart Clay McDonald. (Attachments: # 1 Proposed Order)(Zanobini, Annie) [1:21−mj−00397−JFA] (Entered: 02/10/2022) |
| 02/10/2022 | 26 | ORDERED that the time period for indicting the defendant be and is hereby extended up to and including March 17, 2022. Accordingly, the delay resulting from the pending motion for extension shall be excluded in computing the time within which an indictment must be filed as to Stuart Clay McDonald. No further extension will be granted. Signed by District Judge Leonie M. Brinkema on 02/10/2022. (dvanm) [1:21−mj−00397−JFA] (Entered: 02/10/2022) |
| 03/16/2022 | 27 | INDICTMENT as to Stuart Clay McDonald (1) count(s) 1, 2. (shea) (Entered: 03/16/2022) |
| 03/16/2022 | 30 | Redacted Criminal Case Cover Sheet (shea) (Main Document 30 replaced on 3/17/2022) (shea, ). (Entered: 03/16/2022) |
| 03/16/2022 | | Set/Reset Hearings as to Stuart Clay McDonald: Arraignment set for 3/25/2022 at 09:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (shea) (Entered: 03/16/2022) |
| 03/17/2022 | | Counts added: Stuart Clay McDonald (1) count(s) 3 (shea) (Entered: 03/17/2022) |
| 03/23/2022 | | Case as to Stuart Clay McDonald Reassigned to District Judge Patricia Tolliver Giles. District Judge T. S. Ellis, III no longer assigned to the case. (jlan) (Entered: 03/23/2022) |
| 03/24/2022 | | Reset Hearings as to Stuart Clay McDonald: Arraignment set for 3/31/2022 at 09:00 AM in Alexandria Courtroom 801 before District Judge Patricia Tolliver Giles. (jlan) (Entered: 03/24/2022) |
| 03/24/2022 | | Case as to Stuart Clay McDonald Reassigned to District Judge Claude M. Hilton. District Judge Patricia Tolliver Giles no longer assigned to the case. (jlan) (Entered: 03/24/2022) |
| 03/24/2022 | | Reset Hearing as to Stuart Clay McDonald: Arraignment set for 4/8/2022 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (jlan) (Entered: 03/24/2022) |
| 04/08/2022 | 31 | Minute Entry for proceedings held before District Judge Claude M. Hilton: Arraignment as to Stuart Clay McDonald Count 1,2,3 held on 4/8/2022. US appeared through Patrica Haynes. Deft appeared w/ counsel Brittany Haynes. Deft through |

| | | counsel WFA, PNG and demanded a jury trial. Motions to be filed within 20 days. Discovery Order filed and entered. Motion Hearing set for 5/23/2022 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. Jury Trial set for 6/7/2022 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. Defendant remanded. (Court Reporter J. Egal)(kgall) (Entered: 04/08/2022) |
|---|---|---|
| 04/08/2022 | 32 | Discovery Order as to Stuart Clay McDonald. Signed by District Judge Claude M. Hilton on 4/8/2022. (kgall) (Entered: 04/08/2022) |
| 04/28/2022 | 33 | MOTION to Continue *DEADLINE FOR FILING OF MOTIONS FROM APRIL 28 TO MAY 4 – Unopposed,* by Stuart Clay McDonald. (Attachments: # 1 Proposed Order)(Rigby, Ann) (Entered: 04/28/2022) |
| 04/29/2022 | 34 | ORDER granting 33 Motion to Continue Deadline for Filing Motions. ORDERED that the parties shall file any pretrial motions on or before May 4, 2022. Signed by District Judge Claude M. Hilton on 4/29/2022. (kgall) (Entered: 05/03/2022) |
| 05/10/2022 | 35 | Sealed Document. (kgall) (Entered: 05/10/2022) |
| 05/16/2022 | | Set Hearings as to Stuart Clay McDonald: Change of Plea Hearing set for 5/19/2022 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (kgall) (Entered: 05/16/2022) |
| 05/19/2022 | 36 | Minute Entry for proceedings held before District Judge Claude M. Hilton: Change of Plea Hearing as to Stuart Clay McDonald held on 5/19/2022. US appeared through Annie Zanobini and Patricia Haynes. Deft appeared with counsel Ann Rigby. Deft PG to Counts 1 and 3 of the Indictment. Gov't Motion to Dismiss Count 2; Granted and Order entered. Deft referred to PO for PSIR. Sentencing set for 8/12/2022 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. Deft remanded. (Court Reporter J. Egal)(kgall) (Entered: 05/19/2022) |
| 05/19/2022 | | Terminate Hearings as to Stuart Clay McDonald: Motion hearing set for 5/23/2022 and Jury Trial set for 6/7/2022. (kgall) (Entered: 05/19/2022) |
| 05/19/2022 | 37 | Statement of Facts as to Stuart Clay McDonald. (kgall) (Entered: 05/19/2022) |
| 05/19/2022 | 38 | MOTION to Dismiss Remaining Count of the Indictment by USA as to Stuart Clay McDonald. (kgall) (Entered: 05/19/2022) |
| 05/19/2022 | 39 | ORDER granting 38 Motion to Dismiss Remaining Count of the Indictment as to Stuart Clay McDonald. Signed by District Judge Claude M. Hilton on 5/19/2022. (kgall) (Entered: 05/19/2022) |
| 07/08/2022 | 40 | PRESENTENCE INVESTIGATION REPORT (Disclosed Presentence Investigation Report) (SEALED – government and defense counsel) as to Stuart Clay McDonald. Objections to PSI due 07/25/2022. (hudnall, vicki) (Entered: 07/08/2022) |
| 08/02/2022 | | Reset Hearings as to Stuart Clay McDonald: Sentencing set for 8/19/2022 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (kgall) (Entered: 08/02/2022) |
| 08/08/2022 | 41 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED – government and defense counsel) as to Stuart Clay McDonald. (Attachments: # 1 Letter DF 178 Noting changes to PSR)(hudnall, vicki) (Entered: 08/08/2022) |
| 08/10/2022 | 43 | Incorrect document was attached for this filing. The electronic document has been removed. The filing user has been notified to refile the PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED – government and defense counsel) as to Stuart Clay McDonald. Victim Impact Statement attached. (hudnall, vickie) (Main Document 43 replaced on 8/10/2022) (ldab, ) (Entered: 08/10/2022) |
| 08/10/2022 | 44 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED – government and defense counsel) as to Stuart Clay McDonald. Attached to the Presentence Investigation Report are 5 Victim Impact Statements.(hudnall, vickie) (Entered: 08/10/2022) |

| | | |
|---|---|---|
| 08/12/2022 | 45 | Position on Sentencing by USA as to Stuart Clay McDonald (Zanobini, Annie) (Entered: 08/12/2022) |
| 08/15/2022 | 46 | SENTENCING MEMORANDUM by Stuart Clay McDonald (Attachments: # 1 Exhibit Placeholder for sealed exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Rigby, Ann) (Entered: 08/15/2022) |
| 08/15/2022 | 47 | MOTION to Seal *Unredacted Copy of Sentencing Memo, and Exhibit 1 Thereto,* by Stuart Clay McDonald. (Attachments: # 1 Proposed Order)(Rigby, Ann) (Entered: 08/15/2022) |
| 08/15/2022 | 48 | NOTICE *of Filing Documents Proposed to be Sealed,* by Stuart Clay McDonald (Rigby, Ann) (Entered: 08/15/2022) |
| 08/15/2022 | 49 | Sealed Document 46 Sentencing Memorandum filed by Stuart Clay McDonald. (Attachments: # 1 Exhibit)(show) (Entered: 08/17/2022) |
| 08/19/2022 | 50 | Minute Entry for proceedings held before District Judge Claude M. Hilton: Sentencing held on 8/19/2022 for Stuart Clay McDonald as to Counts 1 and 3. US appeared through Annie Zanobini and Patricia Haynes. Deft appeared w/counsel Ann Rigby. Court finds the guidelines to be properly assessed at a range of 97 to 121 months as to Count 1 and Count 3. Considering the factors under § 3553, and the Court finds that a sentence below the guideline range is appropriate. 72 Months imprisonment as to Counts 1 and 3 to run concurrently; 10 Yrs supervised release as to Counts 1 and 3 to run concurrently with conditions; $ 100 SA per Count. Court recommends that the deft be incarcerated in a facility where he can receive drug treatment. Court recommends that the deft be incarcerated at FCI Fort Dix. Deft remanded. Restitution and Forfeiture Hearing set for 11/7/2022 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (Court Reporter J. Egal)(kgall) (Entered: 08/19/2022) |
| 08/19/2022 | 51 | JUDGMENT as to Stuart Clay McDonald, Counts 1 and 3, 72 Months BP as to Counts 1 and 3 to run concurrently; 10 Yr SR Term w/ Conditions as to Counts 1 and 3 to run concurrently; $100 SA per Count; Count 2, DISMISSED on Gov't Motion. Signed by District Judge Claude M. Hilton on 8/18/2022. (kgall) (Entered: 08/19/2022) |
| 08/19/2022 | 52 | Sealed Statement of Reasons as to Stuart Clay McDonald. (kgall) (Entered: 08/19/2022) |
| 11/01/2022 | 53 | Joint MOTION to Continue *Forfeiture and Restitution Hearing* by USA as to Stuart Clay McDonald. (Attachments: # 1 Proposed Order)(Zanobini, Annie) (Entered: 11/01/2022) |
| 11/03/2022 | 54 | ORDER granting 53 MOTION to Continue and this matter is hereby rescheduled from November 7, 2022, to December 12, 2022 at 10:00; Forfeiture/Restitution Hearing reset for 12/12/2022 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. Signed by District Judge Claude M. Hilton on 11/2/2022. (tarm) (Entered: 11/03/2022) |
| 11/14/2022 | 55 | MOTION for Forfeiture of Property −−*Entry of Preliminary Order of Forfeiture* by USA as to Stuart Clay McDonald. (Attachments: # 1 Exhibit, # 2 Proposed Order)(Zanobini, Annie) (Entered: 11/14/2022) |
| 11/16/2022 | 56 | Notice of Hearing Date set for 12/12/2022 re 55 MOTION for Forfeiture of Property −−*Entry of Preliminary Order of Forfeiture* by USA (Zanobini, Annie) (Entered: 11/16/2022) |
| 11/17/2022 | | Set Deadline in case as to Stuart Clay McDonald 55 MOTION for Forfeiture of Property−−Entry of Preliminary Order of Forfeiture. Motion Hearing set for 12/12/2022 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (wgar, ) (Entered: 11/17/2022) |
| 11/28/2022 | 57 | Opposition by Stuart Clay McDonald re 55 MOTION for Forfeiture of Property −−*Entry of Preliminary Order of Forfeiture* (Attachments: # 1 Proposed Order)(Rigby, Ann) (Entered: 11/28/2022) |
| 12/01/2022 | 58 | REPLY TO RESPONSE to USA as to Stuart Clay McDonald re 57 Opposition (Zanobini, Annie) (Entered: 12/01/2022) |

**J.A. 006**

| | | |
|---|---|---|
| 12/08/2022 | 59 | Supplemental Memorandum by Stuart Clay McDonald re 55 MOTION for Forfeiture of Property – –*Entry of Preliminary Order of Forfeiture* (Rigby, Ann) (Entered: 12/08/2022) |
| 12/12/2022 | | Terminate Deadlines and Hearings as to Stuart Clay McDonald: Forfeiture Hearing set for 12/12/22 to be reset per CMH's chambers (tarm) (Entered: 12/12/2022) |
| 12/13/2022 | | Set/Reset Hearings as to Stuart Clay McDonald: Forfeiture Hearing reset for 1/20/2023 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (Per CMH's Chambers) (tarm) (Entered: 12/13/2022) |
| 12/15/2022 | 60 | MOTION for Leave to be Absent from Forfeiture Hearing, by Stuart Clay McDonald. (Attachments: # 1 Exhibit – Waiver, # 2 Proposed Order)(Rigby, Ann) (Entered: 12/15/2022) |
| 12/16/2022 | 61 | ORDER granting 60 MOTION for Leave to be Absent from Forfeiture Hearing as to Stuart Clay McDonald. ORDERED that Mr. McDonald is excused from appearing at the forfeiture hearing in this matter; and it is further ORDERED that the government shall not request that the U.S. Marshals Service transport Mr. McDonald to Alexandria for the hearing. Signed by District Judge Claude M. Hilton on 12/16/2022. (show) (Entered: 12/19/2022) |
| 01/20/2023 | 62 | Minute Entry for proceedings held before District Judge Claude M. Hilton: Forfeiture Hearing as to Stuart Clay McDonald held on 1/20/2023. US appeared through: Annie Zanobini and Patricia Haynes. Deft appeared through counsel Ann Rigby. Matter on for Restitution/Forfeiture hearing. Counsel indicated that restitution has been resolved. Restitution Order filed in open court.US' Motion for Forfeiture – Argued and Granted, Forfeiture Order previously submitted to be entered by the Court. (Court Reporter: J. Egal)(tarm) (Entered: 01/20/2023) |
| 01/20/2023 | 63 | Restitution Order as to Stuart Clay McDonald in the amount of $15,000.00. Signed by District Judge Claude M. Hilton on 1/20/2023. (tarm) (Additional attachment(s) added on 1/20/2023: # 1 Sealed Attachment A) (tarm, ). (Entered: 01/20/2023) |
| 01/20/2023 | 64 | PRELIMINARY ORDER OF FORFEITURE as to Stuart Clay McDonald. Signed by District Judge Claude M. Hilton on 1/20/2023. (tarm, ) (Entered: 01/20/2023) |
| 01/26/2023 | 65 | NOTICE OF APPEAL of *Preliminary Order of Forfeiture,* by Stuart Clay McDonald (Rigby, Ann) (Entered: 01/26/2023) |
| 01/30/2023 | 66 | Transmission of Notice of Appeal to 4CCA as to Stuart Clay McDonald to US Court of Appeals re 65 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (swil) (Entered: 01/30/2023) |
| 01/30/2023 | 67 | USCA Case Number 23–4052 4th CCA, case manager Emily Borneisen, for 65 Notice of Appeal filed by Stuart Clay McDonald. (dvanm) (Entered: 01/31/2023) |
| 01/30/2023 | 68 | ORDER of USCA as to Stuart Clay McDonald re 65 Notice of Appeal. The court appoints the Federal Defender for the Eastern District of Virginia to represent Stuart Clay McDonald in this case. (dvanm) (Entered: 01/31/2023) |
| 02/13/2023 | 69 | TRANSCRIPT REQUEST by Stuart Clay McDonald for proceedings held on May 19, 2022 (plea); Aug. 19, 2022 (sentencing); Jan. 20, 2023 (forfeiture) before Judge Hilton, (Pratt, Frances) (Entered: 02/13/2023) |
| 02/14/2023 | 70 | Transcript Order Acknowledgment from USCA re 65 Notice of Appeal: Court Reporter Julie Egal. (show) (Entered: 02/14/2023) |
| 03/15/2023 | 71 | Letter to Court filed by Stuart Clay McDonald. (Attachments: # 1 Envelope) (show) (Entered: 03/20/2023) |
| 03/23/2023 | 72 | TRANSCRIPT of Forfeiture Hearing as to Stuart Clay McDonald for dates of January 20, 2023 before Judge Claude M. Hilton, re 65 Notice of Appeal Court Reporter/Transcriber Julie Goodwin, Telephone number 571–970–3191. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is** |

**J.A. 007**

| | | |
|---|---|---|
| | | **located on our website at** <u>**www.vaed.uscourts.gov**</u> *Does this satisfy all appellate orders for this reporter? n* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 4/24/2023. Redacted Transcript Deadline set for 5/23/2023. Release of Transcript Restriction set for 6/21/2023.(egal, julie) (Entered: 03/23/2023)** |
| 03/28/2023 | <u>73</u> | TRANSCRIPT of Plea as to Stuart Clay McDonald for dates of May 19, 2022 before Judge Claude M. Hilton, re <u>65</u> Notice of Appeal Court Reporter/Transcriber Julie Goodwin, Telephone number 571–970–3191. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at** <u>**www.vaed.uscourts.gov**</u> *Does this satisfy all appellate orders for this reporter? n* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 4/27/2023. Redacted Transcript Deadline set for 5/30/2023. Release of Transcript Restriction set for 6/26/2023.(egal, julie) (Entered: 03/28/2023)** |
| 03/28/2023 | <u>74</u> | TRANSCRIPT of Sentencing as to Stuart Clay McDonald for dates of August 19, 2022 before Judge Claude M. Hilton, re <u>65</u> Notice of Appeal Court Reporter/Transcriber Julie Goodwin, Telephone number 571–970–3191. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at** <u>**www.vaed.uscourts.gov**</u> *Does this satisfy all appellate orders for this reporter? y* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 4/27/2023. Redacted Transcript Deadline set for 5/30/2023. Release of Transcript Restriction set for 6/26/2023.(egal, julie) (Entered: 03/28/2023)** |

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STUART CLAY MCDONALD,<br><br>Defendant. | Case No. 1:22-CR-51<br><br>Count 1: 18 U.S.C. § 2252(a)(2)<br>(Receipt of Child Pornography)<br><br>Counts 2 and 3: 18 U.S.C. § 2252(a)(4)(B)<br>(Possession of Child Pornography)<br><br>Forfeiture Notice |

## INDICTMENT

March 2022 Term- at Alexandria, Virginia

### Count One

### (Receipt of Child Pornography)

THE GRAND JURY CHARGES THAT:

From in and around May 2020, through in and around May 2021, the defendant, STUART CLAY MCDONALD, within the Eastern District of Virginia and elsewhere, did knowingly receive visual depictions using any means and facility of interstate and foreign commerce, that had been shipped and transported in and affecting interstate and foreign commerce, and which contained materials which had been mailed and so shipped and transported, by any means including by computer, and the production of such visual depiction involved the use of minors engaging in sexually explicit conduct and the visual depiction is of such conduct.

(In violation of Title 18, United States Code, Section 2252(a)(2) & (b)(1)).

**J.A. 009**

## Count Two

### (Possession of Child Pornography)

THE GRAND JURY FURTHER CHARGES THAT:

From in and around May 2020, through in and around July 2021, STUART CLAY MCDONALD, within the Eastern District of Virginia, did knowingly possess a matter, that is, a Dell Ultrabook Latitude E7470, Service Tag 2YX9KC2, which contained visual depictions which had been mailed and shipped and transported using any means and facility of interstate and foreign commerce, and which were produced using materials which had been mailed and shipped and transported in and affecting interstate and foreign commerce, by any means including by computer, the production of which involved the use of a minor engaged in sexually explicit conduct and the visual depiction was of such conduct.

(In violation of Title 18, United States Code, Section 2252(a)(4)(B) & (b)(2)).

## Count Three

### (Possession of Child Pornography)

THE GRAND JURY FURTHER CHARGES THAT:

On or about September 9, 2021, the defendant, STUART CLAY MCDONALD, within the Eastern District of Virginia, did knowingly possess a matter, that is, a Seagate hard drive, serial number NA05H5FZ, which contained visual depictions which had been mailed and shipped and transported using any means and facility of interstate and foreign commerce and which were produced using materials which have been mailed and shipped and transported in and affecting interstate and foreign commerce, by any means including by computer, the production of which involved the use of a minor engaged in sexually explicit conduct and the visual depiction was of such conduct.

(In violation of Title 18, United States Code, Section 2252(a)(4)(B) & (b)(2)).

## FORFEITURE NOTICE

The Grand Jury finds that there is probable cause that the property described in this NOTICE OF FORFEITURE is subject to forfeiture pursuant to the statutes described herein.

Defendant STUART CLAY MCDONALD is hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of any of the Counts alleged in this Indictment, he shall forfeit to the United States, pursuant to 18 U.S.C. § 2253(a): (1) any and all matters that contain visual depictions of minors engaged in sexually explicit conduct in violation of the charged offense; (2) any property real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

The property subject to forfeiture includes, but is not limited to, the following:

    a.  A Seagate hard drive, serial number NA05H5FZ; and

    b.  A Dell Ultrabook Latitude E7470, Service Tag 2YX9KC2.

Pursuant to 21 U.S.C. § 853(p), defendant shall forfeit substitute property, if, by any act or omission of defendant's, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(Pursuant to Title 18, United States Code, Sections 2253(a), and Federal Rules of Criminal Procedure 32.2)

**J.A. 012**

A TRUE BILL

Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

Foreperson

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Annie Zanobini
Assistant United States Attorney
Patricia Haynes
Assistant United States Attorney



1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA    )
                            )
                            )
     VS.                    )  1:22-CR-51  CMH
                            )
                            )  ALEXANDRIA, VIRGINIA
                            )   MAY 19, 2022
                            )
STUART CLAY MCDONALD        )
_____)

_____

**TRANSCRIPT OF PLEA**
**BEFORE THE HONORABLE CLAUDE M. HILTON**
**UNITED STATES DISTRICT JUDGE**

_____

**Proceedings reported by stenotype, transcript produced by**

**Julie A. Goodwin.**

Julie A. Goodwin, CSR, RPR

**J.A. 014**

2

1                          A P P E A R A N C E S

2

3    FOR THE PLAINTIFF:
          UNITED STATES ATTORNEY'S OFFICE
4         By:  MS. ANNIE ZANOBINI
          MS. PATRICIA M. HAYNES
5         Assistant U.S. Attorneys
          2100 Jamieson Avenue
6         Alexandria, Virginia  22314
          703.299.3700
7         annie.zanobini2@usdoj.gov
          patricia.haynes@usdoj.gov
8

9

10   FOR THE DEFENDANT:
11        OFFICE OF THE FEDERAL PUBLIC DEFENDER
          By:  MS. ANN MASON RIGBY
12        Assistant Federal Public Defender
          1650 King Street
13        Suite 500
          Alexandria, Virginia  22314
14        703.600.0800
          ann_rigby@fd.org
15

16

17   OFFICIAL U.S. COURT REPORTER:
18        MS. JULIE A. GOODWIN, RPR
          United States District Court
19        401 Courthouse Square
          Eighth Floor
20        Alexandria, Virginia  22314

21

22

23

24

25

                                     Julie A. Goodwin, CSR, RPR

**J.A. 015**

3

1   (MAY 19, 2022, 10:04 A.M., OPEN COURT.)

2        THE COURTROOM DEPUTY:  Criminal Number 22-51, *United*

3   *States of America versus Stuart Clay McDonald*.

4        Will counsel please note your appearance for the

5   record.

6        MS. HAYNES:  Patricia Haynes and Annie Zanobini on

7   behalf of the United States.  Good morning, Your Honor.

8        THE COURT:  Good morning.

9        MS. RIGBY:  Good morning, Your Honor.  Ann Mason Rigby

10  on behalf of Mr. McDonald, who is present.

11       THE COURT:  All right.  Good morning.

12       MS. HAYNES:  Oh, Your Honor, if I may?

13       The defendant is going to be pleading guilty to

14  counts one and three of the indictment.  And because the

15  defendant is pleading to those counts and because count two is

16  a lesser included offense of count one of the indictment, at

17  the conclusion of the hearing the government will move to

18  dismiss count two.

19       THE COURT:  All right.  Do you have a copy of the

20  indictment?

21       MS. HAYNES:  Yes, we do, Your Honor.

22       THE COURT:  What are the maximum penalties of the

23  offense?

24       MS. HAYNES:  Your Honor, count one contains -- has a

25  five-year mandatory minimum and a 20-year maximum.  And count

4

1   three has a 20-year maximum.

2        THE COURT:  Is there a specific fine that's set in the

3   supervised release?

4        MS. HAYNES:  I believe the supervised release is up to

5   three years, and I believe the -- there's a $5,000 fine per

6   count.

7        THE COURT:  5,000?

8        MS. HAYNES:  5,000 I believe per count, because of the

9   nature of the offense.  Oh, I'm sorry, the special assessment.

10  I'm sorry.  The fine, I believe, is $250,000 per count.

11       THE COURT:  250?

12       MS. HAYNES:  Yeah, I'm sorry.

13       THE COURT:  All right.  Let the defendant be sworn.

14       MS. RIGBY:  Your Honor, just to add to that.  If I'm

15  not mistaken, for count one there's a period of supervised

16  release of five years.  I don't think the government listed

17  that during count one.

18       THE COURT:  I believe that's correct.  Five years to

19  life, isn't it?

20       MS. RIGBY:  Correct, Your Honor.

21       THE COURT:  All right.

22       THE COURT SECURITY OFFICER:  Place your left hand on

23  the Bible.  Raise your right hand.

24    (THE OATH WAS ADMINISTERED TO THE DEFENDANT.)

25       THE COURT:  Mr. McDonald, you've now been placed under

5

1    oath.  I'm going to ask you certain questions concerning the

2    plea and the offense itself.

3            You understand if you give any false answers to any

4    of these questions you could subject yourself to a charge of

5    perjury?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Would you state your full name.

8            THE DEFENDANT:  Stuart Clay McDonald.

9            THE COURT:  And how old are you?

10           THE DEFENDANT:  53.

11           THE COURT:  And what is the extent of your education?

12           THE DEFENDANT:  I've had some college.

13           THE COURT:  All right.  Now, have you received a copy

14   of this indictment and gone over it with your attorney?

15           THE DEFENDANT:  Yes, I have.

16           THE COURT:  You understand that count one of this

17   indictment charges that you did knowingly receive visual

18   depictions of minors that have been transferred in interstate

19   commerce, and showing those minors engaged in sexual activity?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  You understand that in order to convict

22   you of this offense the government would have to prove beyond a

23   reasonable doubt that you did receive explicit sexual pictures

24   of minors depicting sexual conduct, and that you did so

25   knowingly, willfully, and intentionally?

6

1         THE DEFENDANT: Yes, sir.

2         THE COURT: All right. Now, count three charges you

3  with possessing child pornography again, and that you did so

4  knowingly, willfully, and intentionally.

5         THE DEFENDANT: Yes, sir.

6         THE COURT: Now -- and again, in order to -- the

7  government would have to prove beyond a reasonable doubt that

8  you did receive that material, and you received it knowingly,

9  willful, and intentionally.

10        THE DEFENDANT: Yes, sir.

11        THE COURT: All right.

12           Now, have you told your attorney all the facts

13  about the case that you know?

14        THE DEFENDANT: Yes, sir.

15        THE COURT: Do you feel you've had a sufficient length

16  of time to confer with your attorney in order to fully

17  understand the case?

18        THE DEFENDANT: Yes, Your Honor.

19        THE COURT: Are you satisfied with the representation

20  your attorney has given you?

21        THE DEFENDANT: I am, Your Honor.

22        THE COURT: Now, you understand that if your plea is

23  accepted as to count one you could be imprisoned from five up

24  to 20 years, pay a fine of up to $250,000, serve a term of

25  supervised release from five years up to life?

7

1          THE DEFENDANT:  I understand.

2          THE COURT:  And that is in addition to paying a

3  special assessment fine of $100?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now, as to count three, you understand you

6  could be imprisoned up to 20 years, pay a fine of up to

7  $250,000, serve up to three years of supervised release, in

8  addition to paying a special assessment fine of $100?

9          THE DEFENDANT:  I understand.

10         THE COURT:  You also understand that any sentence that

11 may be imposed will be affected by the Sentencing Guidelines,

12 and if you violate any of the terms and conditions of your

13 supervised release, you would have to serve that period of

14 time?

15         THE DEFENDANT:  I understand.

16         THE COURT:  Now, do you also understand you have an

17 absolute right to plead not guilty?

18         THE DEFENDANT:  I do, Your Honor.

19         THE COURT:  And you understand that if you did plead

20 not guilty, you have certain constitutional guarantees:  That

21 is the right to a speedy and public trial of a jury, if you

22 want a jury; the right not to testify and to remain silent,

23 unless you want to testify; the right to see, hear, and

24 cross-examine all witnesses against you; the right to use the

25 process of this court to compel the production of evidence and

Julie A. Goodwin, CSR, RPR

8

1  attendance of witnesses in your behalf; and the right to the

2  assistance of a lawyer at all stages of the proceedings?

3          You understand that by pleading guilty you're

4  giving up these constitutional guarantees?

5          THE DEFENDANT:  I understand, Your Honor.

6          THE COURT:  You understand that by pleading guilty the

7  Court may impose the same punishment as if you had been tried

8  and convicted by a Court or by a jury?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Now, has anyone made any promise or threat

11  to induce you to plead guilty?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  All right.

14          Now, along with this indictment was filed and

15  handed to me a statement of facts.  Have you reviewed this

16  statement of facts?

17          THE DEFENDANT:  I have, Your Honor.

18          THE COURT:  Have you reviewed it with your attorney?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Do you disagree in any particular with

21  this statement of facts?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Is what this statement says happened in

24  fact what did happen?

25          THE DEFENDANT:  Yes, Your Honor.

9

1          THE COURT:  Now, you understand that once you've pled

2    guilty you cannot refuse to testify against any confederates,

3    accomplices, or co-defendants who may now or hereafter be

4    charged with the same or associated crime?

5          THE DEFENDANT:  I understand.

6          THE COURT:  And you understand that by pleading guilty

7    you waive the right to object to any question concerning the

8    legality of the admission or seizure of any evidence in

9    connection with this charge?

10          THE DEFENDANT:  I understand.

11          THE COURT:  And you understand that if your plea is

12    accepted now, there will be no further trial of any kind, and

13    you'll be found guilty?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  All right.

16              Do you make any claim that you are innocent of the

17    charges contained in counts one and three of this indictment?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  How do you plead to count one?

20          THE DEFENDANT:  Guilty, Your Honor.

21          THE COURT:  And count three?

22          THE DEFENDANT:  Guilty.

23          THE COURT:  The Court finds the plea is voluntarily

24    and intelligently entered.  There's a factual basis to support

25    the plea; finds the defendant guilty of the charge contained in

10

1    counts one and three of this indictment.

2            August 12 be a good day for sentencing?

3            MS. HAYNES:  Yes, Your Honor.

4            MS. RIGBY:  Your Honor, I am so sorry.  I didn't bring

5    my calendar, but I think it is.

6            THE COURT:  Case be continued to August the 12th at

7    10:00 a.m. for sentencing.  It's referred to the probation

8    office for preparation of a presentence report.

9            MS. HAYNES:  Thank you, Your Honor.  I do have a

10   motion to dismiss the remaining count, count two.

11           THE COURT:  All right.  If you'll hand that up, I'll

12   enter it at this time.

13      (BRIEF PAUSE.)

14           THE COURT:  All right.  That's been entered.

15            That takes care of our business.  We'll adjourn

16   until tomorrow morning at 10:00 o'clock.

17           MS. HAYNES:  Thank you, Your Honor.

18           THE LAW CLERK:  All rise.

19            (PROCEEDINGS CONCLUDED AT 10:13 A.M.)

20                        -o0o-

21

22

23

24

25

Julie A. Goodwin, CSR, RPR

11

1  UNITED STATES DISTRICT COURT    )

2  EASTERN DISTRICT OF VIRGINIA    )

3

4          I, JULIE A. GOODWIN, Official Court Reporter for

5  the United States District Court, Eastern District of Virginia,

6  do hereby certify that the foregoing is a correct transcript

7  from the record of proceedings in the above matter, to the best

8  of my ability.

9          I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action in

11 which this proceeding was taken, and further that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14          Certified to by me this 28TH day of MARCH, 2023.

15

16

17

18          __/s/_____

19          JULIE A. GOODWIN, RPR
           Official U.S. Court Reporter
20          401 Courthouse Square
           Eighth Floor
           Alexandria, Virginia  22314

21

22

23

24

25

Julie A. Goodwin, CSR, RPR

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

UNITED STATES OF AMERICA

v.

STUART CLAY MCDONALD,

Defendant.

Case No. ~~1:21-CR-~~ 22 Cr 51



FILED
IN OPEN COURT

MAY 1 9 2022

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

<u>STATEMENT OF FACTS</u>

The United States and the defendant, STUART CLAY MCDONALD (hereinafter, "the

defendant"), agree that the following facts are true and correct, and that had this matter gone to

trial, the United States would have proven the following facts beyond a reasonable doubt with

admissible and credible evidence:

1.      From approximately November 2017 to as recently as May 28, 2021, in the Eastern

District of Virginia and elsewhere, the defendant knowingly received and attempted to receive a

visual depiction using any means or facility of interstate or foreign commerce, and that had been

shipped and transported in or affecting interstate and foreign commerce, by any means including

by computer, the producing of which visual depiction involved the use of a minor engaging in

sexually explicit conduct, and which visual depiction was of such conduct.

2.      On or about July 15, 2021, Special Agents with the Federal Bureau of Investigation

("FBI") executed a search warrant at the defendant's residence located in Manassas, Virginia.

Pursuant to the warrant, agents seized a number of electronic devices, including a Dell Ultrabook

Latitude E7470 (hereinafter Dell Laptop Computer), Service Tag 2YX9KC2, which had been

manufactured outside the Commonwealth of Virginia, and was located on a desk in a room utilized

by the defendant as an office.

3.      The defendant's employer at the time, Bates White LLC, confirmed the Dell Laptop Computer had been issued to the defendant. During an examination of the Dell Laptop, FBI computer analysts determined that the login credentials used to log onto the computer listed the username as "clay" and that upon selecting to log off from the "clay" credentials, the profile name was listed as "clay mcdonald." Email accounts located within the user credentials named "clay" include: stuart.mcdonald@bateswhite.com, MCDONALD's company email address from Bates White LLC; and "claysql@gmail.com, which has a username listed as Clay McDonald. Subscriber information provided by Google indicate that the subscriber name for email address claysql@gmail.com is Clay McDonald. Found within the user credentials named "clay" are multiple "selfie" style photographs identified as the defendant as well as photographs of checks made out to the defendant.

4.      On or about July 15, 2020, user credentials named "clay' visited a URL where a file was downloaded.  The user of the "clay" credentials saved this file onto the Dell laptop. A review of the contents of this file revealed a 3 minute and 20 second video which depicts what appears to be a pre-pubescent female. During the video, the female child is depicted naked, displaying her chest and genitalia. She is at times bound. The video depicts the child being raped by an unknown male, and also depicts the commission of other sadistic and masochistic acts against the child.

5.      Located on the laptop were approximately 197 images and 22 videos of unencrypted files, and 175 images and 86 videos of encrypted files, which depicted prepubescent and pubescent minors engaged in sexually explicit conduct, including, but not limited to, sexual intercourse, digital penetration of genitalia, penetration of genitalia with objects, lascivious exhibition of the genitals, sexually explicit conduct involving toddlers, and images of bondage

and bestiality.   The forensic evidence on the device established that the defendant knowingly received these images and videos depicting minors engaged in sexually explicit conduct using the internet and saved them in "downloads" folders under the username "clay".

6.      On September 9, 2021, the defendant was arrested in Prince William County by FBI Special Agents and the Prince William County Police Department. Located within a backpack carried by the defendant was a Seagate hard drive bearing serial number NA05H5FZ, which was manufactured outside the Commonwealth of Virginia. Among other items, the hard drive contained pictures of McDonald, Bates White documents bearing McDonald's name, and a bank statement addressed to McDonald. The Seagate hard drive contained approximately 156 videos and images which depicted prepubescent and pubescent minors engaged in sexually explicit conduct, including, but not limited to, sexual intercourse, digital penetration of genitalia, naked toddlers exposing genitalia, and bondage, all of which were saved to the Seagate hard drive on November 15, 2017.

7.      This statement of facts includes those facts necessary to support the defendant's guilty plea. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
Acting United States Attorney

By:  _____
Patricia Haynes
Assistant United States Attorney
Annie Zanobini
Assistant United States Attorney


After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Stuart Clay McDonald
Defendant


I am the attorney for the Defendant in this case, Stuart Clay McDonald. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Ann Rigby
Counsel for the Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

UNITED STATES OF AMERICA

v.                                           Case No. 1:22-CR-51

STUART CLAY MCDONALD,

    Defendant.

**ORDER**

    Upon Motion of the United States to Dismiss Count 2 of the Indictment (Docket Entry

27) and good cause being shown, it is hereby

    ORDERED that Count 2 of the Indictment (Docket Entry 27) in the above-captioned case

is dismissed.

Claude M. Hilton
USDJ.

May _19_, 2022
Alexandria, Virginia

1



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA          )
                                  )
        VS.                       )  1:22-CR-51  CMH
                                  )
                                  )  ALEXANDRIA, VIRGINIA
                                  )    AUGUST 19, 2022
                                  )
STUART CLAY MCDONALD              )
_____)

_____

**TRANSCRIPT OF SENTENCING**
**BEFORE THE HONORABLE CLAUDE M. HILTON**
**UNITED STATES DISTRICT JUDGE**

_____

**Proceedings reported by stenotype, transcript produced by**

**Julie A. Goodwin.**

Julie A. Goodwin, CSR, RPR

2

1                    A P P E A R A N C E S

2

3    FOR THE PLAINTIFF:
          UNITED STATES ATTORNEY'S OFFICE
4         By:  MS. ANNIE ZANOBINI
          MS. PATRICIA M. HAYNES
5         Assistant U.S. Attorneys
          2100 Jamieson Avenue
6         Alexandria, Virginia  22314
          703.299.3700
7         annie.zanobini2@usdoj.gov
          patricia.haynes@usdoj.gov
8

9

10
     FOR THE DEFENDANT:
11        OFFICE OF THE FEDERAL PUBLIC DEFENDER
          By:  MS. ANN MASON RIGBY
12        Assistant Federal Public Defender
          1650 King Street
13        Suite 500
          Alexandria, Virginia  22314
14        703.600.0800
          ann_rigby@fd.org
15

16

17
     OFFICIAL U.S. COURT REPORTER:
18        MS. JULIE A. GOODWIN, RPR
          United States District Court
19        401 Courthouse Square
          Eighth Floor
20        Alexandria, Virginia  22314

21

22

23

24

25

                                   Julie A. Goodwin, CSR, RPR

**J.A. 031**

3

1   (AUGUST 19, 2022, 10:00 A.M., OPEN COURT.)

2        THE COURTROOM DEPUTY:  Criminal Number 22-51, *United*

3   *States of America versus Stuart Clay McDonald*.

4          Will Counsel please identify themselves for the

5   record.

6        MS. ZANOBINI:  Good morning, Your Honor.  Annie

7   Zanobini and Patricia Haynes on behalf of the United States.

8        THE COURT:  Good morning.

9        MS. RIGBY:  Good morning, Your Honor.  Ann Mason Rigby

10  on behalf of Mr. McDonald.

11       THE COURT:  All right.  Good morning.

12         Why we don't we call the other case.

13       MS. RIGBY:  I hear jingling.  It might be him, Your

14  Honor.

15       THE COURT:  Oh, all right.

16       MS. RIGBY:  Apologies for interrupting the Court.

17    (DEFENDANT NOW PRESENT IN COURTROOM.)

18       MS. RIGBY:  Your Honor, for the record, Mr. McDonald

19  is present.

20       THE COURT:  All right.

21         Have you and your client reviewed this presentence

22  report?

23       MS. RIGBY:  Yes, Your Honor.

24       THE COURT:  Any corrections you wish to make to it?

25       MS. RIGBY:  No, Your Honor.

4

1          THE COURT:  Anything you want to say at this time?

2          MS. RIGBY:  Your Honor, does the Court prefer to hear

3   from the government first?

4          THE COURT:  No.

5          MS. RIGBY:  Your Honor, the government, of course, is

6   recommending a sentence within the guideline range.  And I know

7   the Court has reviewed the papers we submitted requesting that

8   the Court impose no more than 60 months in this case.  That is

9   the mandatory minimum, Your Honor, and that is sufficient and

10  not greater than necessary to satisfy the factors and the goals

11  of sentencing in 3553.

12          The government's argument, to some extent,

13  understandably focuses on harm caused by viewing child

14  pornography.  And we don't take any issue with that, Your

15  Honor.

16          Mr. McDonald has read the victim statements in the

17  PSR.  He understands that viewing this material causes

18  additional harms to the victims of child abuse reflected in the

19  videos.  And he sympathizes with those victims, especially

20  given his own experience growing up with just that kind of

21  abuse.

22          But, you know, the government, I think, is focusing

23  on this element as a proxy for two factors that the Court must

24  consider:  What's proper punishment and what's necessary to

25  deter him.  But not only are there many other factors focusing

5

1   on harm alone, and looking at the U.S. Sentencing Guidelines as

2   a means to address that harm doesn't even fully and

3   appropriately address those factors of punishment and

4   deterrence.

5           Turning to punishment, what the Court has to

6   consider is what will be just punishment.  And looking again at

7   the guidelines as a proxy for that is -- is not -- is not just.

8   The guidelines are not just they were designed to correlate

9   with mandatory minimums that Congress essentially picked out of

10  thin air, and they -- they recommended enhancing sentences in

11  cases of simple possession or receipt, like this case, on

12  grounds that turn up in just about every case.

13          I cited to the Court statistics.  And I'm sure the

14  Court is familiar with about how often these enhancements

15  apply, and they no longer actually reflect different or

16  differentiation among child pornography on defendants.  This is

17  why courts vary widely from -- I cited to the court statistics

18  again.  I'm sure the Court is familiar courts all over the

19  country vary from these guidelines downward all the time, and

20  most defendants get very large variances.  And that is what

21  we're asking for here.

22          Your Honor knows I know that the Court -- that this

23  division is -- is no different than -- than the nationwide

24  statistics or the nationwide courts that I've cited to the

25  Court.  In this district, possession and receipt cases result

6

1   in sentences of 60 months regularly.

2          As far as deterrence, Your Honor, the law
3   enforcement tool that works best for deterring people is
4   catching them and making them believe that they will be caught.
5   Mr. McDonald gets perfectly well that he can get caught.  He's
6   been through it.  He understands that, Your Honor.

7          He also knows that no matter how much jail time or
8   prison time the Court imposes he will be on supervision.  He
9   will also be tracked as a sex offender.  He understands fully
10  that he will not get away with this in the -- in the future if
11  he's ever tempted to look at these kinds of images again.

12         On the other hand, the Court really hasn't --
13  excuse me -- the government hasn't cited anything suggesting
14  that more than five years in prison will make a difference to
15  either his individual deterrence or to general deterrence, Your
16  Honor.

17         The government notes that these images seem to be
18  in never-ending circulation, and there's something -- nothing
19  before the Court suggesting that imposing more than five years
20  on this man is going to make a significant difference to
21  anybody else contemplating this.  Again, what will make a
22  difference is catching -- catching people.

23         Your Honor, in addition, the Court hasn't responded
24  to evidence that more than five years will create unwarranted
25  disparity.  Hasn't explained how more than five years will

7

1    satisfy the other goals of sentencing such as ensuring that the

2    victims are able to recover some restitution.

3             In this case, Mr. McDonald will be in his late 50s

4    when he's released, but he does have a lot of skills and he has

5    a long history of overcoming challenges working in various

6    different fields.  So he does have the capacity when he comes

7    out to actually work, and the longer he's in on the other hand

8    the less likely that's going to be.  And if the goal is making

9    sure the victims receive restitution, which it should be more

10   than five years in prison, contravenes that.

11            Your Honor, finally, you know, there are other

12   things that are going to help deter Mr. McDonald.  As we

13   suggested with our expert report, drug treatment would be very

14   important here.  The combination of drug treatment,

15   supervision, sex offender registration, and five years in

16   prison for a man who has never served a day before this arrest

17   is going to be sufficient to achieve the goals of sentencing.

18            And the last thing I'll say, Your Honor, is -- is

19   Mr. McDonald's own remorse and shame is going to go a long way

20   to deterring him and ensuring that this doesn't happen in the

21   past.

22            The Court's, I hope, read Mr. McDonald's letter,

23   and it reflects that he has spent time thinking about this.

24   He's -- time thinking about the victims.  He is deeply ashamed.

25   He's, you know, ruptured relationships with his family.

8

 1    There's nothing more needed in this case, Your Honor, than 60

 2    months.

 3          THE COURT:  All right.

 4          Anything the government wants to add?

 5          MS. ZANOBINI:  Yes, Your Honor.

 6          Your Honor, the government outlines --

 7          THE COURT:  You can take your mask off while you're

 8    speaking.

 9          MS. ZANOBINI:  Sorry, Your Honor.

10          Your Honor, the government outlined its position in

11    its paper, but just briefly.

12          First, the government highlights the serious nature

13    of the defendant's crime.  Children depicted in child

14    pornography are harmed by the continuing dissemination and

15    possession of those images and videos.  The victim impact

16    statements submitted here are instructive.

17          One victim wrote:  I am still having emotional and

18    psychological problems due to knowing that the images of me

19    being abused as a child are circulated freely on the Internet.

20          One victim's husband describes having been plagued

21    by stalker after stalker calling themselves "fans" and being

22    oblivious to the damage they are causing his wife.

23          Victims of this crime continue to be traumatized by

24    the circulation of these images.  And some victims continue to

25    be stalked and harassed by so-called fans years late -- later.

9

1          The harm is substantial, and for that reason the

2    United States recommends a guideline sentence in order to deter

3    this defendant from engaging in this type of conduct in the

4    future.  The United States submits that such sentence is

5    sufficient, but not greater than necessary to address the

6    Section 3553(a) sentencing factors.

7          Furthermore, Your Honor, I would like to also just

8    address restitution and forfeiture in this matter.

9          The United States would just like to bring to the

10   Court's attention we are still waiting for restitution requests

11   from victims.  Pursuant to Title 18, United States Code,

12   Section 3664(d)(5), the Court may defer the imposition of

13   restitution until after the sentencing for 90 days.

14         In light of the ongoing discussions, the Court

15   asks -- the government asks that the Court defer the imposition

16   of restitution and allow the parties to work towards resolving

17   this matter and schedule the matter for a restitution hearing

18   in approximately 90 days.  As to forfeiture, the United States

19   would like to bring to the Court's attention that the parties

20   are in disagreement over the forfeiture of the electronic

21   devices in this case.

22         There's a Fourth Circuit case called *Martin*,

23   although I do not have the cite on me, that permits the Court

24   jurisdiction, if you state during the sentencing hearing that

25   you would like to have a separate, you know, forfeiture

10

1    hearing.  And hopefully the parties, you know, can come to an

2    agreement on that.  And if we can't, you know, we can -- would

3    ask that we -- you state on the record that you retain

4    jurisdiction to decide the forfeiture at a later date so that

5    we can, you know, provide the Court with briefing, if -- if we

6    cannot come to an agreement.

7            Thank you.

8            THE COURT:  All right.  Do you have any problem with

9    doing that?

10           MS. RIGBY:  I have no objection to either suggestion,

11   Your Honor.

12           THE COURT:  All right.  Well, I'll grant that motion.

13   And let's pick a date.

14           What would something very short of 90 days be?

15           MS. ZANOBINI:  It would be sometime the first or

16   second week of November.  That short 90 days would be about

17   November 7th to 11th.

18           THE COURT:  November 7th be a good day, or that last

19   Friday in October?

20           MS. ZANOBINI:  That works for the United States, Your

21   Honor.

22           MS. RIGBY:  That's fine, Your Honor.

23           THE COURT:  The 7th, or you want the last weekend in

24   October?

25           MS. RIGBY:  The last of October would be fine.  I

Julie A. Goodwin, CSR, RPR

8/19/22

11

1    don't have a preference, Your Honor.

2            MS. ZANOBINI:  Your Honor, the government's not

3    available October 28th, but is available November 7th.

4            THE COURT:  November 7th you're available?

5            MS. ZANOBINI:  Correct, Your Honor.

6            THE COURT:  All right.  Well, then the matter of

7    restitution and forfeiture will be continued to November the

8    7th.  Hopefully you-all can agree on something in the meantime.

9            Mr. McDonald, would you come to the podium.

10       (DEFENDANT COMPLIES.)

11           THE COURT:  Is there anything you want to say at this

12   time?

13           THE DEFENDANT:  Yes, Your Honor.

14           I'm extremely sorry for the harm that I've caused

15   in doing this crime.  This -- this event has changed me

16   forever, and I believe it's given my life a new purpose.

17           I will do better.  I will not commit this crime or

18   any crime in the future, and I'm sorry.

19           THE COURT:  All right.  Well, Mr. McDonald, I find the

20   guideline factors here to be properly assessed at a range of 97

21   to 121 months.  That because of your financial condition, the

22   imposition of any fine or cost is not warranted.

23           In considering the factors, which I must under

24   Section 3553, considering the nature of this offense, your

25   prior record, and your present circumstances, I find that a

12

 1    sentence somewhat below the guideline range would be

 2    appropriate.

 3              It will be the sentence of the Court that as to

 4    each counts one and three you'll be committed to the custody of

 5    the Attorney General to serve a term of 72 months, a ten-year

 6    period of supervised release, pay a special assessment fine of

 7    $100 as to each count.

 8              Now, your supervised release will be subject to the

 9    standard provisions of probation which have been set out here

10    in the presentence report.

11              And in addition, you will be required to

12    participate in any program for substance abuse that may be

13    required by your probation officer.

14              That you undergo any polygraph testing that may be

15    required by your probation officer; any mental health treatment

16    or program that may be required by probation.

17              And that you should not engage in any employment or

18    volunteer services that allow access to minors or computers

19    without approval of your probation officer.

20              That you not purchase or possess any sexually

21    explicit material; that you should have no contact with minors

22    unless supervised by a competent adult; that you should not use

23    any sex-related telephone services or websites; that you

24    register pursuant to the Adam Walsh Child Protection and Safety

25    Act of 2006, and that pursuant to that Adam Walsh Act, that you

13

1  submit to any search of your person, property or residence by

2  your probation officer at any time that they feel that is

3  necessary.

4          All right?

5      MS. RIGBY:  Court's indulgence.

6    (BRIEF PAUSE.)

7      MS. RIGBY:  Your Honor, I would ask the Court to

8  include in the judgment a recommendation that Mr. McDonald be

9  designated to Fort Dix, and also that you would recommend that

10  he be placed into the RDAP treatment, the residential drug

11  abuse program.

12      THE COURT:  All right.  I will recommend the facility

13  at Fort Dix and also recommend the drug treatment program.

14      MS. RIGBY:  Thank you, Your Honor.

15        (PROCEEDINGS CONCLUDED AT 10:15 A.M.)

16                    -oOo-

17

18

19

20

21

22

23

24

25

Julie A. Goodwin, CSR, RPR

**J.A. 042**    8/19/22

14

1  UNITED STATES DISTRICT COURT    )

2  EASTERN DISTRICT OF VIRGINIA    )

3

4          I, JULIE A. GOODWIN, Official Court Reporter for

5  the United States District Court, Eastern District of Virginia,

6  do hereby certify that the foregoing is a correct transcript

7  from the record of proceedings in the above matter, to the best

8  of my ability.

9          I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action in

11 which this proceeding was taken, and further that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14          Certified to by me this 28TH day of MARCH, 2023.

15

16

17

18                    __/s/_____
                      JULIE A. GOODWIN, RPR
19                    Official U.S. Court Reporter
                      401 Courthouse Square
20                    Eighth Floor
                      Alexandria, Virginia  22314
21

22

23

24

25

Julie A. Goodwin, CSR, RPR

J.A. 043    8/19/22

AO 245B (Rev. 09/19) (VAE 01/22)  Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| | ) |
| v. | ) Case Number:   1:22-cr-00051 |
| | ) |
| STUART CLAY MCDONALD | ) USM Number:   78735-509 |
| | ) Ann Rigby, Esquire |
| | ) Defendant's Attorney |
| | ) |
| | ) |

The defendant pleaded guilty to Count 1 and 3 of the Indictment.

The defendant is adjudged guilty of these offenses:

| Title and Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2252(a)(2) | Receipt of Child Pornography | 05/2021 | 1 |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography | 09/09/2021 | 3 |

    The defendant is sentenced as provided in pages 2 through 6 of this Judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

    Count 2 is dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 19, 2022
Date of Imposition of Judgment

*Claude M. Hilton*
Signature of Judge

Claude M. Hilton, United States District Judge
Name and Title of Judge

*Aug. 19, 2022*
Date

USCA4 Appeal: 23-4052    Doc: 16    Filed: 05/09/2023    Pg: 49 of 160
Case 1:22-cr-00051-CMH   Document 51   Filed 08/19/22   Page 2 of 6 PageID# 310

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 2 - Imprisonment

Page 2 of 6

| Case Number: | 1:22-cr-00051 |
|---|---|
| Defendant's Name: | McDonald, Stuart Clay |

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of SEVENTY-TWO (72) MONTHS on each of Counts 1 and 3 to run concurrently with each other.

The court makes the following recommendations to the Bureau of Prisons:

The Court recommends that the defendant be designated to FCI Fort Dix.

The Court recommends that the defendant be designated to a facility where he can receive drug treatment.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows: _____

_____

Defendant delivered on _____ to _____

at_____, with a certified copy of this Judgment.

_____
UNITED STATES MARSHAL

By      _____
DEPUTY UNITED STATES MARSHAL

USCA4 Appeal: 23-4052    Doc: 16    Filed: 05/09/2023    Pg: 50 of 160
Case 1:22-cr-00051-CMH    Document 51    Filed 08/19/22    Page 3 of 6 PageID# 311
AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 3 – Supervised Release
Page 3 of 6

| Case Number: | 1:22-cr-00051 |
| Defendant's Name: | McDonald, Stuart Clay |

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of TEN (10) YEARS on each of Counts 1 and 3 to run concurrently with each other.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☒ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                    Page 4 of 6
   Sheet 3 – Supervised Release

---

**Case Number:**       **1:22-cr-00051**
**Defendant's Name:**  **McDonald, Stuart Clay**

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov

Defendant's Signature _____ Date

**J.A. 047**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 3A – Supervised Release

| Case Number: | 1:22-cr-00051 |
|---|---|
| Defendant's Name: | McDonald, Stuart Clay |

# SPECIAL CONDITIONS OF SUPERVISION

1) The defendant shall undergo substance abuse treatment and monitoring as directed by the probation officer.
2) The defendant shall submit to polygraph testing as directed by the United States Probation Officer as part of the defendant's sex offender therapeutic program. The costs of the testing are to be paid by the defendant, as directed by the probation officer.
3) The defendant shall undergo mental health treatment and monitoring as directed by the probation officer.
4) The defendant shall not engage in employment or volunteer services that allow him access to computers or minors.
5) The defendant shall not purchase, possess or view any sexually explicit material or images using young juvenile models under the age of 18 in any format including, but not limited to, in magazines, books, on the computer, or any electronic device, in videos, movies and television.
6) The defendant shall have no contact with minors unless supervised by a competent, informed adult, approved in advance by the probation officer.
7) The defendant shall not utilize any sex-related adult telephone services, websites, or electronic bulletin boards. The defendant shall submit any records requested by the probation officer to verify compliance with this condition including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.
8) Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall register with the state sex offender registration agency in any state where the defendant resides, works, and attends school, according to federal and state law and as directed by the probation officer.
9) Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall submit to a search of person, property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects at any time, by any law enforcement or probation officer with reasonable suspicion concerning unlawful conduct or a violation of a condition of supervision, upon prior notification to and approval by the court or with a warrant.

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 7 – Denial of Federal Benefits

Page 6 of 6

| Case Number: | 1:22-cr-00051 |
|---|---|
| Defendant's | |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Restitution** | **Fine** |
|---|---|---|---|
| TOTALS | $ 200.00 | $ TBD | $ 0.00 |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

The special assessment shall be do in full immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )     Criminal No. 1:22-cr-51 |
| STUART CLAY MCDONALD, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Upon consideration of the United States' Motion to Continue the forfeiture and restitution

hearing, and for good cause shown, it is hereby

ORDERED that said motion is Granted; and

FURTHER ORDERED that this matter is hereby rescheduled from November 7, 2022, to

December 12, 2022 at 10:00am for the forfeiture and restitution hearing.

ENTERED this _2nd_ day of _Nov._ 2022.

_Claude M. Hilton_
USDJ

J.A. 050

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA          )
                                  )
          v.                      )
                                  )        Criminal No. 1:22-cr-51
STUART CLAY MCDONALD,             )
                                  )
          Defendant.              )

**MOTION FOR A PRELIMINARY ORDER OF FORFEITURE**

Comes now the United States of America, by counsel, and moves this Honorable Court to enter a preliminary order of forfeiture in this case pursuant to Fed. R. Crim. P. 32.2(b). Specifically, the government seeks the forfeiture of one Seagate hard drive, serial number NA05H5FZ (" the hard drive"). As explained in more detail below, the information contained in the presentence report supports the forfeiture of the hard drive.

FACTUAL BACKGROUND

The facts of this case are set forth in great detail in the presentence report (Document 251). The government does not intend to repeat the facts of the case in detail, rather the government will only highlight those portions of the facts germane to the nexus between the property sought and the offenses of conviction.

On July 15, 2021, Special Agents with the Federal Bureau of Investigation (FBI) executed a search warrant at the defendant's residence located in Manassas, Virginia. Pursuant to the warrant, agents seized a number of electronic devices, including a Dell Ultrabook Latitude E7470, Service Tag 2YX9KC2 located on a desk in the defendant's office. The defendant's employer confirmed that the Dell laptop had been issued to the defendant, and thus the laptop belongs to his employer. Law enforcement's examination of

1

**J.A. 051**

the Dell laptop uncovered approximately 197 images and 22 videos of unencrypted files, and 175 images and 86 videos of encrypted files, which depicted prepubescent and pubescent minors engaged in sexually explicated conduct including sexually explicit conduct involving toddlers, and images of bondage and bestiality.

On September 9, 2021, the defendant was arrested in Prince William County by FBI Special Agents and the Prince William County Police Department.   Located within a backpack carried by the defendant was a Seagate hard drive bearing serial number NA05H5FZ.  The hard drive contained pictures of the defendant, documents from his employer bearing his name, and a bank statement addressed to the defendant.   A forensic examination of the hard drive contained approximately 156 videos and images which depicted prepubescent and pubescent minors engaged in sexually explicit conduct.  The forensic examination revealed the images charged in count three of the indictment.

<u>PROCEDURAL HISTORY</u>

On March 16, 2022, the federal grand jury sitting in Alexandria returned a true bill charging McDonald with one count of receipt of child pornography and two counts of child pornography possession (Document 27).  On May 19, 2022, the defendant pled guilty to count one of the indictment alleging receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and count three of the indictment alleging possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B)  (Document 36).  In the statement of facts, the defendant admitted that on September 9, 2021, he was carrying the hard drive in a backpack (Document 37, ¶ 6).   The defendant also admitted that the hard drive contained pictures of him, documents from his employer bearing his name, a bank statement addressed to him, and videos and images that constituted child pornography.  Id.  On August 19, 2022, the defendant was sentenced to 72

months imprisonment and 10 years of supervised release  (Document 51).  As the parties had not

agreed on forfeiture, the government informed the court that it intended to seek forfeiture of

electronic devices and the court scheduled a separate forfeiture hearing.  A forfeiture hearing in

this case is presently set for December 12, 2022 at 10:00 AM.

STANDARDS GOVERNING

18 U.S.C. § 2253(a) provides that defendants who are convicted "of an

offense…involving a visual depiction described in section…2252…shall forfeit" three categories

of property to the United States.  Those categories of forfeitable property are: (1) any book,

magazine, periodical, film, videotape, or other matter which contains a visual depiction described

in 18 U.S.C. § 2251 et seq.; (2) any proceeds of the offense; and (3) any property used or

intended to be used to commit or to promote the commission of the offense.  Forfeiture is a

mandatory aspect of the sentence to be imposed in this case.  United States v. Blackman, 746

F.3d 137, 143 (4th Cir. 2014) ("The word 'shall' does not convey discretion…  The plain text of

the statute thus indicates that forfeiture is not a discretionary element of sentencing.").  Courts

may not deny forfeiture based on equitable considerations.  Id. ("Insofar as the district court

believed that it could withhold forfeiture on the basis of equitable considerations, its reasoning

was in error").  See also United States v. Sanders, No. 1:20-CR-143, 2022 WL 3572780, at *3

(E.D. Va. Aug. 19, 2022) ("Because Section 2253(a)'s forfeiture provisions are mandatory,

district courts lack authority to deny forfeiture even in the presence of compelling circumstances

or equitable considerations.").[1]

---

[1] The Sanders case  is currently on appeal in the Fourth Circuit—Sanders is appealing the
forfeiture order.  See United States v. Sanders No. 22-7054.

3

**J.A. 053**

As the Court is aware, judicial criminal forfeitures are a multi-step process, with the steps being found in Fed. R. Crim. P. 32.2 and 21 U.S.C. § 853.[2]  The first step is the entry of a preliminary order of forfeiture or consent order of forfeiture at or prior to the sentencing, pursuant to Fed. R. Crim. P. 32.2(b).  Fed. R. Crim. P. 32.2(b)(4)(A) provides that, in general, at the time of sentencing, the preliminary order of forfeiture becomes final as to the defendant, but not as to third parties.  Where specific assets are forfeited, third party interests are dealt with in the ancillary proceeding, a quiet title-type process covered under 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c).  Indeed, Rule 32.2(b)(2)(A) provides that "[t]he court must enter the order without regard to any third party's interest in the property.  Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)."  Accord United States v. Cox, 575 F.3d 352, 358 (4th Cir. 2009) ("Rule 32.2 requires the issuance of a preliminary order of forfeiture when the proper nexus is shown, whether or not a third party claims and interest in the property.").  Once the government obtains a preliminary order of forfeiture with respect to specific property, Rule 32.2(b)(6) and (c) require that interested third parties be given notice of the forfeiture and that an ancillary proceeding be conducted.

The United States must prove the nexus between the property to be forfeited and the offenses of conviction by a preponderance of the evidence.  Libretti v. United States, 516 U.S. 29, 116 S. Ct. 356 (1995) (criminal forfeiture is part of sentence and not a substantive element of offense, so "preponderance of the evidence" standard applies); United States v. Martin, 662 F.3d 301, 307 (4th Cir. 2011) ("the government must establish a nexus between the property for

---

[2] Although 21 U.S.C. § 853 is a drug forfeiture statute, its procedures apply even in this child pornography forfeiture accomplished under 18 U.S.C. § 2253 because of the provisions of 18 U.S.C. § 2253(b).

which it is seeking forfeiture and the crime by a preponderance of the evidence"); United States

v. Herder, 594 F.3d 352 (4th Cir. 2010) ("The burden is on the government to establish, by a

preponderance of the evidence, that the property at issue is subject to forfeiture").  As for the

entry of the preliminary order, Fed. R. Crim. P. 32.2(b)(1)(B) provides that "[t]he Court's

determination may be based on evidence already in the record . . . or information presented by

the parties … after the verdict or finding of guilty."  See, e.g., United States v. Farkas, 474 Fed.

Appx. 349, 360 (4th Cir. 2012) (under Rule 32.2(b)(1)(B), the Court may base its forfeiture

determination on evidence already in the record and on any additional evidence or information

submitted); United States v. Sabhnani, 599 F.3d 215, 262-63 (2d Cir. 2010) (forfeiture may be

based on testimony in the record from the guilt phase of the trial); United States v. Capoccia, 503

F.3d 103, 109 (2d Cir. 2007) (the Court may rely on evidence from the guilt phase of the trial,

even if the forfeiture is contested; it is not necessary for the government to reintroduce that

evidence in the forfeiture hearing).  Reliable hearsay is admissible to establish forfeitability.

Capoccia, 503 F.3d at 109 (because forfeiture is part of the sentencing, hearsay is admissible to

establish forfeitability; United States v. Ivanchukov, 405 F.Supp.2d 708, 709 n.1 (E.D.Va. 2005)

(because the forfeiture hearing is part of the sentencing, reliable hearsay is admissible at the

forfeiture hearing).

ARGUMENT

A. The Electronic Devices are Subject to Forfeiture, pursuant to 18 U.S.C. § 2253(a)(1) and
   (3).

As described in the factual background section above, the hard drive that the government

now seeks to have forfeited was forensically examined by the FBI and found to contain images

constituting child pornography.  As explained above, the hard drive sought is connected to count

5

three of the indictment. The defendant pled guilty to this count and agreed in the statement of

facts that the device contained child pornography.

Set against the above-described factual background, the hard drive at issue in this case is

forfeitable under two theories. First, it is subject to forfeiture pursuant to 18 U.S.C. § 2253(a)(1)

as a matter which contains a visual depiction described in 18 U.S.C. §§ 2251 and 2252A. In

pleading guilty, the defendant does not contest that the images found on the hard drive form the

basis of the counts in the indictment constituted visual depictions described in 18 U.S.C. §§ 2251

and 2252A. See United States v. Warshak, 631 F.3d 266, 331 (6th Cir. 2010) (affirming District

Court's refusal to allow defendant, in the forfeiture phase of the case, to introduce evidence

tending to show that his conduct was not illegal; in the forfeiture phase the legality of the

conduct is "no longer a live issue" and the only question is the nexus between the property and

the offense). As set forth in the PSR, the hard drive now sought by the government for forfeiture

contained such visual depictions of child pornography. The aforementioned device is therefore a

medium which contains the prohibited visual depictions and is therefore subject to forfeiture

under 18 U.S.C. § 2253(a)(1). See Sanders, 2022 WL 3572780, at *4 (finding that 18 U.S.C. §

2253(a)(1) clearly requires forfeiture of the matter or device on which the visual depiction is

stored).

The device sought is also property McDonald used to commit the offenses for which he

pled guilty, making it forfeitable pursuant to 18 U.S.C. § 2253(a)(3). Where a defendant uses

electronics to access or store child pornography, that electronic device is subject to forfeiture as

facilitating property, as described in 18 U.S.C. § 2253(a)(3). See, e.g., United States v. Evers,

669 F.3d 645, 660 (6th Cir. 2012) (where examination of computer hard drive revealed "the

offending images," the computer was subject to forfeiture); Sanders, 2022 WL 3572780, at *4

(finding electronic devices forfeitable under 18 U.S.C. § 2253(a)(3) where the devices were used to access and store visual depictions of child pornography). Again, the evidence described in detail in the PSR, showed that the electronic device and storage medium at issue was used to store child pornography. Since McDonald used the hard drive for this purpose, it is also subject to forfeiture pursuant to 18 U.S.C. § 2253(a)(3).

B. <u>The Hard Drive is Subject to Forfeiture in its Entirety.</u>

The use of electronic devices to store such illegal images subjects the devices to forfeiture in their entirety, to include any and all contents on the device. <u>See, e.g.</u>, <u>United States v. Noyes</u>, 557 F. App'x. 125, 127-28 (3d Cir. 2014) (noting that property forfeited under § 2253 is forfeited in its entirety; thus, when a computer is forfeited in a child pornography case, the data stored on the computer is forfeited as well); <u>United States v. Wernick</u>, 673 Fed. App'x. 21 (2nd Cir. 2016) (affirming district court's exercise of discretion not to grant motion for the return of untainted data that cannot be easily disentangled from tainted data with which it has been commingled), affirming <u>United States v. Wernick</u>, 2015 WL 8488774 (E.D.N.Y. Dec. 10, 2015) (following <u>Noyes</u>: defendant convicted of child pornography may be ordered to forfeit his computer and its peripherals without regard to their containing digital files that were unrelated to his criminal offense); <u>Sanders</u>, 2022 WL 3572780, at *7 (finding that a defendant convicted of child pornography offenses forfeited his electronic devices in their entirety and has no right to the return of noncontraband files stored on them). However, the Ninth Circuit takes a different view in <u>United States v. Gladding</u>, 775 F.3d 1149 (9th Cir. 2014), than the Third Circuit takes in <u>Noyes</u>, though the Ninth Circuit in <u>Gladding</u> never definitively ruled on the issue. Rather, the Ninth Circuit remanded the <u>Gladding</u> case to the District Court.

In <u>Gladding</u>, a defendant entered a guilty plea to receiving or distributing child pornography and possession of materials containing depictions of minors engaged in sexually explicit conduct. The defendant's plea agreement included a provision that forfeited the computers used to commit the offenses. The government agreed to work with Gladding to retrieve the non-contraband files on the forfeited computer, after which point Gladding entered his plea as described above. After negotiations broke down, Gladding filed a motion for return of all non-contraband files on his computers. The U.S. District Court for the Eastern District of California then entered a forfeiture order that stated, in part: "The Preliminary Order of Forfeiture is made final as to contraband items only." <u>Gladding</u>, 775 F.3d at 1151.

The District Court denied the motion for return of property, prompting an appeal. Initially, the Ninth Circuit affirmed in an unpublished opinion, <u>United States v. Gladding</u>, 584 F. App'x. 464 (9th Cir. 2014). Following a rehearing, however, the Ninth Circuit reversed the District Court's order and remanded the matter, holding that the government's proffer to the District Court that it was almost impossible to separate the non-contraband files from those that were contraband did not constitute evidence. <u>Gladding</u>, 775 F.3d at 1153. That point of law is, of course, fairly basic and is reflected in a commonly given jury instruction in this District—that the comments of the attorneys are not evidence. The Ninth Circuit even noted that "*[i]n the government's view*, the district court's forfeiture order did not cover Gladding's noncontraband files even though those files were intermingled with files containing child pornography." <u>Id</u>. (emphasis added). The Ninth Circuit went on to observe that:

> This type of forfeiture order is uncommon according to the government. The government contends that, in the normal course, a defendant forfeits all the files on an electronic storage device when it forfeits the device itself, whether those files are contraband or not. **We do not express an opinion on the validity of the district court's order requiring Gladding to forfeit only contraband files**…. But the district court's prior forfeiture order by its terms excluded those files,

**J.A. 058**

> instead stating the "Preliminary Order of Forfeiture is made final as to contraband
> items only."

Id. at 1153, n. 1 (emphasis added).  Since the government in the Eastern District of California

could not argue that the forfeiture of the devices necessarily included the forfeiture of the data on

the devices, the government was left with the alternative argument that the difficulty and cost of

separating the contraband from the non-contraband constituted a legitimate reason to retain

Gladding's property.  Id. at 1154.  On remand to the District Court, the parties ended up

resolving the matter, obviating the need for further Court intervention.  See United States v.

Gladding, No. 1:09-cr-265 (E.D.Ca. Jan. 25, 2016) (Document 182—review hearing showing

that the parties resolved the remanded issues).

It should be noted that this case is not in the same posture as the Gladding case, where the

order of forfeiture plainly covered only the contraband files within the devices and the

government conceded as much.  In addition, the government agreed to give copies of

noncontraband materials to the defendant at the change of plea hearing.  Here, the government

has not agreed to give copies of noncontraband items within the hard drive to the defendant.  In

addition, the proposed order of forfeiture lists the devices with no caveats attached.  While some

of the comments in the Ninth Circuit's Gladding opinion indicate that that Court would entertain

a more general argument that the forfeiture of an electronic device in a child pornography case

does not necessarily mean the data within that device is forfeited, the Ninth Circuit in Gladding

never squarely reached the issue.  The Court in Noyes, which reached the issue decided that the

forfeiture of the device necessarily includes the forfeiture of all data therein, a conclusion which,

as the government will explain, finds support in the plain language of the applicable forfeiture

statute and a bedrock principle of forfeiture law—that forfeiture is mandatory.

In the Sanders case, the defendant sought the return of certain noncontraband files contained on electronic devices subject to forfeiture, pursuant to 18 U.S.C. § 2253(a)(1) and (3) (Exhibit 1). Judge Ellis directly addressed the question of whether 18 U.S.C. Section 2253(a)(1) and (3) requires the forfeiture of the electronic devices in their entirety.   Judge Ellis held, "Section 2253's text makes unmistakably clear that the government's position is correct; the electronic devices at issue are subject to forfeiture in their entirety under two subsections of § 2253[(a)(1) and (3)]." Sanders, 2022 WL 3572780, at *4.  As required by the Fourth Circuit in the Blackman decision, Judge Ellis further declined to consider any equitable considerations. Id. at*6.  Even if he had, Judge Ellis stated that the equitable considerations still weighed in favor of the government.  Id.  Judge Ellis noted the burden that separating the contraband versus noncontraband files would impose on the government.  Id.  He further stated that it was the defendant himself who comingled his data, and noted that the purpose of forfeiture is punishment and deterrence.  He stated that requiring the forfeiture of the devices in their entirety would serve a significant deterrent purpose.  Id.  Judge Ellis further considered the current case law that has addressed this issue and found that these cases also supported that Section 2253 requires the forfeiture of the device in its entirety. Id. at *5.

For instance, on United States v. Noyes, 557 F. App'x. 125 (3d Cir. 2014), the defendant had been convicted of transportation, receipt and possession of child pornography following a several day jury trial.  Following the guilt phase of that trial, Noyes chose to exercise his right under Fed. R. Crim. P. 32.2(b)(5) to retain the jury for forfeiture.  The jury found that Noyes used two computers to commit the child pornography offenses, and the Court issued a preliminary order of forfeiture accordingly.  United States v. Noyes, 1:08-cr-55 (W.D.Pa. Apr.

**J.A. 060**

13, 2011) (Document 155). The Court later entered a final order of forfeiture in the matter with respect to the two computers. Id. (Document 186).

Noyes filed a motion for return of seized property seeking the return of all non-contraband data on the two forfeited computers. The District Court denied the motion and the Third Circuit affirmed. The Third Circuit in Noyes took the position that the defendant "requested the return of certain files and programs contained on the forfeited computers, but the computers *as a whole*, *including all of their files and programs*, were subject to the forfeiture order." Noyes, 557 F. App'x. at 127 (emphasis added). The Third Circuit pointed to the child pornography forfeiture statute, the same statute at issue in this case, 18 U.S.C. § 2253(a)(3) and noted that nothing in the statute indicated that only a portion of computer can be forfeited. Id.

Likewise, in United States v. Wernick, 148 F.Supp.3d 271 (E.D.N.Y. 2015), the defendant was convicted of receipt, distribution, possession and reproduction of child pornography, as well as enticing minors to engage in sexual activity. Id. at 272. At Wernick's sentencing, the Court entered a consent order of forfeiture providing for the forfeiture of numerous electronic devices. Id. Wernick later filed a motion seeking the return of all contents on the electronic devices except for still images and videos, explaining that "[t]hat automatically excludes all contraband, such as child pornography, and, beyond that, obviates the need for a time-consuming culling of contraband from non-contraband images." Id. at 273.

The District Court held that both the order of forfeiture entered in Wernick's case and 18 U.S.C. § 2253 precluded the relief Wernick sought. Id. at 274-75. As to the order of forfeiture, the District Court cited two points:

> …the listing of the forfeited properties, considered in conjunction with (1) the explanation in the order that each of those items was "involved" in the counts of conviction, and (2) the resulting court-ordered forfeiture of *all of the defendant's*

**J.A. 061**

*interest* in such items (which, of semantic necessity, includes their contents *in toto* and related mirror-images), is fatal to his claim…

Id. at 275 (emphasis in the original).  The District Court in Wernick concluded that "[i]n sum, defendant's effort to limit the scope of the Order to contraband is not only inconsistent with its language and with the terms of Section 2253(a) but is also contrary to the persuasive rationale set forth in Noyes."  Id. at 276.  As explained herein, the same could be said in this case.

On appeal, the Second Circuit stated that the district court did not err in denying Wernick's Rule 41(g) motion. United States v. Wernick, 673 F. App'x 21, 25 (2d Cir. 2016). The court noted that Wernick did not seek files that could easily be disentangled from the devices; rather, he sought all non-pictorial files on the hard drive and meta data.  Id.  The Second Circuit in Wernick  also noted that it was "impossible confidently to conclude that none of the data was used to facilitate the offenses of conviction (such as contact information for parties to the crimes or records of internet chats concerning the criminal activity)."  Id.  However, the Second Circuit stated that it was not deciding the question of whether defendants were entitled to data unconnected to the offense of conviction that is located on an electronic device that is itself forfeitable as property used to commit the offense, pursuant to 18 U.S.C. § 2253(a)(3).  Id. at 26.

As the Court is aware, it has become well-established that forfeiture is mandatory. United States v. Blackman, 746 F.3d 137, 143 (4th Cir. 2014) (statutory language providing "that the district court shall order forfeiture" meant forfeiture was mandatory).  The fact that forfeiture is mandatory means that the Court must order the forfeiture of *all* assets covered by the forfeiture statute connected to the offense of conviction.  See, e.g., United States v. Evick, 286 F.R.D. 296, 298 (N.D.W.Va. 2012) ("…the Fourth Circuit has specifically ruled that a district court does not have the discretion to ignore a statutory forfeiture provision…this Court is required to impose statutory forfeiture provisions upon the conviction of a defendant") (citing United States v.

12

**J.A. 062**

Jalaram, Inc., 599 F.3d 347, 351 n.3 (4th Cir. 2010)).  As one Appellate Court has observed, "the

district court has no discretion to reduce or eliminate mandatory criminal forfeiture."  United

States v. Newman, 659 F.3d 1235, 1240 (9th Cir. 2011).  As referenced above, the proposed

preliminary order of forfeiture in this case references two classes of property covered under 18

U.S.C. § 2253—matter which contains child pornography and property facilitating the offenses.

Specifically, in pertinent part 18 U.S.C. § 2253 provides:

> (a) Property subject to criminal forfeiture.—A person who is convicted of
> an offense under this chapter involving a visual depiction described in section
> 2251, 2251A, 2252, 2252A, or 2260 of this chapter or who is convicted of an
> offense under section 2252B of this chapter,, or who is convicted of an offense
> under chapter 109A, *shall forfeit* to the United States such person's interest in—
>
> (1)  any visual depiction described in section 2251, 2251A, or 2252
> 2252A, 2252B, or 2260 of this chapter, or any book, magazine, periodical, film,
> videotape, *or other matter which contains any such visual depiction*, which was
> produced, transported, mailed, shipped or received in violation of this chapter;
>
> (3)  any property, real or personal, used or intended to be used to commit
> or to promote the commission of such offense or any property traceable to such
> property.

(emphasis added).  Of course, in determining the meaning of a statute, "words will be interpreted

as taking their ordinary, contemporary, common meaning."  United States v. Serafini, 826 F.3d

146, 149 (4th Cir. 2016) (quoting Perrin v. United States, 444 U.S. 37, 432 (1979)).  18 U.S.C. §

2253(a)(1) makes clear that forfeiture is not limited to the offending image itself, rather it

includes the medium on which that image is stored—"any book, magazine, periodical, film,

videotape, or other matter which contains any such visual depiction."  Under the statute as

written, the Court cannot order only the forfeiture of the page in the magazine that has an image

of child pornography, rather the whole magazine must be forfeited, even if it is otherwise full of

completely innocent material.  The statute, the application of which is mandatory and which may

not be reduced, thus requires the forfeiture of the offending images *and the electronic devices*

J.A. 063

*those images were on*.  Judge Ellis agreed and determined in the <u>Sanders</u> case that the clear language of the statute requires the forfeiture of the device in its entirety.  <u>Sanders</u>, 2022 WL 3572780, at *6.

Furthermore, the Court should be skeptical of a rule which obligates the government to expend considerable resources, both in time and money, to extract innocent data from a defendant's computer when he chooses to store contraband on the same media along with the innocent data, something the defendant alone could have avoided had he simply not comingled his contraband with innocent data in the first place.  Further, based on the above authorities, the Court is not writing on a blank slate with respect to the issue presented here.  The statute at issue, 18 U.S.C. § 2253 requires the forfeiture of any device containing child pornography and any device used as facilitating property.  Under the statute, one need not pause to consider how much child pornography remains on the device, rather the whole device must be forfeited if used in this manner.  Congress could have limited forfeitures under 18 U.S.C. § 2253 to the photos themselves, but they did not and Fourth Circuit precedent requires that the statute be given its plain meaning as written.

The federal Courts in the United States that have squarely confronted and ruled on this issue have held that the whole device must be forfeited under 18 U.S.C. § 2253.  Given the amount of data on the hard drive, the undertaking of separating contraband and noncontraband data would be time consuming and  difficult. As the Court is aware, a great number of child pornography and child exploitation cases make their way through the federal Courts in the Eastern District of Virginia every year.  Needless to say, if every one of those child pornography and exploitation defendants each year could force law enforcement agencies to engage in separating some noncontraband files from the electronic devices subject to forfeiture, it would be

**J.A. 064**

an enormous drain on their resources.  In so draining their resources, it would also take them away from their important mission of protecting children from predators.

<u>PROCEDURE WITH RESPECT TO THIS MOTION</u>

Fed. R. Crim. P. 32.2(b)(4)(A) provides that, at sentencing, a preliminary order of forfeiture becomes final as to the defendant.  Therefore, as a general rule, a preliminary order of forfeiture must be entered as to a defendant by the time of sentencing.  <u>See, e.g.</u>, <u>United States v. Petrie</u>, 302 F.3d 1280, 1284-85 (11th Cir. 2002) (preliminary order of forfeiture entered approximately six months after the defendant's sentencing vacated because the District Court no longer had jurisdiction to enter the order).  <u>But see</u> <u>United States v. Martin</u>, 662 F.3d 301, 307 (4th Cir. 2011) (missing the sentencing deadline to enter a forfeiture order does not deprive the District Court of jurisdiction to do so, provided the Court makes clear prior to sentencing that it plans to order forfeiture); <u>United States v. Mearing</u>, Case No. 18-4026, at p. 4-5 (4th Cir. May 29, 2018) (citing <u>Martin</u>).  The government notes that under Local Criminal Rule 47, a defendant has fourteen days to file a response to this motion and register his objection to the forfeiture.

Fed. R. Crim. P. 32.2(b)(4)(B) provides that the Court "must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing."  That same rule also provides that the Court "must…include the forfeiture order, directly or by reference, in the judgment."

<u>CONCLUSION</u>

Since the hard drive contains child pornography that the defendant admitted that he possessed, it is subject to forfeiture pursuant to 18 U.S.C. §§ 2253(a)(1) and (a)(3).  The government therefore respectfully requests that the Court enter a preliminary order of forfeiture

J.A. 065

forfeiting the electronic device to the United States.  A proposed order is attached for the Court's consideration.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By      /s/Annie Zanobini
        Annie Zanobini
        Assistant United States Attorney
        California State Bar No. 321324
        Attorney for the United States
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Office Number: (703) 299-3700
        Facsimile Number: (703) 299-3982
        E-mail Address:
        Annie.zanobini2@usdoj.gov

**J.A. 066**

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 14th day of November 2022, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system which will send a notification of

such filing (NEF) to all counsel of record.

By:    /s/Annie Zanobini
       Annie Zanobini
       Assistant United States Attorney
       California State Bar No. 321324
       Attorney for the United States
       2100 Jamieson Avenue
       Alexandria, Virginia 22314
       Office Number: (703) 299-3700
       Facsimile Number: (703) 299-3982
       E-mail Address: Annie.zanobini2@usdoj.gov

17

**J.A. 067**

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:20-cr-143 |
| | ) | |
| ZACKARY ELLIS SANDERS, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

A jury, following a seven-day trial, convicted Defendant Zackary Ellis Sanders of five counts of production of child pornography, six counts of receipt of child pornography, and one count of possession of child pornography. Now before the Court are the government's motion for a preliminary order of forfeiture (Dkt. 610) and defendant's motion for return of non-contraband seized property (Dkt. 607). The government seeks forfeiture of nine electronic devices, all of which were used in the commission of the offenses of conviction, and which were seized by FBI agents on February 12, 2020 in the course of executing a search warrant at Defendant's home. Defendant concedes that the electronic devices themselves are subject to mandatory forfeiture, but defendant nonetheless seeks the return of certain files contained on these devices, including defendant's business records and family photograph, which defendant argues are not subject to mandatory forfeiture. Defendant seeks an order directing the government to preserve and return copies of the non-contraband content on the devices. The motions have been fully briefed and a forfeiture hearing was held April 29, 2022.[1] The motions are therefore ripe for disposition.

---

[1] Ordinarily, a forfeiture order is entered at the time of sentencing, and sentencing in this case occurred on April 1, 2022. At the time of defendant's sentencing, however, defendant requested additional time to respond to the government's proffered preliminary forfeiture order and requested that the forfeiture hearing be continued to a later date. *See* Defendant's Reply in Support of Defendant's Motion for Return of Property, *United States v. Sanders*, 1:20-cr-00143

1

## I.

The factual and procedural background of this case has been recounted in prior Orders

and need not be fully repeated here. *See, e.g.*, Sealed Order, *United States v. Sanders*, 1:20-cr-

143 (E.D. Va. Apr. 15, 2022) (Dkt. 642) (summarizing defendant's convicted offenses and the

trial evidence supporting those convictions).  In essence, in October 2021, following a seven-day

trial, defendant was convicted by a jury of twelve counts of possession, receipt, and production

of child pornography. The trial evidence established that Defendant coerced, persuaded, and

enticed minor victims to record videos of themselves engaged in sexualized conduct (*e.g.*

slapping their testicles) and then to send those videos to Defendant. The trial evidence also

established that Defendant amassed a collection of child pornography from various websites and

that Defendant stored that child pornography on various electronic devices. As a result, the

government seeks forfeiture of the following nine electronic devices, all of which contain child

pornography or were used in commission of the offenses of conviction:

(a) 1B1 - 4GB Sandisk Cruzer Edge thumb drive ("1B1");

(b) 1B2 - HP Elite Book 755 laptop ("1B2");

(c) 1B3 - Lexar 32GB thumb drive ("1B3");

(d) 1B5 - HP laptop S/N: 5CH1262Y5Y ("1B5");

(e) 1B6 - HP laptop S/N: CNF8255WH5 ("1B6");

(f) 1B19 - Apple iPad, S/N: DMPVGGCPHDDV ("1B19");

---

(E.D.Va. Mar. 31, 2022) (Dkt. 612 at 1). Defendant's motion to continue the forfeiture hearing
was granted, and the forfeiture hearing was continued until Aril 29, 2022.

During defendant's sentencing, counsel for both parties agreed that Fourth Circuit precedent
established that a sentencing court may retain jurisdiction to enter a forfeiture order after
sentencing, provided that, as occurred here, the sentencing court makes clear at the time of
sentencing that a forfeiture order would be forthcoming at a later time. *See United States v.
Martin*, 662 F.3d 301, 307 (4th Cir. 2011).

**J.A. 070**

(g) 1B22 - Apple iPad, S/N: DMPHM3K7DVGF ("1B22");

(h) 1B24 - Apple iPhone, FCC ID: BCG-E2430A ("1B24");[2] and

(i) 1B27 - Apple iPhone S/N; C39VJ0XDJCL6 ("1B27").

Trial testimony and admitted evidence establishes that all of these electronic devices

contained child pornography and were used by Defendant in the commission of the offenses of

conviction. Specifically, trial testimony included:

- Special Agent Christopher Ford testified that he imaged and examined devices 1B1, 1B2, 1B3, and 1B5, and that those devices each contained images of child pornography (relating to the possession of child pornography charges).

- Agent Ford also testified that he examined 1B19 and that, based on Agent Ford's examination, 1B19 was used to chat online with minors to produce and receive child pornography.

- Agent Ford testified that he examined 1B22 and that 1B22 was used to chat online with minors to produce and receive child pornography.

- Agent Ford testified that he examined 1B27 and that 1B27 was used to receive child pornography.

In addition to the trial testimony, the government submitted two declarations in support

of forfeiture. First, Special Agent Emily Eckert submitted a declaration in support of the

government's forfeiture motion in which Eckert explained that a forensic examination of the

electronic devices found images and videos of child pornography on each device. *See*

Declaration of Special Agent Emily T. Eckert, *United States v. Sanders*, 1:20-cr-00143 (E.D.Va.

Mar. 29, 2022) (Dkt. 610-1). Second, FBI Special Agent Andrew Kochy also submitted a

declaration in support of the government's forfeiture motion in which Agent Kochy described

the burden the government would bear if the government were required to review the files on

these electronic devices and segregate contraband from non-contraband files. *See* Declaration of

_____

[2] The government's proposed forfeiture order incorrectly identified device 1B24 as an Apple iPad, *see* Dkt. 610, but the government corrected this error during the April 22 forfeiture hearing.

3

Special Agent Andrew Kochy, *United States v. Sanders*, 1:20-cr-00143 (E.D.Va. Mar. 29, 2022)

(Dkt. 610-1 at 7). Specifically, Agent Kochy stated that an FBI agent would be required to

"inspect every picture, text message, email, document, and file" on these devices to ensure that

the files Defendant seeks contain no contraband or evidence of Defendant's crimes.[3] Dkt. 610-1

at 9. Thus, agents would be required to engage in the time-consuming effort of reviewing each

file for contraband content before separating contraband content in order to separate contraband

from non-contraband files.

## III.

The forfeiture of property in child pornography prosecutions is governed by 18 U.S.C.

§ 2253. In essence, the parties dispute the proper scope of that statutory provision. Section

2253(a) provides that defendants who are convicted of child pornography offenses are required

to forfeit certain property used in connection with those offenses. *See* 18 U.S.C. § 2253(a).

Because Section 2253(a)'s forfeiture provisions are mandatory, district courts lack authority to

deny forfeiture even in the presence of compelling circumstances or equitable considerations. In

this respect, the Fourth Circuit has been clear that "[t]he plain text of the statute thus indicates

that forfeiture is not a discretionary element of sentencing." *United States v. Blackman*, 746 F.3d

137, 143 (4th Cir. 2014). Indeed, in *Blackman*, the Fourth Circuit explicitly held that the district

court erred in "believe[ing] that it could withhold forfeiture on the basis of equitable

considerations." *Id.* Thus, equitable considerations must play no role in determining whether the

electronic devices are subject to forfeiture in their entirety.

---

[3] As discussed in more detail below, the term "contraband" refers to all property subject to
mandatory forfeiture. The term "contraband" encompasses not only images of child
pornography, but also includes any electronic files used in the commission of the convicted
offenses as well as any information identifying or relating to the minor victims in this case.

4

The government bears the burden of "establish[ing] a nexus between the property for which it is seeking forfeiture and the crime by a preponderance of the evidence." *United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011). The government has clearly satisfied its burden in this case, as the trial evidence and the declarations of Special Agents Eckert and Kochy, *see* Dkt. 610-1, establish that all nine electronic devices at issue here contain visual depictions of child pornography and were used by defendant in the commission of his child pornography offenses.[4] Defendant does not contest that all nine electronic devices are subject to forfeiture.

Although the parties agree that the nine electronic devices are subject to mandatory forfeiture under § 2253, the parties disagree about whether § 2253 applies to non-contraband files stored on those devices. The government argues that the provisions of § 2253 unambiguously require forfeiture of the electronic devices in their entirety, and that the defendant is not entitled to the return of certain non-contraband files stored on those devices. *See* Dkts. 610, 641. Defendant, in contrast, argues that the forfeiture statute does not apply to the non-contraband files contained on those files, and that the government is required to return to defendant non-contraband files which the government can easily identify and separate from the contraband files. Specifically, the defendant seeks the return of certain allegedly non-contraband files—business records and family pictures—stored on the devices designated as 1B2, 1B19, and 1B27.

---

[4] Under Rule 32.2(b)(1)(B), Fed. R. Crim. P., the determination of a nexus between the property and the crime of conviction "may be based on evidence already in the records … or information presented by the parties … after the verdict or finding of guilty." Rule 32.2(b)(1)(B); *accord United States v. Farkas*, 474 Fed. App'x. 349, 360 (4th Cir. 2012) (holding that a district court may rely on additional evidence submitted during sentencing in determining the scope of a forfeiture order). Thus, the declarations of Special Agents Eckert and Kochy are properly considered as part of the factual record at this stage of proceedings.

5

Section 2253(a) specifically identifies three categories of property subject to mandatory forfeiture:

> (1) any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction [of child pornography], which was produced, transported, mailed, shipped or received in violation of this chapter;

> (2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

> (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

18 U.S.C. § 2253(a).

Notably, nowhere does the statute provide that only some portion of the property containing child pornography should be subject to forfeiture. Nor does the statute provide that non-contraband material on the devices should be separated from contraband materials on the devices and returned to a defendant. Instead, the statute clearly requires forfeiture of "any … matter which contains" a visual depiction of child pornography, and thus requires the forfeiture not only of the visual depiction itself, but also the matter or device on which that visual depiction is stored. 18 U.S.C. § 2253(a)(1). Accordingly, any and all property used to commit a child pornography offense must be forfeited to the government under § 2253(a)(3).[5] The statute on its face thus requires that Defendant must forfeit the nine electronic devices in their entirety. And as

_____

[5] This result is also consistent with the Fourth Circuit's interpretation of forfeiture provisions in other areas of criminal laws. For example, the Fourth Circuit has held that the forfeiture laws governing drug prosecutions, *see* 21 U.S.C. § 881(a), requires forfeiture of an entire property even if drug sales occurred only on a small portion of that property. *See United States v. Santoro*, 866 F.2d 1538, 1542-43 (4th Cir. 1989) (holding that the statutory text, and not the defendant's "subjective characterization of the property," must "serve as the legal basis" for determining what property is subject to forfeiture).

6

discussed below, none of Defendant's arguments against forfeiture are persuasive and thus Defendant's opposition to forfeiture of the entire device must fail.

Because the parties disagree on the scope of 18 U.S.C. § 2253, the question presented in this matter is a question of statutory interpretation. Thus, the analysis must "begin, as always in deciding questions of statutory interpretation, with the text of the statute." *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir. 2013). Section 2253's text makes unmistakably clear that the government's position is correct; the electronic devices at issue are subject to forfeiture in their entirety under two subsections of § 2253.

First, the electronic devices are subject to forfeiture under § 2253(a)(1) because they are "any … other matter which contains any such visual depiction" of child pornography. 18 U.S.C. § 2253(a)(1). There is no dispute that each of the nine electronic devices contain images of child pornography, and thus each electronic device falls within the scope of § 2253(a)(1). Notably, Section 2253(a)(1) makes no exception for non-contraband material contained on the electronic devices, and instead requires that any and all matter containing child pornography (*i.e.* the nine devices at issue here) are subject to forfeiture. To the contrary, § 2253(a)(1) clearly requires forfeiture of the matter containing the visual depictions—*i.e.* the electronic storage devices.

Second, the nine electronic devices are also subject to forfeiture in their entirety under § 2253(a)(3), which requires forfeiture of "any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property." 18 U.S.C. § 2253(a)(3). Here, the electronic devices the government seeks to be forfeited qualify as property used to commit the offenses, given that these electronic devices were all used by the defendant to access and store visual depictions of child pornography. Defendant also used these electronic devices (i) to direct his minor victims to produce sexually

7

explicit images of themselves and (ii) to receive those images from his victims. *See* Dkt. 610-1 at 4-5. Thus, these electronic devices were also used to facilitate the convicted offenses of production and receipt of child pornography. Like Section 2253(a)(1), Section 2253(a)(3) applies to *any* property used to commit a child pornography offense and does not contain an exception for non-contraband portions of property. Accordingly, many of the electronic devices are subject to forfeiture in their entirety under § 2253(a)(3).

Thus, there is no doubt that the plain and unambiguous text of 18 U.S.C. § 2253(a) requires the forfeiture of the electronic devices in their entirety if the devices contain child pornography or were used to commit child pornography offenses. As the Fourth Circuit has made clear in statutory interpretation cases, where, as here, "the text is unambiguous, [the] inquiry is complete." *Taylor v. Grubbs*, 930 F.3d 611, 616 (4th Cir. 2019) (citing *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, — U.S. —, 138 S. Ct. 617, 631 (2018)). Indeed, the Supreme Court has observed that criminal forfeiture provisions "punish wrongdoing ... [and] deter future illegality," *Kaley v. United States*, 571 U.S. 320, 323 (2014). And the plain language of § 2253(a) reflects Congress's clear purpose to deter and prevent further child pornography offenses. As discussed below, a review of persuasive caselaw confirms this result.

Although the Fourth Circuit has not ruled on this precise issue, two well-reasoned opinions of other federal courts of appeals analyzing this issue have reached the conclusion that in child pornography cases, non-contraband files stored on contraband electronic devices must be forfeited along with the devices themselves. In *United States v. Noyes*, 557 Fed. App'x. 125 (3d Cir. 2014), the Third Circuit held that electronic devices used in connection with a child pornography conviction were subject to forfeiture in their entirety, including all of the files, contraband and non-contraband, stored on those devices. As occurred here, the defendant in

**J.A. 076**

*Noyes* requested an order requiring the government to return to defendant any non-contraband electronic files stored on those devices. The *Noyes* Court denied this request, observing that the forfeiture statute in child pornography cases required defendants to forfeit "any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property." *Noyes*, 556 Fed. App'x at 127 (citing 18 U.S.C. § 2253(a)(3)). The *Noyes* Court explained that "[t]here is nothing in the statute which indicates that only a portion of the property can be forfeited," *Noyes*, 557 Fed. App'x at 127, and accordingly the *Noyes* Court held that the child pornography forfeiture statute required forfeiture of the electronic devices as well as all files stored on those devices, including non-contraband files.

The Second Circuit reached a similar conclusion in *United States v. Wernick*, 673 Fed. App'x. 21, 25 (2d Cir. 2016). There, as here, a defendant convicted of a child pornography offense sought return of non-contraband files stored on an electronic device subject to mandatory forfeiture under 18 U.S.C. § 2253(a)(3). The Second Circuit denied defendants request, explaining that in child pornography prosecutions electronic devices containing child pornography were "still forfeitable [in their entirety] even if commingled with legitimate property." *Wernick*, 673 Fed. App'x at 25. The Second Circuit also explained that such a request would be difficult to grant even if defendant identified specific files, as "[i]t is impossible confidently to conclude that none of the data requested was used to facilitate the offenses of conviction (such as contact information for parties to the crimes or records of internet chats concerning the criminal activity)." *Id.*

In his briefs opposing forfeiture, defendant cites various out-of-circuit cases to argue that the electronic devices are not subject to forfeiture in their entirety. But this caselaw fails to persuade, as none of the cases cited by defendant involve construction of 18 U.S.C. § 2253, the

governing statute in this case. Accordingly, none of these cases are applicable and therefore these cases do not suggest, yet alone require, a conclusion different from the result reached here

Defendant argues that an opinion of the Ninth Circuit, *United States v. Gladding*, 775 F.3d 1149 (9th Cir. 2014), reached the opposite result and requires that the government return defendant's non-contraband files. This is an inaccurate reading of *Gladding*. The *Gladding* Court interpreted a district court's forfeiture order, not the text of § 2253(a). At issue in *Gladding* was whether the district court's forfeiture order which excluded "noncontraband files even though those files were intermingled with files containing child pornography," *id.* at 1153, nonetheless applied to non-contraband files. The government in *Gladding* sought forfeiture of the non-contraband files notwithstanding that those files were not included in the forfeiture order. The Ninth Circuit acknowledged that "this type of forfeiture order [issued in *Gladding*] is uncommon…" because "in the normal course, a defendant forfeits all the files on an electronic storage device when it forfeits the device itself, whether those files are contraband or not." *Id.* at 1153, n.1. But the government in *Gladding* never argued that the forfeiture order should be amended to cover all the files on the electronic devices, and there is no indication that the *Gladding* Court considered the proper interpretation of § 2253(a). To the contrary, the Ninth Circuit explicitly "d[id] not express an opinion on the validity of the district court's order requiring [defendant] to forfeit only contraband files" and further, the *Gladding* Court declined to "preclude the district court from amending its forfeiture order on remand to include the noncontraband files that [defendant] seeks in his motion to the extent permitted by law." *Id.* Thus, the *Gladding* Court expressly declined to consider the issue presented in this case, namely whether the child pornography forfeiture statute, 18 U.S.C. § 2253(a), requires forfeiture of all files housed on electronic storage devices if those devices are used to commit child pornography

10

offenses. Accordingly, *Gladding* does not suggest that defendant should prevail on his motion

for return of non-contraband property.

Defendant also cites additional caselaw which does not involve application of § 2253(a)

and is therefore inapplicable to the instant case. For example, defendant cites *United States v.*

*Conrad*, 2013 WL 4028273, No. 3:12-cr-00134-K-34 (TEM) (M.D. Fla. May 14, 2013), which

Defendant claims stands for the proposition that courts have developed a standard practice for

separating contraband and non-contraband materials in forfeiture disputes. But *Conrad* involved

a motion for return of property under Rule 41, Fed. R. Crim. P., and the opinion relied on by

defendant does not even cite, yet alone analyze, 18 U.S.C. § 2253(a), which controls the

mandatory forfeiture in this case. Defendant also cites *United States v. Reaid*, 4:10-cr-00042

(N.D. Fl., June 11, 2012) for the proposition that courts may order the return of non-contraband

property. Once again, however, the *Reaid* opinion did not entail an analysis of § 2253(a); that

opinion dealt instead with a motion for return of property under Rule 41. Thus, the *Reaid* opinion

does not concern the proper scope of § 2253(a), which, as discussed above, compels the

forfeiture of the electronic devices in their entirety even if the device contains some non-

contraband material. In sum, defendant relies on inapplicable and unpersuasive cases, none of

which interprets § 2253(a), the statute that undoubtedly governs this child pornography forfeiture

dispute.

As discussed above, the plain text of § 2253(a) requires forfeiture of the electronic

devices in their entirety, and the Fourth Circuit has held that courts imposing mandatory

forfeiture under § 2253(a) may not decline to require forfeiture based on equitable

considerations. *See Blackman*, 746 F.3d at 143. But even if equitable considerations were

considered, it is clear that those considerations favor a ruling requiring Defendant to forfeit the electronic devices in their entirety.

First, the government has demonstrated, through trial testimony and declarations submitted in support of the instant forfeiture motion, that compliance with defendant's request for return of some files would impose an unwarranted and substantial burden on government resources. In his declaration, FBI Special Agent Kochy advised that it would take considerable time for FBI forensic examiners to comb through the electronic devices at issue and segregate contraband from non-contraband files. *See* Dkt. 610-2. The government also notes that the task of separating contraband from non-contraband files is more complicated than merely separating pornographic images from non-pornographic ones. For example, the trial evidence in this case demonstrated that the Defendant offered employment in his businesses to several of the minor victims. Thus, some of the business files the Defendant seeks to be returned may contain information identifying defendant's minor victims, and thus such files could only be returned to the Defendant with identifying information redacted. *See* 18 U.S.C. § 3509, 3771. It would necessarily take detailed review of each file to ensure that no contraband material was inadvertently disclosed to the defendant. This review would require government personnel to devote substantial time; given the number of child pornography cases prosecuted in this District, manual review of every electronic device subject to forfeiture would be entirely unworkable given finite government resources.[6]

---

[6] Defendant, in his briefing on this issue, has offered to pay the government for the costs of identifying and returning to defendant the non-contraband files stored on the electronic devices. Defendant's offer to pay the government is insufficient. As the government rightly notes, however, even if defendant assisted with the cost of reviewing the files, an FBI technician would still be required to review the files and determine which were contraband and which were not contraband. This would require that FBI personnel take time away from other jobs, which cannot be compensated for by Defendant's payments.

12

Second, any burden to the Defendant in this case is a result of the Defendant's own wrongdoing. It is clear that the Defendant is the one who decided to commingle family photographs and business records with images of child pornography. Given that the purpose of criminal forfeiture is to punish and deter criminals, equity requires a denial of Defendant's motion. Forfeiture of the devices in their entirety also serves a significant deterrent purpose. As the Fourth Circuit has observed, "the substantive purpose of criminal forfeiture is not to provide protection for defendants but to deprive criminals of the fruits of their illegal acts and deter future crimes." *Martin*, 662 F.3d at 309. Forfeiture of the electronic devices in their entirety is a significant deterrent to those who consider trafficking in images of child pornography.

## IV.

In sum, Defendant asks for the creation of an exception to a statute's mandatory statutory forfeiture requirement, based on the premise that it is unfair to deprive Defendant of family photographs and business records stored on the forfeited devices. But the exception Defendant seeks comes not from the statute's clear text, which contains no such exception for non-contraband files housed on a contraband device; instead, Defendant's proposed exception comes from reliance on equitable considerations. But the Fourth Circuit has explicitly held that sentencing courts may not deny forfeiture based on equitable consideration in cases involving forfeiture under 18 U.S.C. § 2553. *See Blackman*, 746 F.3d at 143 ("Insofar as the district court believed that it could withhold forfeiture on the basis of equitable considerations, its reasoning was in error."). Instead, the plain and unambiguous text of § 2253(a) requires that the government's motion for forfeiture be granted, the defendant's motion for the return of non-contraband property be denied, and that the electronic devices at issue be forfeited in their entirety.

An Order reflecting the issues in this Memorandum Opinion will issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
August 19, 2022

T. S. Ellis, III
United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 1:22-cr-51 |
| STUART CLAY MCDONALD, | ) | |
| | ) | |
| Defendant. | ) | |

## PRELIMINARY ORDER OF FORFEITURE

WHEREAS, on May 19, 2022, defendant Stuart Clay McDonald pled guilty to count one

of the indictment alleging receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2),

and count three of the indictment alleging possession of child pornography, in violation of 18

U.S.C. § 2252(a)(4)(B);

AND WHEREAS, the Court's jurisdiction is founded upon 18 U.S.C. §§ 2253(a)(1) and

(a)(3);

AND WHEREAS, on November 14, 2022, and pursuant to 18 U.S.C. § 2253, the United

States filed a Motion for Preliminary Order of Forfeiture requesting the forfeiture of a Seagate

hard drive, serial number NA05H5FZ;

AND WHEREAS, the Court finds the government has established the requisite nexus

between the property to be forfeited and the offenses of conviction as prescribed by Rule

32.2(b)(1)(A);

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**

**THAT:**

1.    The following property is forfeited to the United States pursuant to 18 U.S.C. §§

2253(a)(1) and (a)(3):

**(a) Seagate hard drive, S/N NA05H5FZ.**

**J.A. 083**

2.      The government is hereby authorized to seize and take exclusive custody and control of the forfeited asset, which is hereby forfeited in its entirety, including any hardware, as well as any software or data contained on it.

3.      Upon the seizure of any property, the government shall, to the extent practicable, provide direct written notice to any persons known to have alleged an interest in the seized property, and shall publish notice of this order in accordance with Federal Rule of Criminal Procedure 32.2(b)(6).

4.      Any person, other than the defendant, asserting any legal interest in the property may, within thirty days of the publication of notice or the receipt of notice, whichever is earlier, petition the Court for a hearing to adjudicate the validity of their alleged interest in the property.

5.      Following the Court's disposition of all timely petitions filed, a final order of forfeiture shall be entered.   If no third party files a timely petition, this order shall become the final order of forfeiture, as provided by Federal Rule of Criminal Procedure 32.2(c)(2), and the United States shall have clear title to the property, and shall dispose of the property in accordance with law.

6.      Pursuant to Rule 32.2(b)(4)(B), this order of forfeiture shall be included in the Judgment imposed in this case.

Dated this _____ day of _____ 2022.

_____
UNITED STATES DISTRICT JUDGE

2

**J.A. 084**

I Ask For This:

Jessica D. Aber
United States Attorney


By:    /s/ Annie Zanobini
       Annie Zanobini
       Assistant United States Attorney
       California State Bar No. 321324
       Attorney for the United States
       2100 Jamieson Avenue
       Alexandria, VA 22314
       Office Number: 703/299-3700
       Facsimile Number: 703/299-3982
       Email Address: Annie.zanobini2@usdoj.gov

**J.A. 085**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

---

UNITED STATES OF AMERICA

v.

STUART CLAY MCDONALD,

Defendant.

Case No. 1:22-CR-51

Hon. Claude M. Hilton

Hearing: December 12, 2022

---

## MR. MCDONALD'S OBJECTION TO ENTRY OF PRELIMINARY ORDER OF FORFEITURE PROFFERED BY THE GOVERNMENT

Defendant Stuart Clay McDonald, through undersigned counsel, hereby opposes entry of the proposed preliminary order of forfeiture proffered by the government. The government's motion, which sets forth the procedural history, proposes entry of an order that would effectuate Mr. McDonald's forfeiture of any interest in a Seagate hard drive "including any . . . software or data contained on it."[1]

Mr. McDonald agrees that 18 U.S.C. § 2253(a)(1) provides that he forfeits any interest in any contraband found on the Seagate hard drive (namely child pornography images that underlie a portion of his guilty plea), and 18 U.S.C. § 2253(a)(3) provides that he forfeits the hard drive itself. However, the statute doesn't require forfeiture of any interest in *non-contraband data* that happen to also be on that hard drive, such as family pictures and software development files he created. Accordingly, he respectfully requests that the Court not enter the government's proposed order, and instead enter the defense's proposed order, Exhibit 1

---

[1] Gov't Mot., ECF No. 55 at 1-3; Gov't Prop. Order, ECF No. 55-2.

J.A. 086

## GOVERNING STANDARDS

"Before the Court may enter a preliminary order of forfeiture, it must first determine if Congress has statutorily authorized the remedies requested, whether forfeiture of the property sought is warranted, and if the procedures for awarding such remedies have been followed." *United States v. Poulin*, 690 F. Supp. 2d 415, 422 (E.D. Va. 2010), *aff'd,* 461 F. App'x 272 (4th Cir. 2012).

Forfeiture is a creature of statue, and limited by the text of the relevant forfeiture provision. Thus, the Rules of Criminal Procedure provide that, where the government seeks forfeiture, a "court must determine what property is subject to forfeiture *under the applicable statute.*" Fed. R. Crim. P. 32.2(b)(1)(A) (emphasis added); *see also United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) (forfeiture is "mandatory *in cases where the statute applied*" (emphasis added)); § 26.6(d) Forfeiture, 6 Crim. Proc. § 26.6(d) (4th ed.) ("[t]he scope of assets subject to forfeiture is *limited by statute* to that property possessing a prescribed relationship with the criminal activity." (Emphasis added)).

If, as here, "the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). The government bears the burden of establishing "a nexus between the property for which it is seeking forfeiture and the crime by a preponderance of evidence." *United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011) (noting that the preponderance of evidence standard is set forth in case law, not Rule 32.2).

**ARGUMENT**

The government contends that the hard drive is forfeited pursuant to 18 U.S.C. § 2253(a)(1), which mandates forfeiture of contraband visual images themselves or "any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction," as well as pursuant to §2253(a)(3), which mandates forfeiture of "any *property* . . . used . . . to commit or promote" child pornography offenses. And, the government assumes, if the hard drive is forfeited pursuant to these provisions, then so too is everything on it, whether contraband or not.

The government's position ignores that, as outlined above, a defendant forfeits nothing unless a statute explicitly provides for such forfeiture, and fails to consider limits to forfeiture in these cases found in the text of § 2253 itself. Further, the government fails to adequately consider what does and does not constitute part of the hard drive. As explained below:

- the non-contraband files are not forfeit pursuant to § 2253(a)(3) because such files were not *used* to commit the offense, and they are not part of the hard drive itself;

- a hard drive does not fall within "other matter which contains" any child pornography, as that phrase is used § 2253(a)(1); and

- even if a hard drive itself can be such a "matter" subject to forfeiture pursuant to § 2253(a)(1), the text does not provide that a defendant forfeits non-contraband files that happen to be stored in such "matter."

**I.    The non-contraband files are not forfeit pursuant to § 2253(a)(3).**

    *A.    The Court must determine what constitutes the "property" subject to forfeiture pursuant to § 2253(a)(3), that is, what constitutes the "hard drive."*

Section 2253(a)(3) provides that a person convicted of an offense under Chapter 110 of Title 18 involving certain types of visual depictions (child pornography) "shall

3

**J.A. 088**

forfeit to the United States such person's interest in . . . (3) any *property*, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property." (Emphasis added.)

"Property," in this context, is a defined term. Specifically, § 2253(b) incorporates by reference "Section 413 of the Controlled Substances Act (21 U.S.C. § 853), with the exception of subsections (a) and (d) . . ." As a result, the following applies when construing § 2253(a)(3):

> *Meaning of term "property"*
>
> Property subject to criminal forfeiture under this section includes—
>
> (1) real property, including things growing on, affixed to, and found in land; and
>
> (2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

18 U.S.C. § 853(b).

There is no dispute that Mr. McDonald used the hard drive to commit his offense. Nor does the defense dispute that a hard drive is "property," as used in § 2253(a)(3) and § 853(a). It is tangible personal property. *See* § 853(a)(2). But the government skips over the need to define the limits of that "property," *i.e.*, where the "hard drive" begins and ends, or what *constitutes* the "hard drive." Instead, the government simply assumes that the hard drive necessarily includes both the hard drive and all of the other intangible property *on* the hard drive, *i.e.,* that everything on the hard drive constitutes part of it.

But this is not how courts usually approach the question of how *much* of something the government may forfeit in a given case. That is, even when statutes provide for forfeiture of any "lot," "tract," "real property," or any other type of property in its *entirety*, determining if there is a nexus between the defendant's crime and a portion of the lot, tract, or property is only part of the analysis. The Court must also determine what *constitutes* the "tract" or "property" in question. And to do that, courts may not simply leap to gut conclusions about where a forfeitable piece of property begins or ends, or what is part of it, as the government would have the Court do here. Instead, courts must look to logical outside sources to define what *constitutes* a forfeitable item. Doing so in this case leads to the conclusion that the hard drive does not include the data on it, which is in fact separate intangible property.

1.  <u>The Fourth Circuit has long recognized that a court must not presume what constitutes forfeitable property.</u>

The Fourth Circuit has long recognized this step. In *United States v. Reynolds*, the Fourth Circuit considered how much real property the defendant forfeited pursuant to a civil forfeiture provision as a result of using only some of it for drug distribution. *Reynolds*, 856 F.2d 675, 675-76 (4th Cir. 1988). Section 881(a)(7) of title 21 provides for civil forfeiture of "all real property, including any right, title, and interest in the whole of any *lot* or *tract* of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" controlled substance offenses. (Emphasis added.) The Fourth Circuit determined that this language made plain that Congress

contemplated use of this provision to forfeit the *entirety* of any tract of land that had been used, even in part, in drug distribution. *Reynolds*, 856 F.2d at 676.

But the defendant noted that this did not resolve everything, because "the forfeiture statute does not define 'tract . . .'" *Id*. at 676-77. Addressing this, the Court did not side with either party's subjective interpretation of what portion of the land at issue constituted the "tract" that defendant forfeited. Rather, it cast about for available objective evidence, concluding that the "natural source" for definition of what made up the entire tract subject to forfeiture in a particular case was "the instrument creating an interest in the property[.]" *Id*. at 676-77.

The Fourth Circuit took the same approach a year later in *United States v. Santoro*, 866 F.2d 1538, 1540 (4th Cir. 1989)In that case, a drug distribution defendant argued (among other things) that the sentencing court had unjustly forfeited all of 26 acres of land "bisected by a road and . . . taxed as two separate parcels," given that she had only distributed drugs on the portion of the land that was on one side of the road, and a small portion of it at that. *Id*. Following the logic of *Reynolds*, the court agreed that it was essential to carefully determine what constituted the forfeitable "tract." Indeed, it explicitly rejected the notion that what made up the forfeitable "property" should be determined through "subjective characterizations of the property[.]" *Id*. at 1543. Instead, the court found, there must be some objective authority on how to define the property. *Id*. Citing *Reynolds*, the court concluded that "[t]he whole of any lot or tract of land must be determined from

**J.A. 091**

the duly recorded instruments and documents filed in the county offices where the defendant property is located." *Id.*

> 2. Courts relying on these Fourth Circuit cases have applied this logic in the context of criminal forfeitures pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 2253, which "do not clearly define what constitutes one piece of 'property'."

Just as 21 U.S.C. § 881 provides no guidance on how to define the forfeitable "tract" or "lot" at issue in a particular case, neither 21 U.S.C. § 853 nor 18 U.S.C. § 2253 specify how a court is to determine what constitutes a particular piece of property subject to forfeiture in a given case. Confronting this, courts have followed the Fourth Circuit's lead, recognizing that they must accordingly use objective, "natural sources" for the definition of what constitutes a forfeitable "property" in a particular case.

For example, in *United States v. Bieri*, the government sought forfeiture of four tracts of a dairy farm pursuant to 18 U.S.C. § 853(a)(2) based on evidence that the defendants had used a house and outbuildings on only the fourth tract to grow and distribute controlled substances. *Bieri*, 21 F.3d 819, 820-21 (8th Cir. 1994). Confronted with the defense argument that the statute and Eighth Amendment permitted only forfeiture of the fourth tract, the court determined that it first "must define what portion of the [the defendant's] farm is 'property' subject to forfeiture under section 853." *Id.* at 823.

The court noted that, in § 853, "Congress plainly provided for forfeiture of property even where only a portion of it was used for the prohibited purposes . . ." *Bieri*, 21 F.3d at 823. But, the court found, "[t]here remains some uncertainty in spite

7

of the clear language of the statute because *the statute does not clearly define what constitutes one piece of 'property.'*" *Id.* (emphasis added).

Relying in part on the Fourth Circuit, the Eighth Circuit ruled that "the natural source for defining 'property' subject to forfeiture is the instrument creating the defendant's interest in the property." *Id.* at 824 (citing *Reynolds,* 856 F.2d at 676-77, and *United States v. Smith*, 966 F.2d 1045, 1054 (6th Cir. 1992)). Applying this principle, the court noted that the defendants had acquired all four contiguous tracts "as a whole" at the same time as a single unit through a single deed. *Id.* The court concluded that "these facts indicate that the property is in fact a single unit for purposes of section 853(a)." *Id.*.

Likewise, in another case about a farm comprised of multiple tracts of land that also cited to the Fourth Circuit decisions in *Reynolds* and *Santoro*, the Sixth Circuit ignored the government's subjective characterization that the defendant "treated the farm as one single unit" and instead looked to the "the instruments and documents" that created the defendant's interest in the tracts to determine what constituted the forfeitable "property." *United States v. Smith*, 966 F.2d at 1054. Thus, the Sixth Circuit ruled that the defendant did not forfeit every one of four tracts of land making up one farm pursuant to § 853(a) because "Smith initially obtained his interest in the whole of each of the four tracts by virtue of the four separate deeds[,]" and the government did not establish that all tracts had in fact facilitated the defendant's drug offenses. *Id.* at 1054 & 1055-56.

**J.A. 093**

Courts have extended this approach to questions of what constitutes the "property" that child pornography defendants forfeit pursuant to § 2253(a)(3). For instance, in *United States v. Hull*, the government sought to forfeit land, on which sat a house, both of which belonged to a man who had been convicted of child pornography offenses. *Hull*, 606 F.3d 524, 526 (8th Cir. 2010). The court quickly dismissed the defendant's argument that the government hadn't shown that the home had been "used" to commit or promote his child pornography offenses, noting that the home had afforded privacy, a place to store a computer, and a means to access the internet wirelessly, among facilitation. *Id.* at 527-28.

Most pertinent to the instant case, the defendant then argued that if the house was forfeitable on those grounds, then that did not mean the "entire acreage" on which it sat was as well, that is, that only the house was forfeit. *Id.* at 528. Citing *Bieri,* the Eight Circuit disagreed, finding no reason to depart from it and other cases which had "concluded, with respect to other criminal forfeiture statutes . . . that 'the natural source for defining 'property' subject to forfeiture is the instrument creating the defendant's interest in the property.'" *Id.*

Courts following the logic of *Reynolds* proceed the same way even when what is to be forfeited is something other than real property: assuming a property is forfeitable, they determine what constitutes the property in question by reference to objective extrinsic evidence. For example, in *United States v. One 1998 Tractor,* 288 F. Supp. 2d 710, 712 (W.D. Va. 2003), a civil forfeiture case, the government claimed that a defendant who had pled guilty to hauling contraband cigarettes in the cab of

his tractor forfeited both the tractor *and a trailer* belonging the defendant, arguing that the court should consider the tractor-trailer as one "vehicle" that the applicable statute said would be forfeited if it was involved in transporting contraband. *One 1998 Tractor*, 288 F. Supp. at 712 ; *see* 18 U.S.C. § 80303 (providing for forfeiture of "an aircraft, *vehicle*, or vessel involved in transporting contraband" (emphasis added)). *Id.* The defendant did not dispute that his tractor was forfeit, but he argued that the trailer used to haul it was not forfeit because the government had not proven a nexus between the crime and the trailer itself. *Id.*

Following the Fourth Circuit precedent discussed above, the district court turned to objective extrinsic evidence to define exactly what constituted the forfeited "vehicle" in this case, again looking to whatever created the defendant's interest in the tractor to define it. *Id.* Because the "tractor and trailer were purchased separately, had separate titles, and separate vehicle identification numbers," the court found that they were not one in the same, so the trailer was not part of the vehicle, and not forfeit. *Id.*

      B.    *The cases on which the government relies are unpersuasive because, among other things, they fail to consider the preliminary issue of what constitutes the "property" subject to forfeiture.*

All of the cases discussed above, including *Reynolds* and *Santoro* from the Fourth Circuit, and *Bieri* and *Hull*, which apply the logic of those cases to 21 U.S.C. § 853 and 18 U.S.C. § 2253, establish that if the parties dispute whether something is *part* of a forfeitable piece of property or, instead, a *separate* piece of property, the

**J.A. 095**

first step the court must undertake is to determine what constitutes the property in question, and to do so, the court must look to objective extrinsic evidence.

None of the cases cited by the government bind this Court. They are also not persuasive because although almost every one of them cites to *Hull*, they all skipped this step, instead simply *assuming* that what the defendant sought to not forfeit was *part* of the indisputably forfeitable "property."

For example, the government relies on *United States v. Noyes*, an unpublished Third Circuit opinion. 557 F. App'x. 125, 126 (3d Cir. 2014). The case concerned an order forfeiting the defendant's interest in two computers pursuant to § 2253(a)(3), reflecting a jury finding that he had used the computers in child pornography offenses. *Noyes,* 557 F. App'x. at 126. The defendant filed a Rule 41 motion for return of the non-contraband files on the computers. *Id.*

The court alluded to the *Hull* principle that a court must first *establish* what constitutes the property the government seeks to forfeit: it quoted *Hull* for proposition that "*once it is established* that the 'property' subject to forfeiture consists of the entire acreage, nothing in the statute allows the court to order forfeiture of less than this property." *Id.* at 127 (quoting *Hull*, 606 F.3d at 528-29) (emphasis added). But despite thus noting that one must *establish* what the property in question consists of before ordering forfeiture, the court skipped over that step in the case before it. The court did not pause to consider whether anything other than its subjective view established that the non-contraband files the defendant sought return of actually were part of the "computers" the jury determined to be forfeitable. Instead, the court *assumed* they

**J.A. 096**

were, and accordingly put the onus on the defense to find something explicit in the text of the statute stating that "only a portion of the 'property' can be forfeited.'" *Noyes*, 557 Fed. Appx. at 127.

The court's approach in *Noyes* – placing the burden on the defendant to prove the files were *not* forfeitable, rather than requiring the government to prove that they *were* – likely also reflected the procedural posture, as the defendant in that case did not object to the initial forfeiture order, and instead filed a motion pursuant to Rule 41. *See Id.* at 126-27. Here, of course, there is no dispute that the burden is on the government to establish that the non-contraband files are part of the hard drive, and forfeit. *United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011).[2]

*Wernick*, another unpublished opinion relied upon by the government, this one from the Second Circuit, is also unpersuasive for several reasons. Like *Noyes*, it concerns a post-forfeiture Rule 41 motion, so different standard and burdens applied than do here. *Wernick*, 673 Fed. Appx. 21, 25 (2d Cir. 2016). Wernick also waived any right to contest forfeiture, another circumstance not applicable here. *Id.* at 25. Finally, in *Wernick,* the Second Circuit specifically stated that it was *not* deciding the issue presented here: "whether defendants in some case may retain interests in data

---

[2] In contrast, once proceedings have concluded and a forfeiture order has been entered, if the defendant files a Rule 41 motion to return property, the defendant bears the burden initial burden of showing that they are lawfully entitled to the property. *United States v. Lindsey*, 202 F.3d 261 (4th Cir. 2000) (noting that if the defense shows a lawful claim to the property, the burden shifts back to the government to show a legitimate reason to retain the property).

**J.A. 097**

unconnected to criminal activity that is stored on the hard drive that is itself forfeitable" under § 2253(a)(3). *Id.* at 25-26.

As for the lower court opinion in *Wernick*, upon which the government relies somewhat, it is unpersuasive for the reasons the Second Circuit opinion is, and because it relies heavily on *Noyes*. *See United States v. Wernick*, 148 F. Supp. 3d 271 (E.D.N.Y. 2015) (relying on rationale of *Noyes*).[3]

Like the opinions in *Noyes* and *Wernick*, United States District Judge Ellis's opinion in *United States v. Sanders* starts by simply assuming that the non-contraband files the defendant sought to not forfeit in that case were part of the hard drive at issue, rather than by a probing of *whether* they were or were not. *Sanders*, No. 1:20-CR-143, 2022 WL 3572780, *1, *4 (E.D. Va. Aug. 19, 2022) (concluding that non-contraband files were forfeit "given that" the devices on which they were housed

---

[3] The lower court opinion *Wernick* also stated that the data the defendant sought to have returned to him "was intertwined with its contraband counterparts," *Wernick*, 148 F. Supp. 3d at 276. Likewise, the Second Circuit stated in passing that "[p]roperty that is traceable to an offense is still forfeitable even if commingled with legitimate property." *Wernick*, 673 Fed. Appx. at 25; *see also United States v. Sanders*, No. 1:20-CR-143, 2022 WL 3572780, at *5 (E.D. Va. Aug. 19, 2022) (relying on this statement).

The government does not rely on these statements, and with good reason. First, the principles that these courts are alluding to applies to forfeiture of the *proceeds* of illicit activities, not at issue in *Wernick* or here. *See United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1161 (2d Cir. 1986) ("The cash in the hands of the bank does not cease to be 'traceable proceeds' just because it is commingled with the bank's other cash."), *cited by Wernick,* 673 F. App'x 21. Second, the Second Circuit courts never explained the basis for concluding that non-contraband files were "intertwined" or "commingled" with contraband in those cases, and that is not true here. The files on Mr. McDonald's hard drive are each severable from the hard drive.

**J.A. 098**

were used to commit the offenses). The *Sanders* opinion also follows in the steps of *Noyes* and *Wernick* by shifting the burden to the defendant to find an explicit protection of his rights in the statute, rather than requiring the government to prove the statue authorized forfeiture. *Id.* (declining to find non-contraband files were not forfeited in part because the "statute does not contain an exception for non-contraband portions of property"). Accordingly, in addition to not binding this Court, the *Sanders* opinion is not persuasive in light of the language in the statute, and the more persuasive guidance provided by *Reynolds, Santoro*, *Bieri, Smith, Hull,* and *One 1988 Tractor*.[4]

In sum, the government cites no decision from a Court of Appeals squarely holding that 2253(a)(3) authorizes forfeiture of non-contraband files that happen to be on a forfeit hard drive. Indeed, two of the Court of Appeals opinions the government dwells on take care to state that they are *not* opining on that question. *Wernick*, 673 Fed. Appx. at 25-6; *United States v. Gladding,* 775 F.3d 1149, 1153 n.1 (9th Cir. 2014) ("We do not express an opinion on the validity of the district court's order requiring Gladding to forfeit only contraband files."). Instead, the government relies on inapposite cases analyzing post-forfeiture Rule 41 motions, and one district court opinion that relies on them. Further, the pronouncements in these cases concerning defendants' claims to the non-contraband files fail to take account of Circuit Court precedent, including from the Fourth Circuit, clarifying that the court

---

[4] The defendant in *Sanders* did not point Judge Ellis to this line of cases.

must carefully examine what constitutes a forfeitable property, and craft the forfeiture order accordingly.

C. *The government offers no evidence to contradict the objective evidence from common experience that the non-contraband files in this case do not constitute a part of the "hard drive."*

Again, the defense does not dispute that the hard drive is a piece of tangible property that was used to commit Mr. McDonald's offenses, because he used it to store child pornography. As such, the hard drive is forfeitable pursuant to 18 U.S.C. § 2253(a)(3). But, following *Reynolds* and *Santoro* from this Circuit, as well as *Hull*, *Bieri*, and *One 1998 Tractor*, which rely on those case, this Court must determine what *constitutes* the hard drive, just as those courts determined what constituted the "farms" and "vehicles" at issue in those cases.

The government offers its subjective view that the hard drive includes its contents, contraband and non-contraband, but courts have rejected the notion that subjective impressions define what constitutes a particular property. *Santoro,* 866 F.2d at 1543. Instead, the court should follow the lead of other courts and turn to the most "natural" objective and extrinsic sources for definition of this property.

In cases concerning real estate or other very expensive property like tractors and trailers, courts look to transaction histories, or title documents and the like, for evidence of what constitutes a particular piece of property, as discussed above. *See, e.g., Bieri,* 21 F.3d 819 at 823 (examining deeds, conveyances, and other evidence, such as whether tracts are contiguous); *One 1998 Tractor*, 288 F. Supp. 2d at 713 (examining titles, purchases, and VINs of purported "vehicle" parts). Here, nothing

**J.A. 100**

of the sort is available. But the "natural sources" to which the Court may turn to define the property subject to forfeiture here are common experience and common sense, particularly where the government (the party with the burden) offers no evidence of what constitutes the property.

Common experience informs that hard drives designed for storage, like the external Seagate hard drive at issue here, are separate from their contents. Indeed, they are typically empty when purchased from retailers, just as file cabinets typically are empty when purchased. *See United States v. Williams*, 592 F.3d 511, 523 (4th Cir. 2010) (analogizing hard drives to file cabinets in case concerning scope of authority to search hard drive). Most have experience with loading data and files *onto* hard drives: these data and files are typically purchased or obtained from other sources (as in the case of word processing files, music files, gaming files, or cryptocurrency), or are created by a computer user, as in the case of one's own pictures, writing, or (in Mr. McDonald's case) software coding. Either way, the files on a hard drive almost always have independent value, are servable and could be stored elsewhere, do not depend on a particular hard drive to be usable, and often constitute intellectual property; the hard drive is nothing more than storage for other data files.

Land or other real property sales often contemplate the simultaneous sale of homes or other matters attached to or in the land. At least this is common enough, and land typically valuable enough on its own, that what conveys with real property is usually written down in contracts, titles, deeds, and other written instruments. Likewise, what conveys with a tractor or trailer, or a tug or barge, is also usually

reduced to writing, given that there could be doubt about such things. But no one would expect that purchase of a storage hard drive would include conveyance of a previous owners' data or files. Instead, just as anyone purchasing a file cabinet, even second hand, would expect it to arrive empty, anyone purchasing a storage hard drive would not expect to also receive someone else's family photos, music mp3 files, coding files, or cryptocurrency. In short, in any other context, no reasonable person would consider the files we store on drives like the Seagate hard drive to be one and the same with those drives.[5]

The government – which is the party with the burden of establishing what is forfeit – has offered no source of evidence contradicting the natural, common-sense conclusion that the files on the drive do not constitute part of the hard drive. Accordingly, the Court should conclude that the non-contraband files are not part of the hard drive, and accordingly not forfeit pursuant to 18 U.S.C. § 2553(a)(3).[6]

---

[5] Likewise, given common practice and common sense, no reasonable person would expect to receive all of the jewelry or other valuable tangible property in a home upon purchase of the home. Thus, it makes perfect sense that a court would not even consider that jewelry in a home that was not proceeds of drug trafficking could be forfeited simply by virtue of it having been found in a home that had been used to promote that trafficking. *See United States v. Juluke*, 426 F.3d 323, 328 (5th Cir. 2005) (reversing forfeiture of jewelry found in home used for trafficking "[b]ecause the Government produced no evidence from which the district court could infer that the jewelry seized from the . . . home was proceeds of the drug activity that formed the basis for Juluke's convictions").

[6] The contraband files on the hard drive are also not forfeit simply because they are "part" of the hard drive, but they are nevertheless forfeit pursuant to the explicit text of 18 U.S.C. § 2253(a)(1), as discussed below.

17

## II.  The non-contraband files are not forfeit pursuant to § 2253(a)(1).

The government asserts that 18 U.S.C. § 2253(a)(1) also provides that Mr. McDonald forfeits his interests in the non-contraband files on the hard drive in addition to the hard drive. That provision provides for forfeiture of certain visual depictions (referred to here as "child pornography" for ease of reference) "*or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction*, which was produced, transported, mailed, shipped or received in violation of this chapter." 18 U.S.C. § 2253(a)(1) (emphasis added).

The government takes for granted that a hard drive falls within the meaning of "other matter which contains any such visual depictions" as it is used in § 2253(a)(1), and presumes that if a matter is forfeitable, then so too is everything in it. But the statute reveals that neither presumption is correct.

   A.  *The hard drive itself is not subject to forfeiture under 18 U.S.C. § 2253(a)(1) because it is not "other matter which contains any such visual depiction" as that phrase is used in the statute.*

Whether a hard drive is "other matter" under § 2253(a)(1) is a question of statutory interpretation. "When interpreting a statute, courts must 'first and foremost strive to implement congressional intent by examining the plain language of the statute.'" *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (quoting *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010)). If the plain language is unambiguous, the inquiry ends there. *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015). The plainness or ambiguity of statutory language is determined by "reference to the language itself, . . . the specific context in which that language is

used, and the broader context of the statute as a whole." *Id.* (quoting *Yates v. United States*, 574 U.S. 528, 537 (2015)).

The text, context, and structure of § 2253 compel the conclusion that "other matter which contains any such visual depiction" as used in 18 U.S.C. § 2253(a)(1) refers not to anything that takes up space (*i.e.*, any matter) which contains child pornography, but rather a narrower universe of "matter." Specifically, the general term "other matter which contains any such visual depiction" in this provision encompasses only matters containing images of child pornography that cannot be extracted from the matter without materially altering or destroying that matter. This does not include hard drives.

    1. <u>The text of § 2253(a)(1) reveals that "other matter" includes only matters from which child pornography cannot be extracted without altering the matter.</u>

There is no definition of "other matter" in § 2253, so the Court must first look to the word's ordinary, dictionary meaning. *George*, 946 F.3d at 646. The relevant dictionary definitions of "matter" range from "the substance of which a physical object is composed" and "material substance that occupies space."[7] Applying this definition might suggest that essentially anything could be forfeit in these cases.

But "whether a statutory term is unambiguous . . . does not turn solely on dictionary definitions of its component words." *Yates v. United States*, 574 U.S. 528,

---

[7] *Matter*, Merriam-Webster.com, https://www.merriam-webster.com /dictionary/matter (last visited Nov. 28, 2022). There is no legal definition. *See Matter,* Black's Law Dictionary (11th ed. 2019).

537 (2015) (internal citations omitted). "Rather, the plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." *Id*. (internal citations omitted). "Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things." *Id*. When a term as broad as "other matter" appears in a statute, the text is better read within "specific context in which the language is used." *Id*. at 546.

As the Supreme Court explained in *Yates v. United States,* two related principles that guide courts' efforts to ensure they do not read terms more broadly than Congress intended are *noscitur a sociis* and *ejusdem generis. Noscitur a sociis* counsels that a word "is known by the company it keeps," and applying it helps to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Id*. at 553 (internal citations omitted). *Ejusdem generis* "counsels [that] where general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id*. (internal citations omitted).

In *Yates,* a plurality of the Supreme Court applied these principles to conclude that the term "tangible object," which appears in the obstruction statute 18 U.S.C. §

1519, does not include fish.[8] In *Yates*, a commercial fisherman who had ordered his crew to toss illegally caught fish back into the ocean to prevent government agents from spotting that he had violated fishing regulations was charged of violating 18 U.S.C. § 1519. *Yates,* 574 U.S. at 531. That provision provides that "[w]hoever knowingly alters, destroys . . . any record, document, or tangible object . . . ." and the government argued that the fish thrown back into the water were "tangible objects," relying on the dictionary definition. *Id.* The Supreme Court rejected this "unrestrained" interpretation of the phrase because "tangible object" was "last in a list of terms that begins 'any record [or] document," and "is therefore appropriately read to refer, not to any tangible object, but specifically to the subsect of tangible objects involving records and documents, *i.e.,* objects used to record or preserve information." *Id.* at 544. The Court also observed that "Congress would have had no reason to refers specifically to 'record' or 'document'" had Congress "intended 'tangible object' in 1519 to be interpreted so generically as to capture physical objects as dissimilar as documents and fish." *Id.*

The same principles apply here. The term "other matter which contains any such visual depiction" is extremely broad, but it appears after a list of more specific "matters." The doctrines of *noscitur a sociis* and *ejusdem generis* dictate that interpretation of the phrase must be "construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates*, 574 U.S.

---

[8] Justice Alito concurred with the Court's judgment and also relied on *ejusdem generis* in his concurring opinion. *Yates*, 574 U.S. at 550 (Alito, J., concurring).

**J.A. 106**

at 553. Further, Congress if intended this provision to provide for forfeiture of absolutely anything that takes up space and that can contain child pornography, it would have had no reason to specifically list "book, magazine, periodical, film, [and] videotape" ahead of "other matter . . ." The Court must avoid rendering these more specific matters listed mere surplusage. *See id.* at 544, 545 (disapproving of government's reading of "tangible object" in part because it rendered previous more specific examples of tangible objects "misleading surplusage").

Thus, to "avoid . . . giving unintended breadth to the Acts of Congress," the Court must conclude that, just as "tangible object" in § 1519 includes only tangible objects "within the subset of tangible objects involving records and documents, *i.e.,* objects used to record or preserve information," *id.* at 544, "other matter which contains any such visual depiction" must include only matters within the subset of matters containing child pornography that share a feature common to books, magazines, periodicals, films, and videotapes which contain child pornography into a subset.

At least one feature unites the books, magazines, periodicals, films, and videotapes into one subset of matter. Specifically, they are all vessels for audiovisual content from which images cannot be extracted without altering them. For example, one cannot extract child pornography from a book containing child pornography without destroying the book as it existed (*i.e.*, destroying its original form), and the same is true for a magazine, periodical, file, or videotape containing child pornography. Accordingly, the only way to ensure that child pornography contained

in these matters is taken out of circulation is to remove the matters in their entirety from circulation (or destroy them before returning them to the defendant, which would have the same effect and serve little purpose).

A related feature that unites the specific items listed in § 2253(a)(1) is that those that contain child pornography rarely if ever contain a great deal of innocent material. For example, child pornography did not often appear in books, magazines, or videotapes that were not dedicated to that content. Thus, forfeiture of these matters would rarely even risk forfeiture of innocent property with independent value.

Applying the principles set out in *Yates,* as the Court must, compels the conclusion that "other matter" as used in § 2253(a)(1) refers only to matters that share these qualities with books and the other specific items that precede "other matter" in that provision.

Hard drives are inherently unlike these items on both counts. A hard drive is simply a storage device. Files can be added and easily removed from a hard drive without changing the drive at all. And it is not unusual at all for hard drives to include both child pornography and completely unrelated and innocent files. On both counts, the same could be said for computers more generally, floppy disks and jump drives, as well as file cabinets, bureaus, safe deposit boxes, and innumerable other things that take up space and thus fall within the dictionary definition of "matter." Thus, hard drives and many other items are outside of the items Congress meant to target

for forfeiture as "other matter which contains any such visual depiction" in § 2253(a)(1).

    2.    <u>The structure of § 2253 as a whole supports the conclusion that this narrower interpretation of "matter" is the right one.</u>

Section 2253(a) is divided into three sections. The second, (a)(2), plainly targets the *proceeds* of child pornography offenses. The third, (a)(3), serves to target anything of value *used* to commit these offenses. This will always include any containers used to store and hide child pornography.[9] Thus, because (a)(3) will always serve to ensure forfeiture of *containers* for child pornography, subsection (a)(1) must be interpreted to have some purpose other than simply ensuring that all containers of child pornography are forfeited, or else it is superfluous, a reading the Court must "resist." *Yates*, 574 U.S. at 543 ("We resist a reading of § 1519 that would render superfluous an entire provision passed in proximity as part of the same Act").

And (a)(1) *does* have a purpose distinct from (a)(3). The text of the entire subsection shows that the *focus* of (a)(1) is ensuring that that *images* of child pornography, wherever they are found, are taken out of circulation. Indeed, subsection (a)(1) begins by stating that the defendant forfeits "any visual depiction" described in certain child pornography statutes. § 2253(a)(1).

This context must inform the interpretation of "any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction" in (a)(1).

---

[9] Indeed, the defense concedes that § 2253(a)(3) justifies forfeiture of the container for child pornography in this case, the hard drive itself, as Mr. McDonald used it to possess child pornography, as charged in Count Three.

And it suggests that Congress did not include that clause because it was focused on depriving the defendant of any containers used to hold child pornography – (a)(3) already covers that. Rather, Congress added (a)(1) to rid defendants, and the community, of these harmful images.

When the images are on matters like hard drives, computers, jump drives, file cabinets, bureaus, and briefcases and the like, forfeiture of the images alone, as contemplated by the first part of subsection (a)(1), accomplishes this goal of the subsection. But where the images are part of a magazine, book, videotape and the like, not only are the images likely the focus of those "matters," and pervasive within them, but the images also cannot be easily removed from those matters. As such, the only way to accomplish this goal of (a)(1) is to remove the entire matter from circulation.

Thus, given that (a)(1) is focused on removing these images from circulation, Congress appears to have included the "or any book . . . or other matter . . ." clause to remove any doubt that the defendant forfeits any claim to these images not only when they can be segregated from other objects without destroying those objects and rendering them useless to the defendant, but also – *even if* – they happen to be found in vessels from which the images *cannot* be segregated.

Thus, the interplay among (a)(2), (a)(3), and (a)(1) in § 2253 provides additional support for the conclusion that Congress crafted (a)(1) as it did – placing the "or other matter" clause after a specific list of items that cannot be easily segregated from their

contents – with the intent to restrict the meaning of "other matter" to other such items.

> 3.   <u>The government cites only one case holding that a hard drive is a "matter," and that case is neither binding, nor persuasive.</u>

As support for the proposition that § 2253(a)(1) provides for forfeiture of hard drives, the government cites a single district court opinion, Judge Ellis's opinion in *Sanders*, 2022 WL 3572780. ECF No. 55 at 6, citing *Sanders*, 2022 WL 3572780 at *4. But the defendant in that case did not argue that "other matter" in § 2253(a)(1) does not include storage hard drives, and did not engage in the close analysis of the text and context of that provision set out above. As a result, Judge Ellis did not have an opportunity to consider the argument that hard drives fall within the "other matter" contemplated by § 2253(a)(1). *Sanders* is accordingly not persuasive authority on this subject, in addition to not being binding upon this Court.

> B.   *Even if the hard drive is subject to forfeiture under 18 U.S.C. 2253(a)(1), the non-contraband files that happen to reside on the hard drive are not.*

Even if the Court disagrees with the defense's reading of "other matter" in § 2253(a)(1) as excluding hard drives, nothing in the statute indicates that the non-contraband stored inside such matters should also be subject to forfeiture.

The government argues that the files are forfeit unless the defense can point to language explicitly stating that defendants may keep this property. But this argument of the government seeks to evade the fact that the government has the burden to establish that the statute mandates forfeiture. It is not the defense's burden to establish that it does not. Moreover, one would not expect a statute to state

what a defendant does *not* forfeit – he forfeits nothing unless the statute says he does. *See* Fed. R. Crim. P. 32.2(b)(1)(A)

The fact of the matter is that the relevant language states that a defendant in this type of case "shall forfeit . . . any . . . matter which contains" child pornography. It does not say he shall forfeit "any . . . matter . . . *and anything else found in that matter.*" The lack of any textual support for the notion that defendants forfeit non-contraband that is not otherwise forfeitable should settle this case.

And, as discussed at length in Part I, the non-contraband files are property in their own right, separate from the hard drive, just as physical child pornography is often separate from its containers. Consider a filing cabinet in which a defendant stored physical images of child pornography. The first part of section 2253(a)(1) explicitly states that the defendant would "forfeit" their interests in those "visual depictions…" And if the court determined that the file cabinet qualified as a "matter which contain[ed]" child pornography as used in that provision, notwithstanding the above arguments, the statute also explicitly would call for forfeiture of that matter. But the statute provides no textual support for the idea that a defendant in such a case would also forfeit non-contraband family photos or intellectual property that happened to be in the forfeitable file cabinet. Nor does it provide support for the idea that such a defendant would forfeit non-contraband material that happened to be in a hard drive, which is essentially an electronic file cabinet. *See Williams*, 592 F.3d 511, 523 (4th Cir. 2010) ("At bottom, we conclude that the sheer amount of information contained on a computer does not distinguish the authorized search of

the computer from an analogous search of a file cabinet containing a large number of documents.").

Because the government can point to nothing in § 2253 explicitly providing that Mr. McDonald forfeits his interest in non-contraband property, the Court should reject the government's proposed order.

## III.  The rule of lenity dictates that this Court resolve any ambiguity about the scope of 18 U.S.C. § 2253 in Mr. McDonald's favor.

When presented with ambiguity in a criminal statute, "the ambiguity must be resolved in favor of lenity of the accused." *George*, 946 F.3d at 645 (quoting *United States v. Sheek*, 990 F.2d 150, 153 (4th Cir. 1993)). This guards against "extend[ing] criminal liability beyond that which Congress has plainly and unmistakably proscribed." *Id.* (quoting *United States v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012)). The rule of lenity unequivocally "applies to sentencing as well as substantive provisions." *United States v. Batchelder*, 442 U.S. 114, 121 (1979).

Accordingly, if any ambiguity survives the Court's analysis of 18 U.S.C. § 2253, the Court must choose the construction yielding the least amount of forfeiture, or at least not resulting forfeiture of non-contraband property that was not used in his offense. *See United States v. R.L.C.*, 503 U.S. 291, 293 (1992).

## IV.  Any inconvenience to the government is not relevant.

Both the government's motion and the opinion in *Sanders* assert that it would be burdensome for the government to identify non-contraband files, and either remove them from the hard drive or provide Mr. McDonald with copies of them. The Court should ignore these claims because they are irrelevant.

**J.A. 113**

As the government states over and over again in its motion, equitable considerations are not part of the calculus in forfeiture proceedings. ECF No. 55 at 3, citing *United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014); *Sanders*, 2022 WL 3572780, at *3. This principle applies to defendants and to the government in equal force. "The law contains no 'inconvenience exception" to the proposition that seized property should be returned to its lawful owner in the absence of a continuing Government interest." *Wiebe v. National Security Administration*, R&R, ECF No. 67 at 14-15, 2012 U.S. Dist. LEXIS 131708, *24 (filed Sep. 14, 2012) (finding irrelevant government arguments regarding 'undue burden' it would suffer to sift through and return the [files in electronic devices] defendant sought in Rule 41 proceeding); Order Adopting R&R; ECF No. 78.

As established above, Congress did not provide for forfeiture of non-contraband data files that happen to be found on hard drives that contained child pornography. They are not forfeit pursuant to § 2253(a)(3) because they do not constitute part of the hard drives on which they are stored. They are not forfeit pursuant to § 2253(a)(1) because storage hard drives are not contemplated by that provision and, even if they are, nothing in the text suggests that non-contraband files on such drives are forfeit because they happen to be on those drives. If Congress determines that its decisions about what a defendant forfeits pursuant to § 2253, as reflected in its text, failed to sufficiently account for the challenge of returning non-contraband electronic files to defendants in these cases, Congress may change the text of its statute. Until it does so, this Court must follow the law as written.

## CONCLUSION

For the foregoing reasons, and such others as may be offered at the upcoming hearing on this matter, Mr. McDonald respectfully requests that the Court not enter the government's proposed order, and instead enter the defense's proposed preliminary order of forfeiture.

Respectfully submitted on November 28, 2022.

**STUART CLAY MCDONALD**
by counsel:

Geremy C. Kamens
Federal Public Defender for the
Eastern District of Virginia

by:_____s/_____
Ann Mason Rigby
VA Bar No. 92996
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
ann_rigby@fd.org

# PRELIMINARY ORDER OF FORFEITURE

WHEREAS, on May 19, 2022, defendant Stuart Clay McDonald pled guilty to count one of the indictment alleging receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and count three of the indictment alleging possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B);

AND WHEREAS, the Court's jurisdiction is founded upon 18 U.S.C. §§ 2253(a)(1) and (a)(3);

AND WHEREAS, on November 14, 2022, and pursuant to 18 U.S.C. § 2253, the United States filed a Motion for Preliminary Order of Forfeiture requesting the forfeiture of a Seagate hard drive, serial number NA05H5FZ;

AND WHEREAS, the Court finds the government has established the requisite nexus between certain visual depictions on that hard drive and the offenses of conviction as prescribed by Rule 32.2(b)(1)(A), insofar as these certain visual depictions are of the type described in 18 U.S.C. § 2253(a)(1);

AND WHEREAS, the Court finds that the government has established the requisite nexus between that Seagate hard drive, serial number NA05H5F, and the offenses of conviction as prescribed by Rule 32.2(b)(1)(A) insofar as the hard drive was "used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property," as contemplated in 18 U.S.C. § 2253(a)(3);

J.A. 116

AND WHERAS, the Court finds that the government has not established a nexus between the non-contraband files and data on the Seagate hard drive as prescribed by Rule 32.2(b)(1)(A), which means that they are not forfeit pursuant to 18 U.S.C. § 2253;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.  The following property is forfeited to the United States pursuant to 18 U.S.C. § 2253 (a)(3):

**(a) Child pornography found on Seagate hard drive, S/N NA05H5FZ, pursuant to 18 U.S.C. § 2253(a)(1); and**

**(b) Seagate hard drive, S/N NA05H5FZ, a hardware device, pursuant to 18 U.S.C. § 2253(a)(3).**

2. The government is hereby authorized to seize and take exclusive custody and control of the forfeited assets. The government is not authorized to seize and take exclusive custody and control of the non-contraband data and files found on the Seagate hard drive, S/N NA05H5FZ.

3. Upon the seizure of any forfeited property, the government shall, to the extent practicable, provide direct written notice to any persons known to have alleged an interest in the seized property, and shall publish notice of this order in accordance with Federal Rule of Criminal Procedure 32.2(b)(6).

4. Any person, other than the defendant, asserting any legal interest in the property may, within thirty days of the publication of notice or the receipt of notice, whichever is earlier, petition the Court for a hearing to adjudicate the validity of their alleged interest in the property.

5. Following the Court's disposition of all timely petitions filed, a final order of forfeiture shall be entered. If no third party files a timely petition, this order shall become the final order of forfeiture, as provided by Federal Rule of Criminal Procedure 32.2(c)(2), and the United States shall have clear title to the property, and shall dispose of the property in accordance with law.

6. Pursuant to Rule 32.2(b)(4)(B), this order of forfeiture shall be included in the Judgment imposed in this case.

Dated this _____ day of _____ 2022.

_____
UNITED STATES DISTRICT JUDGE

**J.A. 118**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA    )
                            )
            v.              )
                            )    Criminal No. 1:22-CR-51
STUART CLAY MCDONALD,       )
                            )
        Defendant.          )

## UNITED STATES' REPLY ON DEFENDANT'S  BRIEF

## REGARDING FORFEITURE

Comes now the United States of America, by counsel, and offers its reply to the

defendant's brief regarding forfeiture (Dkt. 57).  For the reasons articulated below and in the

Government's Motion for Entry of a Preliminary Order of Forfeiture (Dkt. 55), the hard drive is

forfeitable in its entirety, pursuant to 18 U.S.C § 2253(a)(1) and (a)(3).  Moreover, a rule

requiring the government to separate the noncontraband files from the contraband materials

would place an undue and unreasonable burden on limited government resources.

## PROCEDURAL HISTORY

 On May 19, 2022, the defendant pled guilty to Count One of the Indictment alleging

receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and Count Three of the

Indictment alleging possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B)

(Dkt. 36).  On August 19, 2022, the defendant was sentenced to 72 months imprisonment and 10

years of supervised release  (Dkt. 51).  As the parties had not agreed on forfeiture, the

government informed the court that it intended to seek forfeiture of electronic devices and the

court scheduled a separate forfeiture hearing.  On November 14, 2022, the government filed a

motion for a preliminary order of forfeiture, and on November 28, 2022, defense filed an

**J.A. 119**

objection to the entry of a preliminary order of forfeiture.  A forfeiture hearing in this case is

presently set for December 12, 2022 at 10:00 AM.

ARGUMENT

A.  <u>The statute and case law makes clear that the electronic devices are forfeited in their entirety under 18 U.S.C. § 2253(a)(1) and (a)(3).</u>

The issue before this Court is the same issue Judge Ellis faced in <u>United States v. Zachary Sanders</u>, No. 1:20-CR-143, 2022 WL 3572780 (E.D. VA. Aug, 19, 2022) —it is no different.  The issue before this Court is whether the criminal statute governing forfeiture in child pornography cases, 18 U.S.C. § 2253(a)(1) and (a)(3), requires the forfeiture of the electronic devices in their entirety.  Based on a reading of the statute and the case law, the answer to that question is yes.   The Court need not engage in a lengthy examination of the definition of the word "property" or "matter" or what constitutes a "hard drive"  in order to answer that question.

Defense counsel in <u>Sanders</u> also argued that non-contraband files are property in their own right, and specifically discussed the definition of "property" at oral argument and in their briefs.  (<u>United States v. Zachary Sanders</u>, 1:20-CR-143, Dkt. 608, pp. 3-5;  Dkt 667, p. 25, lines 8-13; Dkt. 632, pp. 1, 5-7.)  Thus, Judge Ellis heard the argument that noncontraband files constituted separate property and that such files were not subject to forfeiture under 18 U.S.C. § 2253(a).  Based on the language of Section 2253(a),  Judge Ellis came to the same conclusion as the court in <u>United States v. Noyes</u>, 557 F. App'x. 125, 127 (3d Cir. 2014): "Notably, nowhere does the statute provide that only some portion of the property containing child pornography should be subject to forfeiture."  <u>Sanders</u>, 2022 WL 3572780, at *4.   In holding that the plain text of Section 2253(a) requires the forfeiture of the electronic devices in their entirety, Judge Ellis also noted that this result was consistent with Fourth Circuit precedent in other areas of

**J.A. 120**

criminal law.  See Sanders, 2022 WL 3572780, at *4, n. 5 (citing United States v. Santoro 866

F.2d 1538, 1542-43 (4th Cir. 1989)).

In addition to Sanders, the federal Courts that have squarely confronted and ruled on this

issue have held that the whole device must be forfeited under 18 U.S.C. § 2253.[1]  The Third

Circuit in Noyes took the position that the defendant "requested the return of certain files and

programs contained on the forfeited computers, but the computers *as a whole, including all of

their files and programs*, were subject to the forfeiture order."  United States v. Noyes, 557 F.

App'x. 125, 127 (3d Cir. 2014) (emphasis added).  The Third Circuit pointed to the child

pornography forfeiture statute, the same statute at issue in this case, 18 U.S.C. § 2253(a)(3), and

noted that nothing in the statute indicated that only a portion of a computer must be forfeited.  Id.

It is true that, unlike in this case, at the time when Noyes requested the return of noncontraband

files, the District Court had already entered a preliminary order of forfeiture.  The Court noted

that to the extent Noyes's motion was a direct challenge to the forfeiture order, his appeal should

be dismissed as untimely because he did not challenge the scope of the forfeiture order on direct

appeal.   However, the Court went on to consider his motion to the extent that it was properly

construed as a motion to return property pursuant to Federal Rule of Criminal Procedure 41(g),

asking whether the property he sought returned was subject to forfeiture.   The Court thus

proceeded to interpret 18 U.S.C. § 2253, the statute at issue here, and observed that nothing in

that statute suggested that only a portion of the device should be forfeited.  See id.  Thus, the

court in Noyes directly addressed the issue this Court now faces, and concluded that the

forfeiture of the devices necessarily includes the forfeiture of all data therein.

---

[1] The United States addressed this issue in great detail in its previous filing.  See Dkt. 55.

In making this determination, the Court in <u>Noyes</u> looked to the 8th Circuit's decision in <u>United States v. Hull</u>, 606 F.3d 524 (8th Cir. 2010).  The defendant in <u>Hull</u> was convicted of two counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(1).  <u>Id.</u> at 525.  The district court ordered the forfeiture of Hull's real property, which included 19 acres of land, pursuant to 18 U.S.C. §  2253(a)(3).  <u>Id.</u>  Hull argued that even if the government could forfeit his residence, the government could not forfeit the remaining acreage—which included outbuildings and farm and pasture land—as the remaining acreage was not used in the commission of the offense.  <u>Id.</u> at 528. The court rejected the defendant's argument, noting that there was no basis to sever the property, and that all the land should be treated as a single piece of property, pursuant to 18 U.S.C. §  2253.  <u>Id.</u>  The court noted that there was nothing in the text of Section 2253(a)(3) that allowed for the subdivision of the property.

The upshot of <u>Noyes</u> and <u>Hull</u> is clear:  18 U.S.C. § 2253(a)(3)'s provision requiring forfeiture of "any property, real or personal, used or intended to be used to commit or to promote the commission of [a child pornography offense]" clearly requires the forfeiture of the electronic devices in their entirety.  Similarly, 18 U.S.C. § 2253(a)(1) means what it says when it provides for forfeiture of any "matter which contains any such visual depiction [of minors engaged in sexually explicit conduct]."  Thus, the court should enter the preliminary order of forfeiture and deny the defendant's request that the government return the non-contraband data.

B.  <u>The separation of all of the "non-contraband data" from the hard drive would create an undue and unreasonable burden on limited government resources.</u>

Given the amount of data stored on the hard drive device, the undertaking of separating contraband and noncontraband data proposed by the defendant here would be prohibitively difficult.

**J.A. 122**

In their response, the defense states that they are seeking the return of all noncontraband files on the hard drive subject to forfeiture.   The amount of data that can be stored on an electronic device like a hard drive is enormous.   Even assuming the FBI could separate the data, the FBI would have to conduct a painstaking review of all the data provided to defense to ensure that not a single contraband file was given to defense—a process that would a substantial amount of time.  Therefore, it would be difficult and take considerable time and resources for a forensic examiner to disentangle the noncontraband data from the contraband data on this device.

In short, the difficulty of separating the contraband from the noncontraband material on the defendant's devices is a legitimate feasibility concern.  In addition,  it would be an enormous strain on government resources, especially when it was the defendant who chose to store contraband on the same hard drive along with the noncontraband data, something he could have avoided had he not commingled the data in the first place.  The government therefore strongly objects to the defendant's instant request, not just because of the undue burden it places on the government, but because it is inconsistent with the controlling forfeiture statute and relevant precedent.  Accordingly, this Court should deny the defendant's motion for return of property.

<u>CONCLUSION</u>

For the foregoing reasons, the requested relief is both contrary to the law of forfeiture, and further would impose an undue burden on limited government resources. The government therefore respectfully requests that the Court enter a preliminary order of forfeiture forfeiting the hard drive in its entirety.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:    <u>/s/ Annie Zanobini_____</u>
Annie Zanobini
Seth Schlessinger
Attorneys for the United States
William G. Clayman
Special Assistant U.S. Attorney (LT)
2100 Jamieson Avenue
Alexandria, VA 22314
Office Number: 703/299-3700
Facsimile Number: 703/299-3982
Email: Annie.zanobini2@usdoj.gov
Email: seth.schlessinger@usdoj.gov
Email: William.g.clayman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on December 1, 2022, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send a notification of such filing (NEF) to

all counsel of record.


By:    /s/ Annie Zanobini_____
       Annie Zanobini
       Assistant United States Attorney
       California State Bar No. 321324
       Attorney for the United States
       2100 Jamieson Avenue
       Alexandria, VA 22314
       Office Number: 703/299-3700
       Facsimile Number: 703/299-3982
       Email Address: Annie.zanobini2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

STUART CLAY MCDONALD,

Defendant.

Case No. 1:22-CR-51

Hon. Claude M. Hilton

Hearing: December 12, 2022

### DEFENDANT'S SUPPLEMENT TO OPPOSITION TO ENTRY OF GOVERNMENT'S PROFERRED PRELIMINARY ORDER OF FORFEITURE

Stuart Clay McDonald, through undersigned counsel, hereby respectfully submits supplemental authority supporting his position that the Court should not enter the preliminary order of forfeiture proffered by the government, and should instead enter the preliminary order proffered by the defense.[1]

Among other things, the government's motion asserts that (1) Mr. McDonald's Seagate storage hard drive is forfeit pursuant to 18 U.S.C. § 2253(a)(1) because it qualifies as "other matter which contains any" visual depiction of child pornography; and (2) if the hard drive is forfeit pursuant to this provision, then so is everything in it, even innocent non-contraband files that have no independent nexus to the offense

---

[1] The government's motion and proposed order are filed at ECF Nos. 55 and 55-1. The defense's opposition and proposed order are filed at ECF No. 57 and 57-1. The government's reply is filed at ECF No. 58. The matter is scheduled for a hearing on December 12, 2022. Counsel for the government has informed undersigned counsel that the government does not oppose the filing of this supplement, and does not seek a continuance of the hearing.

conduct. Gov't Mot., ECF No. 55. Mr. McDonald disagrees on both counts, as set forth in his opposition brief. Def. Opp., ECF No. 57, Section II.A, at 18-26.[2]

This supplement will demonstrate that case law concerning the interpretation of "other matter" in the phrase "books, magazines, periodicals, films, video tapes, or other matter which contain[s] any visual depiction" in another provision in Chapter 110, 18 U.S.C. § 2252(a)(4), and a related provision in a prior version of the Sentencing Guidelines (U.S.S.G. 2G2.4(b)(2), now deleted), provides further support for the view that the hard drive is not forfeit pursuant to 18 U.S.C. § 2253(a)(1).

## BACKGROUND & SUMMARY

Until it was deleted from the U.S. Sentencing Guidelines Manual in 2004, U.S.S.G. § 2G2.4(b)(2) provided for a two-level enhancement in child pornography offenses where the "offense involved possessing ten or more books, magazines, periodicals, films, video tapes, or *other items*, containing a visual depiction involving the sexual exploitation of a minor." U.S.S.G. § 2G2.4 (emphasis added).[3] Similarly, until it was amended in 1998, 18 U.S.C. § 2252(a)(4) prohibited the possession of "3 or more books, magazines, periodicals, films, video tapes, or *other matter* which contain any visual depiction" of child pornography. (Emphasis added.)[4] That is, both

---

[2] Mr. McDonald agrees that the hard drive is "property" forfeit pursuant to another provision, 18 U.S.C. § 2253(a)(3) because it was used to commit Mr. McDonald's offense. ECF No. 57 at 4. But the property comprising the hard drive does not include the non-contraband files on the hard drive. *See id.* Sec. I, at 4-17.

[3] This guideline was removed in 2004 through Amendment 664 to the Guidelines.

[4] In 1998, Congress amended subsection (a)(4) "by striking '3 or more' each place that term appears and inserting '1 or more,'" and providing the affirmative

provisions listed a very general term ("other matter which contain . . ." "other items containing . . . ") after the very same list of specific matters / items that appears in 18 U.S.C. § 2253(a)(1) regarding forfeiture.

Defendants caught with child pornography located on computer devices sought to avoid application of these provisions with the argument that "other items" and "other matter" in these provisions referred to computer *hard drives* or other physical containers for child pornography (as the government contends in this case), not the computer *files* that resided on such devices. Thus, they argued, they were not guilty of § 2252(a)(4) unless they possessed three or more hard drives with child pornography on it, for example, and should not incur the enhancement in § 2G2.4(b)(2) unless they possessed 10 or more such devices – no matter how many computer files containing child pornography they possessed.

In each such case the defense has located, the government disagreed, arguing that the "other matter" and "other items" referred *not* to hard drives, but rather to the computer files that contained the child pornography. And in all but one case, courts – including the Fourth Circuit – agreed with the government, finding that the general phrases "other items" and "other matter" as they appear in these contexts referred to computer *files*. Moreover, in these cases, the government and the courts

---

defense that now appears in § 2252(c). Protection of Children from Sexual Predators Act of 1998, PL 105–314, October 30, 1998, 112 Stat 2974. Unless otherwise noted, citations to 18 U.S.C. § 2252(a)(4) herein are to the version as it existed before this amendment.

reached this conclusion through analysis similar to that advanced by Mr. McDonald in this case (which contradicts the government's current approach).

## ARGUMENT

**I.    Every court that has considered the issue has concluded that "other items" in U.S.S.G. § 2G2.4(b)(2) includes computer *files*.**

One of the most-often cited cases on these questions is *United States v. Fellows*, 157 F.3d 1197 (9th Cir. 1998). The defendant in *Fellows* argued that the enhancement in U.S.S.G. § 2G2.4(b)(2) should not apply to him although he had possessed far in excess of 10 computer graphics files depicting child pornography, since they were all found on one computer – just one "item containing" child pornography, according to the defendant. *Fellows*, 157 F.3d at 1199, 1201. Agreeing with the government, the Ninth Circuit disagreed that the phrase "other items containing" should be interpreted at its most broad, and concluded that the *files* were the "other items" in such a case, *not* the hard drive. *Id.* at 1201.

More specifically, the Ninth Circuit wrote:

> The commonality between the "items" specifically enumerated in the section is that they are all discrete containers for visual depictions *capable of being separately manipulated and distributed.*
>
> *The closest cousin to "books, magazines, periodicals, films, [or] video tapes" in the computer is a computer file.* Visual depictions in a computer are compiled and stored in graphics files, much like photographs are compiled and stored in books or magazines. As the district court recognized, the computer user *can separately view, copy, delete, or transmit each discrete graphics fil*e. Like the other "items" listed in the guideline section, a graphics file can store one or more visual depictions. *The similarities between computer graphics files and the other "items" are manifest.* Because the graphics file is the container used for

> compiling and storing visual depictions in a computer, it
> qualifies as an "item" under the plain language of U.S.S.G.
> § 2G2.4(b)(2).

*Fellows*, 157 F.3d at 1201 (emphasis added). Further, the Ninth Circuit specifically

disagreed with the defendant that "other item" in the guideline "is property defined

as a computer hard drive, not a graphics file." *Id.*

> A computer hard drive is much more similar to a library
> than a book; the hard drive is much more similar to a
> library than a book . . . . Each file within the hard drive is
> akin to a book or magazine within that library. *Thus, the
> files, not the hard drive, count as 'items' under"* the
> *guideline.*

*Id.* (emphasis added).

Several Courts of Appeals have relied on these passages and the holding from

*Fellows*, including the Fourth Circuit. *See United States v. Michalec*, 176 F.3d 476  at

*2 (4th Cir. April 6, 1999) (Table Decision) (citing favorably *Fellows* and other cases

finding that "a computer file containing visual depictions of child pornography rather

than the hard drive, is an 'item' within the meaning of USSG § 2G2.4(b)(2)"); *United

States v. Thompson*, 281 F.3d 1088, 1092 (10th Cir. 2002) (agreeing with *Fellows* and

other circuits that files, not hard drives, are "other items" in the guideline, and noting

that Amendment 592 to the guideline confirms this reading, insofar as it added

"clarifying" commentary that a computer file qualifies as one item); *United States v.

Harper*, 218 F.3d 1285, 1287 (11th Cir. 2000) (citing *Fellows* and others in course of

agreeing with the government and district court that the key is that "each file on a

disk is separately acquirable, accessible, and distributable; hence each file, and not

the entire disk, equates with a book or magazine as in section 2G2.4(b)(2)"); *United*

*States v. Demerritt*, 196 F.3d 138, 141 (2d Cir. 1999) (agreeing with *Fellows* and others that files are "other items" for purposes of the guideline because "[c]omputer files, like books, magazines, and video tapes, are "discrete containers for visual depictions capable of being separately manipulated and distributed"); *see also United States v. Mittermayr*, 225 F.3d 651, 651 (3d Cir June 22, 2000) (Table Decision) (affirming district court's application of guideline for 10 or more "other items" where single hard drive contained thousands of child pornography files), *and* Answering Brief for Appellee, United States of America, *United States v. Mittermayr*, Case No. 99-5773, 2000 WL 344447733 (filed D. Del. Mar. 20, 2000) (reflecting government argument, citing *Fellows*, that, "[l]ike books and magazines, computer graphics files separately can be viewed, copied, deleted, and transmitted"); *United States v. Hall*, 142 F.3d 988, 998-99 (7th Cir. 1998) (deciding before *Fellows* that guideline applied "because computer files are the equivalent of 'items'" in the guideline).

II. **Following *Fellows*, the Eight Circuit has concluded that "other matters" in 18 U.S.C. § 2252(a)(4) includes computer *files*, and the only decision that has disagreed has been called into question.**

In *United States v. Vig*, 167 F.3d 443, 447 & n.6 (8th Cir. 1999), the Eight Circuit also cited the Ninth Circuit's logic in *Fellows* as it considered what fell within "other matter" in the version of 18 U.S.C. § 2252(a)(4) applicable at the time. Again, at the time, the provision prohibited the possession of "3 or more books, magazines, periodicals, films, video tapes, *or other matter* which contain any visual depiction" of child pornography. 18 U.S.C. § 2252(a)(4) (emphasis added).

And, just as the Ninth Circuit found that "other items" at the end of that list refers to computer files rather than hard drives, the Eighth Circuit found that "other matter" as it appears at the end of § 2252(a)(4) also referred to computer files. Thus, the court agreed with the government that what was important to determining the guilt of an individual who possessed visual depictions of child pornography "saved in three or more computer image files that were located on only a single computer hard drive" was the number of computer files a defendant possessed, not how many computers or hard drives he possessed. *Vig*, 167 F.3d at 446, 447, 447 n.6 (also determining that the pertinent definition of "contain" as used in the statute is "[t]o have as contents or constituent parts; comprise; include," and citing *Random House Webster's Unabridged Dictionary* 438 (2d ed. 1997)).

Only one court has disagreed with all of these courts (and the government) that "other matter" in the old version of § 2252(a)(4) refers to computer files as opposed to the machine. In *United States v. Lacy*, the Ninth Circuit agreed with defendant that "the 'matter' is the physical medium that contains the visual depiction – in this case, the hard drive of Lacy's computer and the disks found in his apartment." *Lacy*, 119 F.3d 742, 748 (9th Cir. 1997). Thus, the court vacated convictions because the jury had not been instructed that they must find that defendant knew files containing child pornography images remained on his hard drive, where the defendant had admitted to downloading the files, but claimed not to know they remained on the drives at the time the government charged he possessed them. *Id.*

But this decision predated the same circuit's decision in *Fellows*, 157 F.3d 1197, and the many decisions noted above. Moreover, multiple courts have called its weight into question, including the Fourth Circuit. *See Michalec*, 176 F.2d at *1.

### III. The holdings and logic reflected in these decisions support Mr. McDonald's conclusion that hard drives are not "other matter" as that phrase is used in 18 U.S.C. § 2253(a)(1).

In sum, phrasing very similar to the key phrase in 18 U.S.C. § 2253(a)(1), calling forfeiture of visual depictions of child pornography and "any book, magazine, periodical, film, videotape, *or other matter which contains* any such visual depiction" (emphasis added), appeared in very related provisions of law and the guidelines, U.S.S.G. § 2G2.4(b)(2), and 18 U.S.C. § 2252(a)(4). The government itself argued that the general term at the end of the list in these provisions ("other items" in U.S.S.G. § 2G2.4(b)(2), and "other matter" in § 2252(a)(4)), referred *not* to hard drives or other physical containers or media, but rather to computer files. Courts have almost uniformly agreed. Moreover, they have done so based on an approach similar to that employed by Mr. McDonald.

Specifically, the reasoning in *Fellows* and the cases that follow its lead reflect the principle that one cannot begin to interpret the very general phrase "other matters [items] that contain visual depictions" in these provisions without considering the very specific terms that precede it, and how they cabin the more general terms. As Mr. McDonald has argued, the court must determine both what unifies the specific terms in the list, and what distinguishes them all from other items

/ matters / objects / things that might qualify as "other matters" viewed at its most general. ECF No. 57 at 21-24.

Mr. McDonald has proposed that the defining characteristic of all of the specific terms before "other matter" in § 2253(a)(1) (that is, books, magazines, periodicals, films, and videotapes) is that child pornography found in these matters cannot be segregated from them without destroying them. *Id.* The conclusion that computer files would fall within "other matter," whereas hard drives would not, flows neatly from this reading of the terms in the list.

Review of the cases above has also highlights that the specific items / matters in the recurring list all can "contain" child pornography in the sense that they can "consist wholly or in part: comprise; include" child pornography, as opposed to merely "hold" the child pornography in a physical sense, as other items / matters might. *See Vig*, 167 F.3d at 447 n.6.[5] Put another way, as the government put it in their brief before the Third Circuit in *Mittermayr*, the specific items / matters in the list are all media for the communication of child pornography, not just "mere storage device[s][.]" *See* Answering Brief for Appellee, United States of America, *United States v. Mittermayr*, Case No. 99-5773, 2000 WL 344447733. And they are all "discrete containers for visual depictions capable of being separately manipulated and distributed." *Fellows*, 157 F.3d at 1201; *see also Demerritt*, 196 F.3d at 141 (same);

---

[5] *See also United States v. Dauray*, 215 F.2d 257, 260 (2d Cir. 2000) (discussing two definitions of "to contain" in the course of applying rule of lenity to vacate conviction of defendant pursuant to § 2254(a)(4) after concluding terms were ambiguous as to whether "other matter" included loose paper images).

*Harper*, 218 F.3d at 1287 (stating that items that count for the guideline are "separately acquirable, accessible, and distributable").

All of these observations are consistent: Every specific matter / item on the list is a capable of being comprised in whole or in part of child pornography. As a result, they are all media for the communication of child pornography. Although they may need something else to be viewable (like a videotape player or hard drive), these items / matters comprise the "content," which can be segregated from any larger containers (a library, a box of videotapes, a hard drive), and separately accessed, possessed, and transferred. Further, they cannot be subdivided without materially altering them: one cannot rip a page from a book or an image from a computer file without changing the content, and thus changing the item or matter itself. That is, not only *may* a person acquire, access, or distribute these items / matters, as the courts above noted, but *if* a person does choose to access, acquire, or distribute these items / matters, the child pornography will *necessarily* travel with the items / matters.

None of this is true of many other items / matters / objects / things that take up space and function as storage containers: libraries, boxes of videotapes, file cabinets, or hard drives. Thus, whereas computer files are "other items" as that phrase appears in U.S.S.G. § 2G2.4(b)(2), and "other matters" as that phrase appears in 18 U.S.C. § 2252(a)(4) and § 2253(a)(1), hard drives are not.

## CONCLUSION

For these reasons, those previously given, and such others as may be advanced at the upcoming hearing regarding forfeiture, Mr. McDonald respectfully renews his

request that the Court deny the government's motion and instead enter the preliminary order of forfeiture proffered by the defense, ECF No. 57-1.

Respectfully submitted on December 8, 2022.

**STUART CLAY MCDONALD**
by counsel:

Geremy C. Kamens
Federal Public Defender for the
Eastern District of Virginia

by:_____s/_____
Ann Mason Rigby
VA Bar No. 92996
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
ann_rigby@fd.org

—

1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF VIRGINIA
2         ALEXANDRIA DIVISION

3

4    UNITED STATES OF AMERICA           )
                                        )
5         VS.                           )   1:22-CR-51   CMH
                                        )
6                                       )
                                        )   ALEXANDRIA, VIRGINIA
7                                       )    JANUARY 20, 2023
                                        )
8    STUART CLAY MCDONALD               )
     _____)

9

10

11

12

13

14   _____

15        **TRANSCRIPT OF FORFEITURE HEARING**
     **BEFORE THE HONORABLE CLAUDE M. HILTON**
16        **UNITED STATES DISTRICT JUDGE**
     _____

17

18

19

20

21

22

23

24   **Proceedings reported by stenotype, transcript produced by**

25   **Julie A. Goodwin.**

Julie A. Goodwin, CSR, RPR

**J.A. 137**

2

1                    **A P P E A R A N C E S**

2

3    FOR THE PLAINTIFF:
          UNITED STATES ATTORNEY'S OFFICE
4         By:  MS. ANNIE ZANOBINI
          MS. PATRICIA M. HAYNES
5         Assistant U.S. Attorneys
          2100 Jamieson Avenue
6         Alexandria, Virginia  22314
          703.299.3700
7         annie.zanobini2@usdoj.gov
          patricia.haynes@usdoj.gov
8

9

10   FOR THE DEFENDANT:
11        OFFICE OF THE FEDERAL PUBLIC DEFENDER
          By:  MS. ANN MASON RIGBY
12        Assistant Federal Public Defender
          1650 King Street
13        Suite 500
          Alexandria, Virginia  22314
14        703.600.0800
          ann_rigby@fd.org
15

16

17   OFFICIAL U.S. COURT REPORTER:
18        MS. JULIE A. GOODWIN, RPR
          United States District Court
19        401 Courthouse Square
          Eighth Floor
20        Alexandria, Virginia  22314

21

22

23

24

25

                                    Julie A. Goodwin, CSR, RPR

**J.A. 138**

3

1    (JANUARY 20, 2023, 10:08 A.M., OPEN COURT.)

2            THE COURTROOM DEPUTY:  Criminal Number 2022-51, *United*

3    *States of America versus Stuart Clay McDonald*.

4            MR. ZANOBINI:  Good morning, Your Honor.  Annie

5    Zanobini and Patricia Haynes on behalf of the United States.

6            THE COURT:  All right.  Good morning.

7            MS. RIGBY:  Good morning, Your Honor.  Ann Mason Rigby

8    on behalf of Mr. McDonald.  And Your Honor has excused Mr.

9    McDonald's presence in light of his waiver, his right to be

10   present.

11           THE COURT:  Very well.

12           And you-all have been able to agree on this?

13           MR. ZANOBINI:  Your Honor, we have been able to agree

14   on the restitution order, which I, with the assistance of the

15   Court Security Officer, can hand up to Your Honor.  But, no, we

16   have not been able to agree as to the forfeiture.

17           THE COURT:  All right.  Is there anything you want to

18   tell me?

19           MR. ZANOBINI:  Yes, Your Honor.

20           The government is prepared to offer evidence from

21   the special agent regarding the burden of separating the --

22           THE COURT:  You can take your mask off when you're

23   speaking.

24           MR. ZANOBINI:  Yes, Your Honor.  I apologize.

25           Your Honor, the government is prepared to offer

4

1    evidence from a special agent regarding the burden of

2    separating the contraband and noncontraband data.  If Your

3    Honor doesn't think that's necessary, the government can offer

4    argument regarding the issue in front of the Court whether

5    Title 18, United States Code, Section 2253 requires the

6    forfeiture of the hard drive at issue in its entirety, or the

7    government can simply answer any questions the Court may have

8    as the United States has laid out its position in detail in its

9    brief.

10           So the government would ask the Court how you would

11   like us to proceed.

12           THE COURT:  Well, why don't you tell me whatever you

13   want to tell me, what I should do.

14           MR. ZANOBINI:  Well, Your Honor, the government

15   believes that you should enter the United States' proposed

16   preliminary order of forfeiture.  As defense here does not

17   dispute that the nexus -- that there's a nexus between the hard

18   drive and the offense of conviction, so the government would

19   say that the hard drive is subject to forfeiture pursuant to

20   Title 18, United States Code, Section 2253.

21           And as the device contains child pornography, and

22   it was used to commit count three, for which the defendant was

23   convicted, so the question the government would say is facing

24   the Court is the same question faced by Judge Ellis in the

25   *Sanders* case, which is whether Section 2253 requires the

5

1  forfeiture of the device in its entirety.  And the answer to

2  that question is yes.

3        In addition, the government notes the difficulty in

4  separating the noncontraband and contraband files will place an

5  undue burden on the government.

6        Now, the United States doesn't believe the defense

7  disputes the burden, but if it would help the Court in

8  making -- if it would help the Court, the government is willing

9  and able to put on evidence regarding the burden that it would

10 take to separate the contraband and noncontraband evidence in

11 this case.  But if the Court just simply thinks that we should

12 address, you know, the statutory interpretation argument, I'm

13 prepared to do that as well.

14       THE COURT:  All right.  Let's hear what the other side

15 has to say.

16       MS. RIGBY:  Your Honor, the government is correct that

17 the defense does not dispute that there is a nexus between the

18 hard drive and the offense in question, but that entirely

19 evades the issue here.

20       The issue is not whether the hard drive was

21 property used, as 2253(a)(3) requires.  The issue is whether

22 the files on the hard drive that are not child pornography were

23 used to commit the offense.  The answer is they were not and,

24 therefore, they are not forfeitable.

25       The government says the property -- the device was

6

1   used to commit the offense.  Yes, that is correct.  The device

2   was used.

3        THE COURT:  Well, doesn't that end the inquiry?

4        MS. RIGBY:  It doesn't, Your Honor, because the

5   question before the Court, I would say, is -- turning to

6   2253(a), which the government is relying on this morning

7   principally -- excuse me, (a)(3), which is the provision that

8   provides that property used to commit the offense is

9   forfeitable.

10       The question before the Court is --

11       THE COURT:  Well, that was the hard drive.  The hard

12  drive was used to obtain the pornography.

13       MS. RIGBY:  You're right, Your Honor.  And we do not

14  dispute that the hard drive should be forfeited.  The question

15  is whether everything on the hard drive should be forfeited.

16  The question before the Court is what is the property.

17       We have cited to the Court a slew of cases

18  beginning with cases from the Fourth Circuit that show that the

19  Court is -- must first determine what is the property.  And in

20  every case, starting with cases in the Fourth Circuit, the

21  Courts say, you have to define what is the property, and to do

22  that you have to look --

23       THE COURT:  That's why I asked you the last

24  question --

25       MS. RIGBY:  Yes.

7

1          THE COURT:  -- that I asked.  And I'll ask it again.
2    Did you define the property?  The hard drive was used to obtain
3    the pornography.
4              Now, that's what was used, regardless of what was
5    on it.  It could have been blank; could have whatever.  But
6    that's what was used.
7          MS. RIGBY:  Yes, Your Honor.
8          THE COURT:  They didn't use any of the particulars of
9    what may or may not have been stored.
10         MS. RIGBY:  Correct.
11         THE COURT:  The hard drive was used.  And I'm
12   wondering why that doesn't just simply end the inquiry.
13         MS. RIGBY:  Because the hard drive is separate from
14   the files on the hard drive.  You can take files -- you can put
15   files on; you can take them off.  They are separate property.
16             The files we're talking about, the type of files
17   that are usually on a hard drive, are property.
18             They may be MP3 files.  Those are music files.
19   They belong to somebody else.  You purchase them; you put them
20   on there.
21             They may be software files, like a WordPerfect
22   program, which nobody has ever said in the last 15 years --
23         THE COURT:  Okay.
24         MS. RIGBY:  -- or a Word program.  You purchased that.
25   That is a separate piece of property, and you put it on the

8

1   hard drive.  And --

2        THE COURT:  Well, didn't that -- didn't he take the

3   risk of losing that, when you put it on something that you're

4   using to get involved in a criminal activity?

5            Why should the government have the burden to

6   separate it out once you've used it to engage in criminal

7   activity?

8        MS. RIGBY:  So the Court's first question, did a

9   person take the risk.  And the answer to that is no, because

10  the law does not provide for forfeiture of everything in a

11  container that is forfeitable.  So, no, the risk was not taken

12  by Mr. McDonald in this case.

13           And in terms of the burden, Your Honor, the

14  government has cited to the Court, as have I, numerous cases

15  that say the burden is irrelevant.

16           The burden is absolutely irrelevant.  This is Mr.

17  McDonald's property.  That is the starting proposition, and

18  the -- the government absolutely may forfeit certain things.

19  They may forfeit what Congress has said they may forfeit, and

20  Congress has not said that Mr. McDonald forfeits everything

21  within the hard drive because the hard drive begins and ends

22  with the hardware that makes up the hard drive.

23       THE COURT:  But the hard drive is hardly a container.

24  It's not like seizing a container that they store a number of

25  items.  Send to some -- search somebody's house for contraband

9

1  or other items of unlawful activity, and you start going

2  through storage matters.  Here, he actually used the hard drive

3  to commit the offense.

4       MS. RIGBY:  The hard drive -- I would disagree with

5  the Court.  The hard drive is a container.  It's a container of

6  files.  In fact, the government argues that it's a container,

7  and that's why they say (a)(1) applies.  We haven't gotten to

8  that.  But there's no dispute from the government that a hard

9  drive is a container.

10       Files are intangible.  We can't pick them up, but

11  that doesn't mean we can't store them somewhere.  And the place

12  we store them are on floppy disks, hard disks, hard drives,

13  jump drives.  They are storage devices.

14       And the container itself, the hard drive was used.

15  Don't dispute that.  You know, we -- we don't dispute that the

16  hard drive itself was used.

17       But the Fourth Circuit and all of the cases

18  following the Fourth Circuit in forfeiture context have said,

19  The Court must first determine where does the property begin

20  and where does it end.  And in -- in a case about land, that

21  means sometimes the land that the defendant has been using as

22  part of the same farm is not forfeitable, or not forfeit,

23  excuse me, even if the land on the other side of the street is.

24       In the case of a tractor-trailer, I cited to the

25  Court.  You know, the tractor was used to haul cigarettes.

10

1 Well, that doesn't mean the trailer was, so -- and because they

2 can be separated, they can be sold separately sometimes, the

3 Court has to decide.

4         What about in this case.  Right?  And in looking at

5 the -- in those cases, the courts can look to instruments

6 defining the sale.  And they determine where does the property

7 begin and where does it end looking at that.

8         And here, the government hasn't given you anything

9 and there are no receipts, but we know from common experience

10 that when you buy a hard dive it comes empty.  It is an empty

11 container waiting to be filled with other property.

12         And, Your Honor, that is why the -- the hard

13 drive is -- excuse me.  The hard drive is property, but not

14 everything on it is -- is property.

15         THE COURT:  All right.  I understand your position.

16         You want to respond to that?

17         MR. ZANOBINI:  Yes, just a couple -- yes, Your Honor,

18 just briefly.

19         The government would agree with Your Honor, you

20 know, in terms of the burden being on the government.  If every

21 defendant in a child pornographer -- a child pornography case

22 could force law enforcement agencies to engage in separating

23 these files, it would be an enormous strain on their resource,

24 especially when it was the defendant who chose to store

25 contraband on the same media along with his noncontraband data.

Julie A. Goodwin, CSR, RPR

11

1    Something he could have avoided had he not commingled the data

2    in the first place.

3            And the government would state here that the

4    statute at issue, 2253, is not ambiguous.  It clearly requires

5    the forfeiture of the device in its entirety, both because it's

6    the other matter which contains a visual depiction.  Right?

7            The statute says in part that defendants convicted

8    of an offense involving a visual depiction described in 2252

9    shall forfeit any book, magazine, periodical, film, videotape

10   or other matter which contains a visual depiction.  Thus, the

11   language makes very clear that it's not just the visual

12   depiction itself that is forfeitable.  Rather, the statute

13   makes clear it includes the matter on which that image is

14   stored.

15           In addition, as Your Honor has stated, the hard

16   drive is also forfeitable as facilitating property, as property

17   used in or involved in the offense under 2253(a)(3).

18           The cases the government cites, which directly

19   interpret 2253, the forfeiture statute at issue here, are

20   all -- all agree with that interpretation.

21           So, the -- the Court is not working with no case

22   law on this issue.  There is limited case law.  But the case

23   law on this issue has found that 2253 requires the forfeiture

24   of the device in its entirety.

25           THE COURT:  Well --

12

 1           MS. RIGBY:  Your Honor, may I respond --

 2           THE COURT:  Yes.

 3           MS. RIGBY:  -- to just two of those points?

 4           THE COURT:  Yes.

 5           MS. RIGBY:  Well, potentially three, Your Honor, if

 6     the Court will allow me.

 7           Sticking with (a)(3) for the moment, on -- on the

 8     burden issue again, even the government has acknowledged in its

 9     briefs that the burden to the government is irrelevant.  It

10     absolutely is.  The question is, what does the statute provide

11     for.

12           If -- if Congress someday decides that this is too

13     much of a burden, it's for Congress to fix.  There is no

14     evidence whatsoever that Congress contemplated the burden at

15     all, and -- and the Court should not at all.  It is not

16     relevant.  That is clear from the law.

17           The government notes that there are cases that

18     agree with the government's position, or that support the

19     government's position.  As we laid out in our brief, that is

20     not precisely correct because none of those cases, for several

21     reasons -- first of all, in none of those cases was -- was the

22     posture the same.  In all of those cases, there had already

23     been a preliminary order entered, and the defendant was seeking

24     return on Rule 41 grounds which shifts the burden a little bit

25     away from the government and toward the defense.

13

                    Further, Your Honor, in none of those cases were
any of the arguments we've raised raised with the Courts.

                    Further, all of those cases rely on the *Hull* case
from the Eighth Circuit.  If I -- if I'm correct, it's the
Eighth Circuit.  And the *Hull* case itself acknowledges that
first the Court must establish what the property is.

                    Nobody -- nobody argued in those cases that the
files on the hard drive were not part of the property.  And
they certainly didn't raise in those cases the line of cases
that we've raised before the Court, starting with the Fourth
Circuit in *Reynolds*, that show the Court how to define the
property.

                    I am unclear to what extent the government is
relying on (a)(1) at this point, but -- but since they raised
it, Your Honor, we absolutely disagree.  As the Court knows,
that a hard drive constitutes an other matter as that phrase is
used in 2253(a)(1).

                    The government cites no binding authority on either
of those provisions, and particularly on (a)(1).  The
government has absolutely refused to even tangle with the issue
of whether other matter includes a hard drive, in light of all
the law we cited to the Court which begins with the Supreme
Court case of *Yates*, and did not respond at all to the
supplement that we provided the Court showing that in other
context right within Chapter 110, courts have determined that

14

1    other matter or other item, when that phrase follows the same

2    phrase that appears in 2253, does not include hard drives, but

3    rather refers to only items that contain child pornography,

4    meaning that they are comprised of child pornography.

5              The Court is not -- excuse me.  The government

6    hasn't responded to any of that, Your Honor.  I won't repeat

7    every argument in our brief, unless the Court has questions on

8    that.  I think it is absolutely clear that other matter does

9    not refer to the hard drive.

10             THE COURT:  All right.  Well, I agree with you.  I'm

11   not worried about the -- or I don't think I should be worried

12   about what burden would be put on the government to do one

13   thing or another.  That has nothing to do with it.

14             But I do have to determine what property was used

15   in the commission of this crime and subject to the forfeiture.

16   And I find that this hard drive was used in the commission of

17   this crime.  And I think it's entirely different than --

18   certainly not on all fours, but partially now different pieces

19   of real estate.  You go to the real estate that was used and

20   forfeit it.

21             The tractor and the trailer is entirely different

22   as I see it.

23             This hard drive was used to obtain the pornography

24   and is therefore subject to forfeiture, and I would so find.

25             Now, this order of forfeiture, it's okay subject to

15

```
 1   my ruling.  I mean, you don't have any objection to the order
 2   that the government presented?
 3             MS. RIGBY:  Other than that of --
 4             THE COURT:  Other than my ruling --
 5             MS. RIGBY:  Correct.
 6             THE COURT:  -- you don't have any problem with it.
 7             MS. RIGBY:  Correct, Your Honor.
 8             THE COURT:  Okay.  Then I'll go ahead and enter that a
 9   little later on in the morning along with this order of
10   restitution.
11             MS. RIGBY:  Well, Your Honor, I'm sorry.  May I
12   clarify?
13             Is the Court's order that the --
14             THE COURT SECURITY OFFICER:  Come to the podium.
15             MS. RIGBY:  Thank you, sir.
16             Is the Court's order that the property is subject
17   to forfeiture under 2253(a)(3)?
18             THE COURT:  Yes, that's what the order says.  Isn't
19   it?
20             MS. RIGBY:  I want to clarify.  I think the order
21   says --
22             THE COURT:  I'll take a look --
23             MS. RIGBY:  -- (a)(3) and (a)(1), and I would like the
24   Court to specify.
25             THE COURT:  I don't think I need to do that.  I'm
```

16

1  forfeiting the hard drive.

2       MS. RIGBY:  Well, I can assure you, Your Honor, we're

3  going to -- I know that we'll be appealing, and I think the

4  order --

5       THE COURT:  That's fine.  They'll -- you can sort it

6  out there.

7       MS. RIGBY:  Very well, Your Honor.

8       MR. ZANOBINI:  Thank you, Your Honor.

9       THE COURT:  All right.  Thank you.

10          (PROCEEDINGS CONCLUDED AT 10:26 A.M.)

11                        -oOo-

12

13

14

15

16

17

18

19

20

21

22

23

24

25

17

1  UNITED STATES DISTRICT COURT    )

2  EASTERN DISTRICT OF VIRGINIA    )

3

4           I, JULIE A. GOODWIN, Official Court Reporter for

5  the United States District Court, Eastern District of Virginia,

6  do hereby certify that the foregoing is a correct transcript

7  from the record of proceedings in the above matter, to the best

8  of my ability.

9           I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action in

11  which this proceeding was taken, and further that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14           Certified to by me this 3RD day of FEBRUARY, 2023.

15

16

17

18                        __/s/_____

19                        JULIE A. GOODWIN, RPR
                           Official U.S. Court Reporter
20                        401 Courthouse Square
                           Eighth Floor
                           Alexandria, Virginia  22314
21

22

23

24

25

Julie A. Goodwin, CSR, RPR

**J.A. 153**   1/20/2023

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
IN OPEN COURT

JAN 20 2023

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA    )
    )
v.    )
    )    Criminal No. 1:22-cr-51
STUART CLAY MCDONALD,    )
    )
Defendant.    )

**PRELIMINARY ORDER OF FORFEITURE**

WHEREAS, on May 19, 2022, defendant Stuart Clay McDonald pled guilty to count one

of the indictment alleging receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2),

and count three of the indictment alleging possession of child pornography, in violation of 18

U.S.C. § 2252(a)(4)(B);

AND WHEREAS, the Court's jurisdiction is founded upon 18 U.S.C. §§ 2253(a)(1) and

(a)(3);

AND WHEREAS, on November 14, 2022, and pursuant to 18 U.S.C. § 2253, the United

States filed a Motion for Preliminary Order of Forfeiture requesting the forfeiture of a Seagate

hard drive, serial number NA05H5FZ;

AND WHEREAS, the Court finds the government has established the requisite nexus

between the property to be forfeited and the offenses of conviction as prescribed by Rule

32.2(b)(1)(A);

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**

**THAT:**

1.    The following property is forfeited to the United States pursuant to 18 U.S.C. §§

2253(a)(1) and (a)(3):

**(a) Seagate hard drive, S/N NA05H5FZ.**

J.A. 154

2.      The government is hereby authorized to seize and take exclusive custody and control of the forfeited asset, which is hereby forfeited in its entirety, including any hardware, as well as any software or data contained on it.

3.      Upon the seizure of any property, the government shall, to the extent practicable, provide direct written notice to any persons known to have alleged an interest in the seized property, and shall publish notice of this order in accordance with Federal Rule of Criminal Procedure 32.2(b)(6).

4.      Any person, other than the defendant, asserting any legal interest in the property may, within thirty days of the publication of notice or the receipt of notice, whichever is earlier, petition the Court for a hearing to adjudicate the validity of their alleged interest in the property.

5.      Following the Court's disposition of all timely petitions filed, a final order of forfeiture shall be entered.   If no third party files a timely petition, this order shall become the final order of forfeiture, as provided by Federal Rule of Criminal Procedure 32.2(c)(2), and the United States shall have clear title to the property, and shall dispose of the property in accordance with law.

6.      Pursuant to Rule 32.2(b)(4)(B), this order of forfeiture shall be included in the Judgment imposed in this case.

Dated this _20ᵗʰ_ day of _Jan_ _____ 2023.

_Claude M. Hilton_
UNITED STATES DISTRICT JUDGE

2

**J.A. 155**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA          )
                                  )
              v.                  )          Case No. 22-cr-51
                                  )
STUART CLAY MCDONALD              )          Hon. Claude M. Hilton
                                  )
              Defendant.          )

## NOTICE OF APPEAL

The defendant in the above-styled case hereby notes his appeal to the United

States Court of Appeals for the Fourth Circuit from the preliminary forfeiture order

entered in this court on the 20th day of January, 2023 (ECF Doc. No. 64).

Respectfully submitted on January 26, 2023.


          STUART CLAY MCDONALD
          by counsel:

          Geremy C. Kamens
          Federal Public Defender

          _____s/_____
          Ann Mason Rigby
          Assistant Federal Public Defender
          Virginia Bar Number 92996
          1650 King Street, Suite 500
          Alexandria, Virginia 22314
          Telephone: (703) 600-0869
          Facsimile: (703) 600-0880
          Ann_Rigby@fd.org


**J.A. 156**